**IN THE UNITED STATES DISTRICT COURT**
**OKLAHOMA EASTERN DIVISION - MUSKOGEE**

<u>Oklahoma Plaintiff</u>

1. **LOWERY WILKINSON LOWERY, L.L.C., an Oklahoma Limited Liability Company. by and through principal owners, MARGARET J. LOWERY & RONALD D. WILKINSON,**

           **Plaintiffs,**

vs.

<u>Illinois Defendants</u>

2. **STATE OF ILLINOIS d/b/a ILLINOIS SUPREME COURT d/b/a ATTORNEY REGIST-RATION & DISCIPLINARY SYSTEM by and through their employees & volunteers Joy Cunningham, PETER ROTSKOFF, RACHEL MILLER, JOSE LOPEZ, MARTHA FERDINAND, ELIZABETH DELHEIMER, LEA GUTIERREZ, JEROME LARKIN, & AMY GRANT, the ADA Coordinator.**

3. **ST. CLAIR COUNTY, ILLINOIS by and through their employee ANDREW GLEESON,**

           **Defendants.**

**CASE NUMBER: CIV-25-22-JAR**

<u>Federal Statutes Invoked</u>

<u>ADA & Rehabilitation Act</u> **- 42 U.S.C. § 12132 & 29 U.S.C. § 794**

<u>Threats, Harassment & Intimidation</u> **Title 18 U.S.C. §241, §875, §1503 & §2261A**

<u>Civil Rights</u> **- Title 42 U.S.C. §1983**

<u>Clayton Act</u> **- Title 15 U.S.C. §12-27**

<u>Computer Fraud</u> **- Title 18 U.S.C. § 1030**

<u>Genocide</u> **- Title 18 U.S.C §1091.**

**JURY TRIAL DEMANDED**

# PETITION FOR DECLARATORY JUDGMENT FOR CIVIL RIGHTS VIOLATION & DAMAGES

This declaratory judgment action was brought by Plaintiffs against Defendants for various violations of federal law in Oklahoma involving ongoing violations by the Defendants of the ADA, Clayton Act, §1983, Genocide & McGirt. The problem, as this Court is about to see, is that the State of Illinois & Saint Clair County believes they have no duty to obey federal law or to leave Oklahoma

residents alone. That is why this case has landed in federal court. It is also why this Court has federal jurisdiction over the Defendants.

Federal Courts are courts of limited jurisdiction. So the first issue Plaintiffs must address is how this Court obtains subject matter and personal jurisdiction over the Defendants who are the State of Illinois and Saint Clair County. Simple, Oklahoma has a long arm statute and the Defendants have submitted themselves to this Court's federal Oklahoma jurisdiction by:

a.   sending thirty-two (32) false complaints to the Oklahoma General Counsel's Office accusing the Plaintiffs of various acts of professional misconduct.

b.   issuing thirty-two (32) false complaints into Oklahoma Defendants have established sufficient minimum contacts with Oklahoma so as not offend traditional notions of fair play.

c.   submitting 32 complaints, Defendants have in fact submitted themselves to this jurisdiction 32 times. By asking 32 times for Oklahoma courts to act upon the request of state and county government, the Defendants submitted themselves to Oklahoma federal court jurisdiction.

d.   By filing 32 complaints, the Defendants have sought the rights, privileges and relief of the Oklahoma courts, the Defendants have submitted themselves to this Court's jurisdiction as a matter of law.

e.   Plaintiff Lowery is a member of the Muscogee Creek & Cherokee Nations.[1] She lives on tribal land in Eastern Oklahoma and she was under disability when

---

[1] She was made an honorary member for her thirty years of voluntary work on tribal sovereignty leading to McGirt in 2000/2001.

Defendants violated federal law and entered a default judgment. They did this without notification to the Tribe or the Department of Interior, so the judgment is void as a matter of law.

f.    Next, as this Court is aware the most contentious issue of all under the Treaties is the issue of tribal membership.  While states may regulate the professions, they may not affect tribal membership.   Plaintiffs reported an Illinois judge was harassing a disabled member of the tribe in Oklahoma on Indian Land.  Reporting harassment does not reactivate Plaintiff's Illinois bar membership nor does it permit Defendants to violate the U.S. Constitution nor the sovereign rights of other nations.

## FACTS

1.    Plaintiff Ms. Margaret Lowery is licensed member of the Oklahoma bar in good standing since April of 1987.

2.    While Plaintiff Lowery is legally domiciled in South Dakota, she has a residence in Oklahoma.

3.    From 2001 until 2018 Ms. Lowery was a resident of Illinois.   She then moved her domicile to Sioux Falls, South Dakota in 2019.

4.    In 2018, she also obtained an apartment in Tulsa, Oklahoma with the intention of permanently moving back to Oklahoma.  She currently lives in a home on Indian Land in Oklahoma and she will move her domicile to Oklahoma now that she was able to obtain health insurance.

5.    South Dakota was the only state in the country that permitted residents to obtain 'national health insurance' pre Medicare.  In 2020 Ms. Lowery was diagnosed with cancer.

6. In 2000-2001, the Cherokee Nation & Muscogee Creek Nation notified Ms. Lowery she was an honorary member for her 30 years of voluntary service to the tribe. Therefore she does not have Dawes Roll membership.

7. Plaintiff Mr. Wilkinson is a licensed member of the Oklahoma bar in good standing. Mr. Wilkinson is legally domiciled in Oklahoma. Mr. Wilkinson believes he may have affiliation with the Choctow Nation but due to lost courthouse records in a fire, his family was unable to trace his Dawes Rolls membership to a relative. He likely won't be able to prove that relationship except through DNA familial tracing because the courthouse records were destroyed in a fire.

8. As this federal court is aware, the police can use familial DNA ancestry to convict a person of a crime, but the federal government will not permit the use the same DNA technology to prove a familial relationships for tribal membership on the Dawes Rolls.

9. Plaintiff's argue this 1st Amendment limitation is improper. If the federal government can use DNA technology to convict a Native American of a federal crime, then that individual should be able to prove familial relationships for purposes of the Dawes Rolls and tribal membership.

10. Plaintiffs own and operate a law firm in Muskogee, Oklahoma, Lowery Wilkinson Lowery LLC.

11. The next reason this Court has jurisdiction is that the Defendants have no jurisdiction over Plaintiffs. Illinois Supreme Court Rule 751 limits Defendants authority over lawyers to "members of the Illinois bar." *(Exhibits 1).*

    (a) <u>Authority of the Commission</u>. The registration of, and disciplinary proceedings

affecting, _members of the Illinois bar_, and unauthorized practice of law proceedings instituted under the authority of Rule 752(a), shall be under the administrative supervision of an Attorney Registration and Disciplinary Commission. [Emphasis added.]

The Defendants' own Rules clearly state if Respondent is not a member of the Illinois bar, then Defendant ARDC has no supervision authority.

12.    As this Court can see by _Exhibit #1_, Plaintiff Lowery was not a member of the Illinois bar after June 30, 2023.   So as a matter of law the Defendants conduct was illegal & improper.

13.    Next, neither Plaintiff Lowery nor Plaintiff Wilkinson want to be a members of the Illinois bar.  Both wants to be left alone to practice law in Oklahoma.

14.    Yet Defendants have continued to harass Plaintiffs in Oklahoma with repeated false complaints (32) in total when they clearly have no jurisdiction.

15.    Plaintiffs seek from this Court a declaratory judgment, that as a matter of law, Defendants have no jurisdiction over Plaintiffs, including Plaintiff Lowery after June 30, 2023.

16.    Mr. Wilkinson is not licensed to practice law within the state of Illinois, he has never practiced law in the state of Illinois, and he plans to never practice law in the state Illinois. The ARDC is without jurisdiction to regulate the practice of law in Oklahoma and their UPL complaint was defamatory and harassment.

17.    Defendants cannot make up allegations of rule violations against Plaintiff Lowery as a matter of law because Defendants  have no jurisdiction to do so for a variety of reasons.  Rule 751 is but one.  The other reason is that federal law prohibits taking a default judgment against a member of a tribe while under disability.

18.    When these issues arose, Plaintiff Lowery attempted to address the lack of jurisdiction, but

Defendants refused to address it. That is why this federal court must intervene; there is no adequate remedy at law.

19. The failure of Defendants to obey jurisdictional limits and federal law raises important constitutional issues under the 14th Amendment, the ADA & The Clayton Act & McGirt.

20. Plaintiffs allege the Defendants conduct is being done to create an anti-trust monopoly to exclude disabled persons, Jews and Native Americans from other state bars for an illegal reason.

21. This case also raises important questions about how an attorney retires from a state bar. Here the state bar refuses to honor their own jurisdictional limits to permit the attorney to leave.

22. Defendants are accused of violating U.S. Code, Title 42 §1983, the 14th Amendment, the ADA and the Clayton Act by their conduct.

23. The allegation is that Defendants are exporting unconstitutional orders to target disabled persons and minorities in an effort to monopolize the practice of law. These violations create the ADA & anti trust issue.

24. The court has jurisdiction under 28 U.S.C. § 1331 and/or 15 U.S.C. §§ 12–27, 29 U.S.C. §§ 52–53, 42 U.S. Code § 12101, 29 U.S.C. § 701 to issue relief under 28 U.S.C. § 2201(a).

25. The action arises under, and requires the interpretation and construction of provisions of the U.S. Constitution and the laws of the United States. This includes, without limitation, the ADA, the Clayton Act, The Fourteenth Amendment et al.

26. Plaintiffs are not members of the Illinois bar. Plaintiffs do not want to be members of the Illinois Bar. In fact, that is why a permanent restraining order must be entered requiring these Defendants to remain away from Plaintiffs (including email, telephone comments,

surveillance, letters, and any other method of communication) at all times and to address the lack of constitutional rules to protect disabled persons.

27.  Plaintiffs seek final adjudication to resolve all pending matters.

28.  This case involves several novel legal issues, one being the issue of bullying in the U.S. Court system. In terms of comparison, this U.S. case is similar to the UK Postal Bullying Scandal.

29.  If this Court is not aware, the British Post Office scandal, also called the Horizon IT scandal, involved the UK Post Office pursuing thousands of innocent sub-postmasters for apparent financial shortfalls caused by faults in the Horizon accounting software system.

30.  The UK accounting system was developed by Fujitsu.  Between 1999 and 2015, more than 900 sub postmasters in the United Kingdom were convicted of theft, fraud, and false accounting based on faulty Horizon data, with about 700 of these prosecutions carried out by the Post Office. Other sub postmasters were prosecuted, not convicted, but forced to cover shortfalls—caused by Horizon— from their own pockets.  The contracts made with sub postmasters were regularly terminated.

31.  The court cases resulted in criminal convictions, imprisonments, loss of livelihoods, and homelessness.  The  debts incurred by the sub postmaster caused bankruptcies, led to stress, illness, family breakdowns, *and at least four suicides*.

32.  In 2024, UK Prime Minister Rishi Sunak described the scandal as one of the greatest miscarriages of justice in British history.  What Defendants are doing in Illinois will be shown to be one of the greatest bullying episodes in US bar history.

33.    Plaintiffs seek to adjudicate the following:

    a.        Defendants have no jurisdiction over Plaintiffs, personal or otherwise.

    b.        Plaintiffs are not members of the Illinois bar and therefore are not subject to Defendants "supervisory authority."

    c.        Plaintiffs are not and never were subject to Defendants' jurisdiction at any time relevant to these proceedings.

    d.        The Defendants' actions violate federal law.  Specifically, the U.S. Constitution, the ADA, the Clayton Act, 42 U.S.C. §1983, and the14th Amendment have each been violated.

    e.        Defendants' violations were the sole proximate cause of Plaintiff Lowery and Plaintiff Wilkinson's injuries.

    f.        Defendants targeted Plaintiffs with repeated false bar complaints.

    g.        Defendants have blocked court access to disabled persons repeatedly.

34.    Plaintiffs claim Defendants have constructed a system which violates the U.S. Constitution, the ADA, 14th Amendment, and Title 42 U.S.C. §1983.

35.    Illinois bar membership has become a version of the Eagle's Song, 'Hotel California' where the lawyer joins the Illinois bar, but can never leave.  While this may seem funny to the Court, it is not.  Lawyers are committing suicide over the level of bullying the Defendants are inflicting upon them and others.

36.    Defendants' adjudicatory system violates the ADA..  Plaintiff has no adequate remedy at law. Defendants' rules, by its own admission, violate federal law.  Defendants refuse to follow

or enforce what few rules it has. Defendants' conduct is harming disabled persons and it violates federal law.

37.    The Defendants use of the system amounts to illegal federal extortion. By federal extortion the Plaintiff's mean the Defendants are using threats to obtain something of value from a victim, like their Illinois or Oklahoma bar license. By law the property can include money, property, or benefits.

38.    Plaintiffs claim the reasons Defendants conduct amounts to illegal federal retaliation is because an Illinois bar member may not retire from Illinois as long as a pending investigation exists.

39.    So to prevent Plaintiff Lowery from retiring out of Illinois, the Defendants kept filing false "investigation" complaints to wrongfully retain plaintiff, a disabled person in Illinois, so they cannot leave or retire.

40.    Next, Defendants do not permit a lawyer to permanently retire without the ARDC Administrator's consent.

41.    Under the Illinois Constitution, the ARDC Administrator has no authority over Illinois bar licenses. Only the Illinois Supreme Court may regulate the practice of law. Therefore any rule which assigns such authority by the Court to the Administrator is a violation of the Illinois Constitution & the 14th Amendment.

42.    The effect of the unconstitutional rule is to adversely affect Plaintiff Lowery's property rights in Oklahoma.

43. The ARDC Administrator's consent may be arbitrarily and capriciously withheld without any recourse or appeal by the affected lawyer. The lawyer is without remedy to address the issue as Plaintiff is here.

44. So the Defendants rules leave disabled lawyers a captive in Illinois to be forever harassed by the Defendants with no ability to leave. That violates the 14th Amendment.

45. Then the Defendants demand the lawyers return to the state to answer imaginary complaints with no ability to contest jurisdiction under Rule 751, because Rule 235 prohibits any motion be heard until the day of hearing.

46. It is alleged Defendants are concocting complaints and evidence that do not involve a client, a case, missing money or even events which occurred in Illinois in order to illegally target Plaintiffs.

47. All of the events alleged by the Defendants occurred in Oklahoma when Plaintiffs were not members of the Illinois bar.

48. Then Defendants prohibited Plaintiff Lowery to move to permanent retirement status unless she gave up all other bar licenses. At the time Defendants made this demand, Ms. Lowery was retired from Illinois and practicing law in Oklahoma.

49. Defendants rule effectively grants Illinois the right to extort attorneys in other states and to regulate every other states bar licenses in direct violation of the Clayton Act. The only way for an attorney to escape Defendants' bullying and harassment is to submit to the extortion.

50. Then when Plaintiff refused Defendants extortion, reported them to the DOJ, the Defendants literally made-up false social media posts using a fake account so that it looked like the posts came from Plaintiffs and the X Corp platform. They did not.

-10-

51.   Plaintiff Lowery sued X Corp in West Texas because the Defendants kept blocking her access to the discovery of X Corp engineers' testimony. Then when she contacted X Corp, the engineers and lawyers confirmed there were no X posts or accounts as Defendants claimed.

52.   Plaintiffs then learned Defendants never inquired of X Corp about any of Plaintiff's accounts and they never preserved any evidence. That's computer fraud.

53.   Defendants falsely claim Plaintiff Lowery made disparaging remarks about a judge, the Illinois Supreme Court, and particularly the ARDC by making or placing posts on the X Corp platform.

54.   X Corp states that the posts Defendants claim were Plaintiffs never existed on the X platform.

55.   Plaintiffs now request the X Corp matter be transferred from West Texas District Court to the United States District Court for the Eastern District of Oklahoma so that this Court may adjudicate all issues concurrently.

56.   Since X Corp does business in all 50 states that should not be an issue. Mr. Musk should be happy to address this kind of fraud on his platform.

57.   One of the more concerning aspects of this case is *Exhibit #12.* Exhibit #12 defines why federal court intervention is necessary. The Defendants planned the default and the violation of Constitutional rights and did so with the OBA General Counsel's Office.

58.   Defendants appear to be pushing an illegal default judgment through to avoid an inquiry from the new United States Attorney General or new US Attorney for Southern Illinois. What is

shocking is the email is dated April 23, 2024 and yet every action described is in fact what the Defendants did in this case. *(Exhibit #12)*.

59.  As a case of first impression, the case involves the interstate rights of attorneys to retire and retains a bar license in another state. In this instance, the retirement occurred after all disciplinary actions had been settled, her retirement was confirmed by the Illinois bar and in fact they cancelled her bar liability insurance over it.

60.  The problem is the Illinois Supreme Court and its regulatory arm, the ARDC refused to stop filing investigations. The onslaught of bar complaints, 32 in total, proves the harassment.

61.  The Defendants are doing this to defame the Plaintiffs and to financially destroy them.

62.  What Defendants intend is to use reciprocal discipline to harass Plaintiffs by repeatedly inventing bogus bar complaints. This is tantamount to an unconstitutional restraint of an attorney's right to travel and to associate.

63.  As already stated, the Court has jurisdiction because Defendants, as state employees, *sent 32 false complaints into Oklahoma asking the Oklahoma Bar for relief.* Those 32 false complaints constitute minimum contacts with Oklahoma under the Oklahoma long arm statute.

64.  Defendants most recent complaint was sent in June of 2024 against Plaintiff Wilkinson for exercising his First Amendment rights. Defendants claim Mr. Wilkinson engaged in the Unauthorized Practice of Law ("UPL") in Illinois.

65.  In Defendants December 12th, 2024 Order, they found Ms. Lowery was pro se. Yet they claim Mr. Wilkinson was in Illinois representing Ms. Lowery. Which lie is their truth because Defendants claim both facts are true.

66. The Defendants' complaint is still pending against Mr. Wilkinson in Oklahoma and Plaintiff's want damages and a judgment the claim is false.

67. The Defendants asked the Oklahoma Bar to silence Plaintiff Wilkinson's advocacy under the ADA by claiming his a TRO application in Oklahoma was the unauthorized practice of law in Illinois. That is an absurd allegation and smacks of illegal federal retaliation by Defendants.

68. Plaintiff Wilkinson was not practicing law in Illinois in 2024. His only contact with Defendants was on behalf of his Oklahoma client who was a disabled lawyer subject to the ADA.

69. Communicating disability status under the ADA, as a healthcare power of attorney, is not the unauthorized practice of law ("UPL") in Illinois as a matter of law. But Defendants conduct is illegal ADA retaliation which submits them to this Oklahoma court's federal jurisdiction.

70. Another way to look at this is through the lens of judicial estoppel. Plaintiffs have been accused by Defendants of committing UPL in Illinois. Defendants then claim the Plaintiffs are subject to Illinois jurisdiction for discipline when they are not Illinois lawyers.

71. Defendants cannot argue that Plaintiffs are Illinois lawyers subject to their bar regulation while sending complaints into Oklahoma claiming Plaintiffs are engaged in UPL. That is lawfare and it is illegal harassment and bullying by Defendants.

72. The false claim has been pending fo 228 days. At $100 per day, Plaintiff Wilkinson should have a judgment for $228,000 against Defendants as a matter of law.

73. Defendants are targeting Plaintiffs because Ms. Lowery was a federal whistle blower with an ADA covered disability.

74.    Plaintiff Lowery reported an illegal prescription and illicit drug scheme involving county judges in southern Illinois.   The Defendants retaliated by filing false bar complaints.

75.    When Defendants discovered Plaintiff Lowery was the federal whistle blower, the Defendants' harassment started by Saint Clair County and the Defendant asbestos judge, Andrew Gleeson.[2]

76.    Plaintiff Lowery and Plaintiff Wilkinson have never appeared as a lawyer in Defendant Gleeson's court yet Defendant Gleeson has filed 30 bar complaints about them into Oklahoma.

77.    Defendant St. Clair County had a drug scandal which involved Judge Michael Cook, a heroin addict and Judge Joe Christ, a cocaine addict, doing drugs in a hunting cabin in 2013.  This drug scandal is part of the Chicago Democratic Machine activities or mob activities in Southern Illinois.

78.    Defendant Andrew Gleeson's family runs an asphalt business in Southern Illinois.  It is a closed Teamster shop.  Its main business is getting asphalt contracts from the Saint Clair County Government where Defendant Gleeson is Chief Judge.  His brother Dennis Gleeson runs the asphalt business.

79.    The former Chief Justice, Anne Burke's husband Ed Burke, is a convicted federal felon and "mob boss."  He was convicted of being a Democratic Mob Boss in December of 2023, the same time, Ms. Lowery was being attacked in Oklahoma by Defendants.

_____

https://www.corrections1.com/probation-and-parole/articles/former-probation-officer-pleads-guilty-to-selling-cocaine-to-judges-SXjeI9UlH22lLHBy/

80. This is the type of conduct which has earned Defendants DOJ inquiry under Operation Greylord and the title of "Judicial Hellhole." (See Confidential Exhibits.)

81. On the 26th day of December 2023, Plaintiff asked Defendants to address the issues of the ADA. Defendants refused stating they are unable to follow federal law. *(Exhibit #19)*.

82. Defendants objected to an ADA and HIPAA request stating Illinois rules do not permit Illinois to comply with federal law, the ADA. It is clearly stated in *Exhibit #19* that ARDC has no adequate rules to address an illegal default under the ADA or to address the lack of jurisdiction.

83. Therefore by Defendants own admission this Court must declare the entire ARDC system unconstitutional as a matter of law because they admit they cannot conform their conduct to federal law.

84. On May 2, 2024, these Defendants barred Plaintiff Lowery from the hearing room, hung up the telephone on her three times and then defaulted her.

85. At the time of these events, Plaintiff Lowery was a temporary totally disabled person in Oklahoma living on Indian Land as an Honorary member of the tribe. Does McGirt apply to these facts?

86. Defendants refused to let Plaintiffs into the hearing room. Then Defendants put in an order Plaintiff did not call and they knew that was a false statement. Defendants knew what occurred because it was the subject of a TRO. That also proves Defendants engaged in illegal federal retaliation.

87. If the Court agrees, it means Defendants illegally defaulted a temporary, totally disabled, woman, as an honorary member of a Native American Indian tribe, while she was living on Indian land or as stated in McGirt, on an Indian Reservation in Oklahoma.

88. Then in retaliation, the Defendants misstated Plaintiff Lowery's health information after she was required to give it to the Defendants under the ADA. Defendants did this without her consent or authorization in order to cast her in a false light.

89. Then when she seeks to have the ARDC conduct addressed, the Defendants and the Illinois Supreme Court claim they have no rules to address their violation of federal law or state the issue is moot. It is not moot because they continue to violate federal law.

90. In April of 2023, Plaintiffs complained to Illinois officials in writing from Oklahoma that Defendant Gleeson was harassing Plaintiffs n Oklahoma.

91. In November of 2022, Defendant Gleeson filed approximately seven bar complaints into Oklahoma in October, November, December of 2022 against the Plaintiffs.

92. One of the complaints stated Plaintiffs had gone on a "rampage." Plaintiffs had not gone on any rampage. The better questions was how would Defendant Andrew Gleeson know anything about what was going on in Oklahoma unless Defendant Gleeson was in Oklahoma stalking Plaintiffs to harass them.

93. When Plaintiff's complained to the Illinois Supreme Court about the illegal harassment into Oklahoma, the Defendants retaliated with a false bar complaint stating Ms. Lowery was lying about the harassment.

94. Plaintiffs want a declaratory judgment against the Defendants that their conduct was in fact illegal federal retaliation.

95.    Exhibit #4 is the December 12, 2024, order where the Defendants recite that Ms. Lowery

       filed 59 Motions about jurisdiction, yet the Defendants failed to address how they even have

       jurisdiction over her non existent Illinois bar license.

96.    As this Court is fully aware, when a Court fails to explain how it has jurisdiction over

       Plaintiff, after refusing to address the issue 59 times, the order is void on its face.

97.    Plaintiff Lowery does not need to appeal this order.  She needs a federal court to enforce the

       Constitution and Illinois' jurisdictional limits.

98.    No pleading or order by Defendants exists to explain how they have jurisdiction over

       Plaintiffs.  This proves Defendants' orders are incompetent as the Defendants' orders

       violation federal law.  Fifty Nine Motions and the Defendants failed to ever address how they

       had jurisdiction.

99.    Then the Defendants blocked Ms Lowery's ability to conduct any and all discovery to

       address the Defendants violation of federal law.  The disabled person was forced to go to

       West Texas to request a Declaratory Judgment action against X Corp and Elon Musk to

       prove the Defendants are lying.  And still the Defendants refuse to follow federal law.

100.   X Corp confirmed the Defendants allegations about Plaintiffs social media posts and

       accounts were false because the accounts and posts never existed on the X (formerly Twitter)

       platform. X Corp also confirmed Defendants never inquired of X Corp about the accounts

       or posts prior to filing their false allegations against Plaintiffs.

101.   Defendants also failed to preserve any evidence of their allegations against Plaintiffs.

102.    Defendants denied Plaintiff all medical evaluation and treatment for her cancer.  She filed ten ADA requests asking for accommodation.  Plaintiffs wondered if the ARDC and the Illinois Supreme Court were attempting to kill Plaintiff Lowery.

103.    All ADA accommodation requests were denied.  No dialogue, no nothing.  That caused her to incur $250,000 in medical bills, $5 million in lost wages and $50 million in future medical.  Plaintiffs are suing Defendants for these damages which they caused.

104.    The delay in treatment caused Plaintiff Lowery to suffer from organ failure and permanent organ damage. Plaintiff Lowery now must take medication for the rest of her life.  This was caused by Defendants violation of the ADA.

105.    Even when the Defendants knew they were actively harming Plaintiff, they would not stop the proceedings or make any ADA accommodation.

106.    Plaintiff Lowery nearly died.  The nine denials caused permanent damage and she is looking at multiple organ transplants all caused by Defendants violation of federal law. Then when she asked for an ADA accommodation of more time to file exceptions, the Chair again violated the ADA.

107.    To give this Court an example of how bad the conduct was, Plaintiff Lowery is a health care attorney.   She worked both the Oklahoma City Bombing and 9/11.   She has two Congressional Declarations for her service at these events of PTSD under the ADA.

108.    On April 15, 2024, she was rushed to the St. Francis Hospital Emergency Room in Tulsa with coronary syndrome.  This event was directly caused by the repeated denials of medical treatment and accommodation under the ADA by Defendants.

109. The Defendants denied nine ADA requests accompanied by affidavits from board certified physicians. No discussion was ever had by Defendants.

110. On April 15, 2024, Plaintiff Lowery's physicians ordered her to stop practicing law as she was temporarily, totally disabled, and near death.

111. Three board certified physicians confirmed Ms. Lowery was temporarily, totally disabled. The Oklahoma Bar accepted her physicians affidavits and letters. Oklahoma was her only active bar license.

112. Unlike Oklahoma, the Defendants refused to accept any of Plaintiff's Oklahoma board certified physician affidavits or letters regarding her disability. Defendants refused to hold any discussion. They called everyone in Oklahoma "liars."

113. Four days after Plaintiff Lowery was confirmed as temporarily, totally disabled from sepsis, the Defendants ordered Ms. Lowery to appear at a pretrial on April 19, 2024. That is the anniversary of the Oklahoma City Bombing.

114. Plaintiff Lowery told Defendants she had been up all night vomiting and she had been given morphine for pain. Ms. Lowery asked for a reasonable accommodation on April 19, 2024, the anniversary of the Oklahoma City Bombing, to move the matter to another day. Ms. Lowery explained to the Chair she could not proceed. The Chair responded "he did not care and he was not impressed by the ADA request."

115. Defendant Lopez told Ms. Lowery she needed to "toughen up." Chair Lopez stated the purpose of the proceedings was to take away Ms. Lowery's Oklahoma bar license for not "shutting up her mouth." He even stated he would send his cousin "Vinnie with the Mob" to teach Ms. Lowery a lesson.

When Ms. Lowery asked for the recording of the hearing, it was denied to her. This Court needs to Order all of these tapes produced. The April 19th pretrial hearing statements were shocking to Plaintiffs.

116. Plaintiff Lowery concedes on April 19, 2024 she had no business practicing law. Defendants were violating the ADA and illegally forcing her to appear under penalty of default.

117. An example of the ADA violation was the Defendant Lopez repeated citation to a local case and rule as justification for ignoring federal law and the ADA.

118. The Defendants stated Ms. Lowery's ADA issues and emergency surgery did not qualify her for a continuance because their local rule under *Duric* was superior to the federal law.

119. Mr. Duric was a male lawyer who stole $700,000 from his clients. Mr. Duric asked the Hearing Board three times for a continuance. The Board granted two continuances to the male attorney and denied the third request. None of Mr. Duric's requests were for ADA reasons.

120. Ms. Lowery's request was per federal law and the ADA due to emergency abdominal surgery. None of the Duric requests involved affidavits and records from board certified physicians. None involved a request from an individual with a Congressional record of ADA disability. In fact, it is incomprehensible that any federal court would buy the Defendants ridiculous orders under these facts. Its highly offensive to the first responders who worked these events.

121. On May 2, 2024, the Defendants ruled Ms. Lowery's board certified physician affidavits were not believable. Without any expert testimony, Defendants ruled Plaintiff Lowery did

not have sepsis.  The Defendants planned the illegal default to deprive Ms. Lowery of her civil rights.  *(See Exhibit #12, but also 1, 2, 3 4, 5, 6, 11).*

122.    On May 2, 2024, Defendants called Plaintiffs and instructed them to return the call. *(Exhibit #2)*.  Ms. Lowery, up to that point, had been locked out of her own hearing.  She was too sick to travel and the Defendants refused to permit her to appear remotely by court order from April 9th until the day of the hearing.  *(Exhibit #17 & #18).*

123.    On May 2, 2024, the Defendants denied the NINTH (9th) ADA request without any discussion.  (Exhibits #5 & 6).  Then they ordered Ms. Lowery to phone them.  (Exhibit #2 & #3) and when she returned the call, the Defendants hung up the phone on her, not once. but three times. (Exhibit #3).

124.    Then the Defendants retaliated against Plaintiffs by publishing false orders stating Ms. Lowery never called them back.  The Defendants lied and falsely stated that Ms. Lowery's refusal to call was them back was her "usurping the authority of the court.'  That is a vicious false lie meant to harm Plaintiffs professional reputation.

125.    Defendants then stated because Plaintiff usurped the Court's authority of Defendants, they were justified in proceeding by default in violation of the ADA. (Exhibit #4, #5 & #6).

126.    The Defendants conduct of using false social posts without proper foundation violates the federal Computer Fraud and Abuse Act (CFAA), Title 18 U.S.C. § 1030 because:

a.      § 1030(a)(3): This subsection criminalizes the intentional, unauthorized access to a computer to obtain information from any protected computer with the intent to defraud. If the account was opened to fraudulently target someone with criminal charges, this could apply.

b. § 1030(a)(4): Accessing a computer without authorization or exceeding authorized access, and by means of such conduct, furthering the intended fraud and obtaining anything of value (like personal information or the ability to frame someone) would be relevant here.

c. § 1030(a)(7): Extortion involving computers is also covered. The act of opening an account in someone's name was part of an extortion scheme, then this section applies.

127. The problem is the posts and accounts never existed on X.

128. The Defendants hung up the phone on Plaintiffs on May 2, 2024 and they would not let her into the hearing room to contest jurisdiction. Then Defendants illegally defaulted her.

129. When Plaintiffs filed an ADA complaint with the ADA Court Coordinator after the May 2, 2024, hearing for access denial, the ADA Coordinator told Ms. Lowery the issue was not their problem. (Exhibit #21). Since May of 2024, the Illinois Supreme Court Coordinator has never responded to a single complaint and neither has Defendant Administrator Gutierrez.

130. On April 26, 2024, the day of emergency surgery at St. Francis, Ms. Lowery's surgeon required her healthcare power of attorney to co-sign the consent to treatment form.

131. Yet a securities lawyer in Chicago who has never met Plaintiff Lowery decided he knew more about her health than her three board certified physicians combined.

132. Defendant Lopez ordered Ms. Lowery to appear by phone and when called, he hung up the phone on her. (Exhibit #3).

133. Plaintiff Lowery telephoned the Hearing Board as required. Defendants would not let her into the hearing room to make a record. Defendants hung up the phone on her three times. Then they illegally defaulted her in direct violation of the ADA case of *Reed v. Illinois*.

134. Then the Board retaliated and disclosed all of her HIPAA and GINA protected information without her consent. In fact they falsified her health information in order to portray her in the worst possible light, that is how Defendants treat disabled persons under the ADA.

135. When Ms. Lowery complained to the Court by letter, the Defendants made up a false social media posts to target her. The Red Bee Group in Exhibit #7 found the Illinois Court system has a bullying problem.

136. Plaintiffs are asking this Court go one step further, this Court can adjudicate as a matter of law, it is these Defendants who are the bullies.

## JURISDICTION

137. Oklahoma federal district court has personal jurisdiction over the Defendants because Defendants misconduct occurred in the Eastern District of Oklahoma.

138. Plaintiff Lowery has been under disability and living in Oklahoma since 2022.

139. All acts therefore occurred in Oklahoma, if they occurred at all.

140. In fact, all medical care has been provided by Oklahoma physicians and Oklahoma providers.

141. If an ADA disability hearing needs to occur about Defendants violations of the Act, it must occur in Oklahoma because that is where all events occurred. It is where all witnesses to Defendants misconduct are located.

142. If Defendants did not want to be hauled into federal court in Oklahoma over their ADA issues, then they should not have disobeyed the ADA & federal law in Oklahoma and

accused Dr. VanSchoyck, Dr. Rashid, Dr. Benson & the Saint Francis Healthy system of lying in a court order.

143. Defendants, Illinois & Saint Clair County, submitted themselves to this Court as a matter of law. In June of 2024, the Defendants fell under jurisdiction to the Oklahoma federal courts by filing a false bar complaints against the Plaintiffs with the Oklahoma Bar Association.

144. They claimed in a June 2024 complaint to the Oklahoma General Counsel that Mr. Wilkinson was practicing law in Illinois and yet in their December 12, 2024, order Defendants claim Plaintiff Lowery was unrepresented.

145. Defendants en blanc have submitted themselves to Oklahoma. Defendants sought the benefits and privileges of the Oklahoma Courts. This Court has jurisdiction. A copy of the Complaint is at *Group I Exhibits #11*. One caution, one email was not from server.

146. When Defendants seek the rights, privileges and benefits of the jurisdiction by asking for relief in Oklahoma against the Plaintiffs, they have submitted themselves personally to the jurisdiction. That premise of jurisdiction was resolved in *World Wide Volkswagon v. Judge Woodson,* 444 U.S. 286 (1980*).* A brief in support of jurisdiction which outlines the case law is also filed concurrently herein.

147. Title 28 U.S.C. § 1391 outlines the general rules for determining venue in civil actions. It specifies that a civil action can be brought in a district where any defendant resides, *where a substantial part of the events or omissions giving rise to the claim occurred, or where any defendant is subject to personal jurisdiction*.

148. In this case, the events or omissions giving rise to the claim occurred in Oklahoma, all the property which is the subject matter of the action is situated in Oklahoma; and the defendants

-24-

are subject to the personal jurisdiction of the Court by their actions into Oklahoma. The law is clear, the Defendants conduct was sent to this judicial district, therefore defendants have subjected themselves to this court's personal jurisdiction. *Mobile Anesthesiologists Chi., LLC v. Anesthesia Assocs. of Houston Metroplex, P.A.*, 623 F.3d 440, 443 (7th Cir. 2010).

149. Plaintiff Lowery is a member (honorary) of the Cherokee & Muskogee Creek Nation. The Defendants false orders are preventing Ms. Lowery from being admitted to tribal court under the treaties with the United States. Defendants conduct violates federal law, the treaties with the tribes with the states, and it violates McGirt. It is another reason this Court has subject matter jurisdiction. The Defendants fraud is causing ongoing injury to Plaintiffs.

150. Plaintiffs may have gone 'overboard' with factual detail, but it was out of an abundance of caution. The last thing Plaintiffs are trying to do is annoy the Court.

## ILLINOIS LAWFARE

It is very important for this Court to understand the Illinois Supreme Court is targeting attorneys for their political affiliation. It is called "lawfare." Lawfare is the use of legal systems and institutions to damage or delegitimize an opponent. It is used by the State of Illinois to deter an individual's enjoyment of their legal rights. The term may refer to the use of legal systems and principles against an enemy, such as by damaging or delegitimizing them by wasting their time and money.

The issue of lawfare is not only Plaintiffs claim. Former Illinois Judge Robert Adrian was removed from the bench. He too was a Republican who was targeted and he was quite vocal about his perception of what is going on in Illinois. After seeing the Judicial Inquiry Board antics, Judge Adrian retired from the bench and he retired his bar license.

Despite retiring from the bench and retiring from the Illinois Bar, the ARDC filed charges on Judge Adrian after the JIB disciplined him. Judge Adrian refused to respond claiming that the ARDC did not have jurisdiction. (A re-occurring theme in Illinois) However, Judge Adrian is correct. Under Illinois law, Rule 751, the ARDC does not have jurisdiction. However the lack of jurisdiction has never and will never stop the outrageous conduct of these Defendant. *(See Judge Adrian Exhibit #8.)*

But what is important is what the Judge stated, "I have retired. I am not practicing law," Adrian said in response to the complaint. "I removed my name from the active attorney rolls. There was no good reason for the ARDC to take any action. Again, Judge Adrian correctly recites both the facts and the law. There is no reason to do it, except the Defendants refuse to abide by the U.S. Constitution, Court rules or jurisdictional limitations. The problem is simple in Illinois there are no rules. It is literally whatever the ARDC makes up.

In 2014, Illinois was chastised for its failure to follow the ADA in *Reed v. Illinois.* The State of Illinois targets a Commission lawyer who retired from Illinois and who worked both the Oklahoma City Bombing and 9/11. In February of 2024, Ms. Lowery filed a motion and told the Defendants she required ADA accommodation in the form of medical evaluation and treatment. The request was supported by her Board Certified Oklahoma physicians letters. The Defendants immediately denied the request, not once but NINE (9) times from February until May. Ms. Lowery was rushed to the hospital multiple times by ambulance. She has hundreds of thousands of dollars of bills. By April 15, 2024, she was back in the Emergency Department of St. Francis with an acute condition and the physician was warning her 'death was now imminent.' Despite knowing Ms. Lowery had two Congressional Declarations for her service and knowing that all of the workers were

covered by the ADA for PTSD, the Defendants stated Ms. Lowery had no valid disability. They even ignored affidavits from physicians at St. Francis Hospital in Tulsa. The Defendants claim all the board certified doctors in Oklahoma including the medical director of St. Francis Hospital, Dr. Rashid, are all liars. Anyone who disagrees with Defendants is found to be a liar. That is evidence of their bullying problem. No one is permitted to have an opinion which disagrees with the Defendants.

But what Judge Adrian said about the Illinois Supreme Court, and ARDC in particular, is very important because it affirms the problem. The Illinois Supreme Court refuses to act or address these issues. In fact, Ms. Lowery made the conscious decision to file another ADA request with tyhe Illinois Supreme Court after the Hearing Board denied the request. The Illinois Supreme Court through Joy Cunningham ruled against the Congressional Record and the ADA. Refused to have any dialogue and just said no. Joy Cunningham was appointed to the court by Ed Burke, the convicted federal felon.

To demonstrate how disturbing this Defendant's conduct is, when Ed Burke was convicted of 13 of 14 federal felonies for being a Mafia Don of Chicago, the Defendants refused to remove his bar license. Ed Burke was the spouse of the now retired Chief Justice Anne Burke. The Court stated it had a "personal conflict of interest" with a convicted mobster. The Court also refused to interim suspend him. This too is a repeated theme in Illinois. Male attorney can rape, pillage, and steal from the public and the ARDC refuses to act.

In February of 2024, Judge Adrian was removed from the bench following a Judicial Inquiry Board Hearing ("JIB"). The Judicial Complaint against him arose from a series of events that started with his conviction of Drew Clinton in a bench trial in October 2021. Adrian then overturned his

own decision at a sentencing hearing in January 2022, stating "(t)here is no way for what happened in this case that this teenager should go to the Department of Corrections. I will not do that."  Illinois does not permit judicial discretion of Republican elected judges.  The allegation allegedly involved a prom night date rape where alcohol was involved.  The case divided the community.

On June 25, 2024, after Judge Adrian was removed from the bench, he retired his Illinois bar licence.  Yet the ARDC filed another complaint on what the JIB just ruled upon.  In Illinois there is no "res judicata" or double jeopardy either.  Judge Adrian had already been disciplined by JIB and removed from the bench.  Judge Adrian saw the same atrocious system of no rules, no due process, no discovery, invented charges as plaintiffs, so he retired his bar license.

In Illinois any complaint against a sitting judge must go through the Courts Commission.  Yet here after receiving discipline from the JIB, the ARDC charged him again.  Adrian said, "the allegations against me all allegedly happened while I was a sitting judge.  Next, ARDC rules do not allow you to file any motion to dismiss a complaint."  Judge Adrian is correct.  Illinois rules prohibit the Chair from hearing any dispositive motion until the day of hearing.

> RULE 235 Motions
> All motions shall be made in writing prior to hearing. Rulings on motions shall be made by the chair of the panel or in a manner as the chair shall determine. No oral arguments shall be allowed on motions. The movant may submit written authority in support of the motion and the other party may submit counter authority within 7 days after receipt of the movant's authority. To facilitate the development of a full evidentiary record *in matters other than default proceedings*, dispositive motions such as those seeking summary judgment or dismissal prior to completion of the evidentiary record on charges shall not be permitted. This rule is not intended to prevent motions pursuant to Illinois Supreme Court Rules 201 and 219 or motions for a directed finding at hearing. (Amended, effective September 1, 2012) [Emphasis added.]

Rule 235 is unconstitutional because it imposes a barrier to disabled persons under the ADA. A court cannot refuse to hear a motion when it has no jurisdiction.

To force anyone disabled person to defend a complaint in a court with no jurisdiction is malicious prosecution, harassment and a violation of the 14th Amendment Due Process because it denies the accused relief that is available to every other administrative hearing defendant in Illinois or the USA. A court cannot refuse to hear a motion about jurisdiction. Yet Illinois does it because no federal court will address the violation.

Defendants use Rule 235 to target minorities and anyone the Defendants decides are their political opponents. In fact, Plaintiffs have exhausted all remedies. Plaintiff have no way to contest the Court's illegal jurisdiction. Despite Plaintiff Lowery filing 59 motions asking for Defendants to address jurisdiction, when the May 2nd hearing day came, the Defendants refused to address jurisdiction. Then the Hearing Board bolted the hearing door shut to Plaintiffs and refused to let her in, defaulting her. This apparently was planned.

Back to Judge Adrian's ARDC complaint. In the new complaint, the ARDC claimed the subsequent removal of the judge made him subject to further disciplinary action under Illinois Supreme Court Rule 770.

Rule 770.
Conduct of attorneys which violates the Rules of Professional Conduct contained in article VIII of these rules shall be grounds for discipline by the Court. Discipline may be:

(a) disbarment;
(b) disbarment on consent;
(c) suspension for a specified period and until further order of court;
(d) suspension for a specified period of time;
(e) suspension until further order of the Court;
(f) suspension for a specified period of time or until further order of the Court with probation;
(g) censure; or
(h) reprimand by the Court, the Review Board or a hearing panel.

Ill. Sup. Ct. R. 770

But the problem is that the Defendants always skip over Rule 751. Rule 751 is the

jurisdictional limit of the ARDC.:

> Rule 751 - Attorney Registration and Disciplinary Commission
>
> (a)    **Authority of the Commission**. The registration of, and disciplinary proceedings affecting, **members of the Illinois bar**, and unauthorized practice of law proceedings instituted under the authority of Rule 752(a), shall be under the administrative supervision of an Attorney Registration and Disciplinary Commission. Any lawyer admitted in another United States jurisdiction who provides legal services on a temporary basis in Illinois pursuant to Rule 5.5 of the Illinois Rules of Professional Conduct shall be subject to the administrative supervision of the Attorney Registration and Disciplinary Commission to the same extent as a lawyer licensed to practice law in this state. The authority granted in this paragraph to the Attorney Registration and Disciplinary Commission related to the unauthorized practice of law proceedings shall be independent of that granted by statute, regulation, or other legal authority to any governmental agency, entity, or individual to pursue action relating to the unauthorized practice of law, including but not limited to any action by the Illinois Attorney General or State's Attorney, or any action filed pursuant to the Attorney Act ( 705 ILCS 205/1 )

So the authority of the ARDC is limited to Members of the Illinois bar. Well let's turn to the

proof on that point. The Illinois Bar confirmed Ms. Lowery retired her membership on June 30,

2023. Defendants refused to follow their limited jurisdiction for Judge Adrian or Plaintiff Lowery

and then claim Plaintiff Wilkinson is practicing law in Illinois. The ARDC is no different than the

federal courts. The ARDC is an agency of limited jurisdiction. Yet is it terminally confused by its

own rules.

The reason Plaintiffs mention this case is because it will demonstrate a pattern and practice

of the Defendants. A state where the Constitution is never followed, jurisdictional limitations are

ignored and an attitude where Illinois officials are "above the law." So let's turn back to what Judge

Adrian said about the ARDC, jurisdiction and their willingness to follow the law:

> As I stated previously, I no longer have an active law license. I do not intend to contest this in any way. It would not do me any good. I would just be wasting my time and money just as the ARDC is wasting theirs. Except the ARDC is not actually wasting their own money, *they are wasting the fees the attorneys are forced to pay to support them*. [Emphasis added.]

Adrian said in his response he believes the initial complaints to the Judicial Inquiry Board and the

Illinois Courts Commission, and now the new complaint filed with ARDC *are the latest examples*

*of political attacks against conservative politicians, judges, and attorneys*.

> This action is just more of the lawfare being waged against me and other conservatives, "he said. "The Democrats take control of the reins of power and then use that power against their political opponents. (They) couldn't beat me at the ballot box, so instead they use these unelected 'disciplinary' boards to defeat the will of the people.

Adrian said the disciplinary board process in the state is lacking in oversight *and doesn't allow*

*subjects of complaints a proper opportunity to defend themselves*.

> They use these boards because the accused has no real right of due process, and they are controlled by elected Democrats and their appointees," he said. "**The boards don't have any real rules to follow, and they don't even follow the rules they say they have**. [Emphasis added.]

This is the opinion of a former judge of the Illinois system that employed him. Retired Judge Adrian

is telling the truth. The exact same thing occurred in Plaintiff's case. The Defendants refuse to obey

their jurisdictional limits. Why should they, their rules have no consequences to them.

The Defendants refuse to follow their rules, the Constitution, jurisdictional limits, discovery,

anything. To be clear, Plaintiffs have no interest in being Illinois lawyers. Plaintiffs are seeking a

temporary restraining order and permanent injunction against the Defendants. Plaintiffs are also seeking monetary damages.

On May 2, 2024, the Illinois Supreme Court ARDC Hearing Board (hereinafter "Hearing Board") held an illegal default hearing against Plaintiff Margaret Lowery. At the time of the hearing, Ms. Lowery was not a member of the Illinois bar. The Hearing Board had no jurisdiction. The default proceedings violated the ADA and various provisions of the U.S. Constitution, specifically substantive and procedural due process.

Defendants violated Plaintiffs civil rights by repeatedly denying ADA accommodation, denying all discovery, defaulting her and by retaliating against Plaintiffs through misuse of bar regulation system. Ms. Lowery is a federal whistle blower against the Court. In other words, this is not bar regulation, it is illegal retaliation or lawfare. To be bar regulation, the Plaintiffs would have to be 'members of the Illinois bar' when the incident arose. They were not members of the bar and therefore this is illegal federal retaliation. The Defendants repeated use of "bar actions" when no professional activities or license exists, forms the basis for alleging the Defendants conduct constitutes a pattern and practice of illegal federal retaliation, harassment and violation of the ADA.

Not only does Ms. Lowery have an ADA covered disability, but she has a twice declared Congressional Declaration of ADA coverage because she worked terrorist attacks of 4/19/1995 and 9/11/2001. In fact, Ms. Lowery has blood cancer likely from working at Ground Zero at the Oklahoma City Bombing in 1995. Illinois overruled the Congressional record and stated Ms. Lowery had no ADA covered condition. The Illinois Hearing Board refused to obey federal law, state law, the Congressional record and continues to argue that federal law does not apply to it.

Defendants act of ruling against the Congressional record and federal law voids their orders. Then the Hearing Board went further. The Board ruled a local rule was superior to federal law, the Congressional record and overruled the supremacy clause of the U.S. Constitution as set forth in Marbury v. Madison. The Defendants cited some local court rule as its rationale to overrule the Congressional record and the ADA. No legal mechanism exists for a state to overturn federal law or the Congressional record. In fact, the reason Congress put its rulings in their Congressional record was to avoid what the Defendants did to Respondent; subject those who worked the terrorist attack to arbitrary and capricious attacks with ludicrous claims the victims of the attacks were not yet quite "sick enough."

The Defendants literally wrote in an Order, that Ms. Lowery's health concerns, her PTSD, sepsis, organ failure, cancer, kidney stones, emergency surgery were all lies. None of those reasons was sufficient to follow federal law, the ADA. If this seems unbelievably harsh, well that is because the illegal default was all planned by the Defendants.

On April 23, 2024, Defendants via ARDC Rachel Miller sent out this email.

> I spoke with Bill and reminded him that the ARDC would file charges if he helped Ms. Lowery. The decision regarding her license was made. Nothing she raises in argument about jurisdiction will make any difference. This is a done deal. Once the default is entered, the case is effectively over. Ms. Nester is on board, and will rush judgment through before she (Lowery) can do anything about it. That will teach her the lesson she deserves.
>
> The Clerk forwarded the phone hearing information again to her. Everything is in place. We will make sure she does not appear on the 2nd. (*See Exhibit 12*)

For this Court's information Bill is Attorney Bill Moran. He was an ARDC regulator and served as Ms. Lowery's bar counsel until November 2, 2023. On November 2nd 2023, ISBA Mutual Insurance

Company notified Plaintiff she no longer had coverage because she was no longer a member of the Illinois bar.

This Court now understands the importance of what Judge Adrian has stated. The Defendants email is shocking. But what is even more shocking, the email recites on April 23, 2024, exactly what the Defendants did on May 2, 2024. So in that regard, the email is self authenticating.

On June 30, 2023, Ms. Lowery retired from the Illinois bar. In fact, the Defendants told her to return to Oklahoma. The Defendants stated that Ms. Lowery health care issues from working the Oklahoma City Bombing and 9/11 were "not their problem." Under federal law, those who worked those disaster, both first and secondary responders, have Congressionally declared PTSD declarations under the ADA. PTSD is a covered condition under federal law, the ADA. Therefore, the Hearing Board violated federal law and Ms. Lowery's civil rights by repeatedly ruling she was not covered by the ADA. No state Administrative "Hearing Board" has the authority to overrule the Congressional Record. To even force Ms. Lowery to engage in the repeated argument in pleadings was abusive bullying. That is why it was listed in the Congressional Record. Congress decided the states should not engage in any ADA evaluation with victims of the attacks. This kind of abusive bullying is a serious problem inside the Illinois Court system. Lawyers are committing suicide over it. It is a problem the Illinois Supreme Court knows exists but they refuse to address. In fact, the Court commissioned a bullying study which found there was a serious bullying problem in Illinois. *(Exhibit #7.)* Defendants just insist they are not the bullies. This federal court should find otherwise.

But the problem is the Defendants are now directing their conduct into Oklahoma where it has caused permanent injury to two lawyers in Oklahoma. The Plaintiffs' are not members of the

Illinois bar and they are not subject to ARDC jurisdiction. In Defendants December 12, 2024, Order, they state Ms. Lowery was not represented by counsel in the Illinois proceedings. Yet Defendants filed a false and defamatory complaint with the OBA General Counsel claiming Plaintiff Wilkinson was engaged in the practice of law in Illinois for Ms. Lowery. The Defendants December 12th (2024) order is their confession that their pleadings and allegations are complete lies.

The Plaintiff's ADA covered condition had already been determined by Congress. Therefore the Defendants never should have made an inquiry about the ADA issue, let alone entered any Order denying the diagnosis was "fake" or "made up." That is a level of bullying and bias which Defendants engage in and it is shocking. Yet the Defendants continued to enter NINE orders starting on February 22, 2024 (Pleading #70). In the December 12, 2024 order the request became "unspecified testing" and this is clearly the Defendants 'coverup.' There was nothing unspecified about it, the Defendants never followed the law to inquire.

Ms. Lowery filed a motion to stay the proceedings for two weeks so she could go in patient for medical evaluation and treatment. Not only did the Hearing Board deny the Order, but Ms. Lowery filed it again with the Defendants and the Illinois Supreme Court. Justice Joy Cunningham personally ruled against Respondent, the ADA, the congressional record and denied the ADA accommodation with no discussion. That demonstrates that this issue is the "tone at the top."

When the Court violated the ADA, they voided the proceedings. The Defendants have a conflict of interest. The Court personally engaged in a tort and civil right violation against the Plaintiffs as a matter of law. By denying the accommodation, the Court voided the proceedings. It was never a fair hearing and it was never intended to be. The Illinois system is unconstitutional on its face.

## COUNT I - ADA
### (42 U.S.C. § 12132 &  29 U.S.C. § 794)

151.    Plaintiffs reallege and reassert all facts set forth in prior paragraphs of this Complaint and incorporates same into this Count.

152.    Plaintiffs allege Defendants violated the Americans With Disabilities & the Rehabilitation Act, 42 U.S.C. § 12132 &  29 U.S.C. § 794 by engaging in the acts described in this Count.

153.    Plaintiffs are entitled to declaratory judgement and an injunctive relief for the Defendants violation of the ADA.

154.    Plaintiffs, both Mr. Wilkinson and Ms. Lowery, volunteered their services during the Oklahoma City Bombing.  Mr. Wilkinson represented Edye Smith, the mother of Chase & Colton Smith who were murdered by Timothy McVeigh on April 19, 1995.  Ms. Lowery worked Ground Zero performing recovery services.

155.    Plaintiff Lowery then worked 9/11/2001 in Tower II from Mission Control.

156.    Congress declared those who volunteered services during those terrorist attacks to have PTSD under the ADA.

157.    Plaintiff Lowery and Plaintiff Wilkinson were diagnosed with ADA conditions as described in the confidential Group II Exhibit.

158.    Plaintiff Wilkinson also has condition B, E & F.  Plaintiffs' conditions are covered conditions as defined by the Americans With Disabilities Act & the Rehabilitation Act, 42 U.S.C. § 12132 &  29 U.S.C. § 794.

159.    From 2018 to the present, Plaintiffs have requested reasonable ADA accommodation from Defendants.

160. Defendants denied every ADA request for accommodation Plaintiffs made from 2018 to the present without any discussion or communication. No dialogue ever occurred.

161. Defendants refused to engage in any discussion about the reasonableness of Plaintiff Lowery's ADA requests.

162. Defendants simply ignored federal law and wrote "denied" on every order. No discussion.

163. The 7th Circuit in *Reed v. Illinois* 14-1745 (2015) wrote about the Illinois Court systems failure under the ADA:

> A good reason for according finality to the ruling in a previous case is that the party made the same argument in that case and it was rejected on a sound ground. That is not this case. In the plaintiff's personal-injury suit, she was in no position, being pro se and seriously disabled, to establish the applicability to her case of the federal laws against disability discrimination. She knew she needed help to litigate her personal-injury suit, especially having no lawyer. *And so she asked for help. Many of her requests were ignored or denied by the judge, who was at times impatient with and even rude to her; and his conclusion that her disability had been adequately accommodated was untenable.* There was nothing "fair" in his bestowal of inadequate accommodations, or in his conclusion, in the very ruling on her post-trial motion in which he adjudged her incompetent to make an oral presentation, that the accommodations provided for her at trial had been adequate. *She was denied a full and impartial opportunity to litigate the accommodations issue when the judge refused to grant her oral argument, on account of her disability, and she had no lawyer to argue in her place*.
>
> Apt is the observation of the Supreme Court in *Tennessee v. Lane*, 541 U.S. 509, 531 (2004), that Title II of the ADA was passed in part to provide equal access to courts for the disabled: "The unequal treatment of disabled persons in the administration of judicial services has a long history, and has persisted despite several legislative efforts to remedy the problem of disability discrimination."

164. But the 7th Circuit in the *Reed decision* held that the most important duty of a federal district court was to assume federal jurisdiction to address the violation of the ADA by the states. The 7th Circuit stated as it applies to the state courts denying access:

> For one court (the state court) to deny accommodations without which a disabled plaintiff has no chance of prevailing in her trial, and for another court (the federal district court) on the basis of that rejection to refuse to provide a remedy for the discrimination that she experienced in the first trial, is to deny the plaintiff a full and fair opportunity to vindicate her claims.

165. Defendants conduct violates Title 42 U.S.C. § 12132 & 29 U.S.C. § 794 and it confers subject matter jurisdiction to this Court because the Plaintiff's injuries occurred in Oklahoma.

166. From 2018 to the present, Defendants have denied a total of ten ADA requests for accommodation. Defendants claim state proceedings involving retired attorneys who represents themselves does not invoke the ADA.

167. This is a near identical fact presentation to the *Reed decision* and yet the Defendants continue to violate federal law under the ADA. (*See Exhibit #13)*

168. Defendants believe the ADA does not apply to Illinois proceedings or to lawyers who desire to appear remotely from an Oklahoma Indian Land in an Illinois courtroom.

169. Defendants position is they are not required to grant an attorney an ADA accommodation or grant court access under the ADA in Illinois administrative bar hearings.

170. Defendants assert they may unilaterally deny application of the ADA because it does not apply to former Illinois bar members who are now disabled persons.

171. Even the Illinois Supreme Court ADA Coordinator refuses to engage in any ADA dialogue. She refuses to process all ADA complaints.

172.    The Defendant ADA Coordinator wrote the reason Illinois does not have to follow the ADA

is that Plaintiffs are not human beings entitled to civil rights. The ADA coordinator wrote

> On May 30, 2024, at 11:02 AM, ada coordinator
> <adacoordinator@illinoiscourts.gov> wrote:
>
> May 20, 2024
>
> Ms. Lowery,
>
> Your email of May 24, 2024, has been received by the Court
> Disability Coordinator for the Supreme Court of Illinois.
>
> Please be advised that the Court Disability Coordinator for the
> Supreme Court of Illinois *handles requests for accommodations and
> grievances by members of the public who wish to participate in
> activities, programs, and services before the Supreme Court*. After
> a review of your submission, it does not appear that the grievance
> filed is directed at the Supreme Court of Illinois. If you believe the
> ARDC has not honored your requests for accommodations, you will
> need to submit a complaint to the ARDC.
>
> Thank you.
> Cynthia A. Grant
> Court Disability Coordinator
> Supreme Court of Illinois

173.    Plaintiffs filed a complaint with the Illinois Supreme Court ADA Coordinator because

Defendants:

a.      as the State of Illinois denied NINE ADA requests for accommodation (now ten);

b.      refused to let Ms. Lowery appear from Oklahoma remotely when her physicians

stated she was temporarily totally disabled and she could not travel to Illinois;

c.      refused all reasonable accommodations and also refused to move the hearing date.

d.      hung up the telephone on Plaintiffs three times and refused to let her into the hearing

room to contest jurisdiction, confront witnesses, or defend the charges.

e.  locked the disabled individual out of the hearing room, would not let them in

174. Shocking, the response of the Illinois Supreme Court ADA Coordinator appears to be that she does not assist persons like plaintiff because the Court views ex lawyers who are Jews as subhuman.

175. Defendants, including the Illinois Supreme Court ADA Coordinator, wrote in an email that the Court locking the Plaintiff, a disabled Jews out of an Illinois hearing, is not a grievance the Illinois Supreme Court will address.  Any state court that writes such a comment is so biased as to make further litigation in such a state pointless.

176. It is so bad that Illinois Governor JB Pritzker publicly stated he would block all federal attempts to enforce federal law in Illinois, including deportation of illegal alien criminals out of the state.[3]

177. In 2021 Defendants passed a law which would prevent local law enforcement from assisting federal authorities in enforcing federal law.[4]

178. Then Defendants in a written Order mocked Plaintiff's disabilities and also her repeated requests for ADA accommodation. (See Exhibits #4, 5, 6, 21)

179. Plaintiff Lowery had emergency surgery on April 26, 2024, with abdominal stents inserted. Defendants ignored her board certified physicians orders and attempted to force her to appear

_____

[3]https://abc3340.com/news/nation-world/illinois-gov-defies-trumps-immigration-policy-not-something-were-going-to-accept-jb-pritzker-trump-tom-homan-illegal-immigration-border-crisis-ice

[4]https://www.injusticewatch.org/civil-courts/immigration/2021/illinois-way-forward-immigration-detention-centers/

on May 2, 2024.  The Defendants had no jurisdictional authority and illegally proceeded by ignoring federal law and using only rules fabricated in Illinois for the ARDC.

180.    For this Court to understand the issue, Plaintiff Lowery was prohibited from driving a car because she was on narcotic medicine.  She would void her automobile coverage driving while impaired because her three board certified physicians said she should not practice law and she should not drive or travel.  Yet Defendants ignored the physicians orders without ever taken any evidence from medical experts.  This sounds like practicing medicine without a license.

181.    No commercial air carriers would ever permit Ms. Lowery to get on an air plane with sepsis and tubes coming out of her orifices, post surgery.

182.    Then Defendants entered an order on April 9, 2024, denying Plaitiff Lowery the ability to appear remotely from Oklahoma and banned all of her witnesses appearing  That meant Ms. Lowery was effectively barred from appearing or presenting her case.

183.    The Illinois Defendants denied every ADA request filed by Plaintiff since 2018 with no explanation and no discussion.

184.    On May 1, 2024 Andi Watson, Deputy Clerk of the ARDC sent Plaintiff the following email immediately after Plaintiff submitted an electronic Motion for Continuance under the ADA as follows:

> The following link is being provided pursuant to the Hearing Board Order entered on April 9 2024, allowing Judge Stiehl and Judge McGlynn to testify remotely. **Please note that no other individual will be admitted through this link.**

185. On May 1, 2024, the Defendants wrote Plaintiff and told her she had to travel to Illinois to appear. The May 1st email violated federal law, specifically the ADA.

186. Every order of Defendants was a violation of federal law because Illinois had no jurisdiction over Plaintiff according to Rule 751.

187. Plaintiff is left with no way to remedy the ADA violations.

188. Illinois rules prohibit the raising of any material issue, such as jurisdiction, in any motion to dismiss until the day of hearing. Then Defendants locked Plaintiff out of the hearing.

189. Plaintiffs cannot even raise the issue she is under disability either of Defendants rules. Illinois has no rules which permits a lawyer to raise the issues in proper adjudication, therefore the Illinois rules are unconstitutional on their face.

190. The Defendants continue to state there is no process for addressing federal law in Illinois. *(See Exhibit #22).*

191. On May 2, 2024 the Illinois Defendants entered an Order denying Ms. Lowery's Motion for Continuance under the ADA due to herTemporary Total Disability.

192. On May 2, 2024, the Illinois Defendants told Plaintiff she must appear remotely at 10:00 a.m. If the Illinois Defendants had actually read the Motion for Continuance, they would have known Ms. Lowery was having her abdominal stents removed that morning and she was sedated.

193. The Illinois Defendants knowingly entered an Order requiring Plaintiff to appear, when they knew or should have known plaintiff was disabled under the ADA.

194. The Illinois Defendants,' without regard to her current serious medical condition. attempted to force Plaintiff Lowery to appear at the hearing in Springfield, Illinois. The Clerk was

ordered to call and email Ms. Lowery to tell a physically disabled person the Court was ordering her to appear in her disabled condition and affording her zero time for preparation. This is exactly what was planned per Exhibit #12.

195. The Illinois Defendants think that a few minutes notice is sufficient time for a disabled person to prepare her case and to appear ready for hearing while on morphine.

196. Now let's look at when the Order that was actually entered. According to the metadata it was entered on May 2, 2024, at 2:43 PM, which is after the court entered its default order. The entire hearing was a sham proceeding.

197. The Defendants conduct of telephoning a temporarily totally disabled person minutes before a hearing telling them to appear raises substantial 14th Amendment issues. Especially when the April 9th Order barred, for thirty (30) days, all of Plaintiff's witnesses from remotely appearing or testifying.

198. The April 9th Order when coupled with the April 23rd email by Defendants proves this was a conspiracy to default Plaintiff.

199. The April 9, 2024, order and the May 1, 2024, email stated no one would be admitted to testify remotely. Again, the Illinois Defendants violated the ADA and by barring everyone from the Courtroom in direct violation of the ADA.

200. The ADA violation cannot be remedied by an order entered minutes before the hearing starts.

201. Months of ADA violations had already occurred to Plaintiff Lowery preventing her preparation of her case.

202. Defendants denied to her all discovery. They refused to allow her to take a deposition that was CSR transcribed. Defendants prohibited a disabled person from having a court reporter

at a deposition.

203. The May 2 & 10, 2024, Orders prove Defendants actions were intended to deprive Plaintiff Lowery of her civil rights. It was an illegal order made without jurisdiction in violation of federal law. A TRO must be entered to address these issues.

204. When Plaintiff Lowery reported the harassment to Illinois in a complaint on April 4 and 24, 2023, it was done as a resident of South Dakota living in Oklahoma.

205. On May 1, 2023, Ms. Lowery notified Defendants she was terminating her membership in the Illinois Bar as of June 30, 2023.

206. On June 30, 2023, Plaintiff Lowery retired her Illinois bar membership. Under Rule 751 Illinois lost jurisdiction over Plaintiff Lowery.

207. In September of 2023, Defendants filed a bar complaint against Plaintiff Lowery for conduct that arose when Plaintiff was not a member of the Illinois Bar per Rule 751. The Defendants retaliated into Oklahoma.

208. Without receipt of any expert medical testimony, Defendants rejected all of Plaintiff's Oklahoma board certified medical providers testimony.

209. The Medical Director of St. Francis Hospital is Dr. Rashid. The surgeon was Dr. Benson and the board certified family practitioner was Dr. VanSchoyck. The medical records were from the Epic Medical Records system of St. Francis Hospital.

210. According to Defendants, all Oklahoma board certified physicians, their medical records and their opinions about Plaintiff Lowery are all lies.

211. On the other hand, the Defendants, who are not medical doctors and who have never examined Plaintiff, well all of their medical opinions about Ms. Lowery are valid.

212. Where is Defendants' evidence from any medical provider that anything they ever stated was accurate. The Defendants wrote that hypothermia is not a sign nor symptom of sepsis. In fact, it is a sign that the patient will have a very poor outcome from sepsis. This is how dangerous the conduct of Defendants has been throughout this matter.

213. That means Defendants invented medical evidence, put it in an order to target Plaintiffs. The Defendants are not qualified to render any medical opinion and their conduct violates federal law.

214. Where is the medical testimony to support Defendants conclusion contained in their orders. In one portion of the order, the Hearing Board said that a photo of Ms. Lowery in the surgical suite at St. Francis was of her not looking "sick enough."

215. That proves these Defendants are dangerously incompetent. The Defendants can not qualify to make medical decisions by the mere fact that they are state officials. These state officials are not authorized by law to make medical decisions on behalf of Plaitiff Lowery. State official cannot just look at a photograph and deny ADA accommodation to Plaintiff Lowery. That level of bias and incompetence is stunning in its discriminatory effect. (See Exhibit #22) This Court must act.

216. It is clear Defendants expect Plaintiff to take her medical direction from them. Defendants found Plaintiff did not have sepsis, she was not temporarily totally disabled, she did not have emergency surgery and Defendants based all of these medical conclusions absent expert medical testimony? Where is there any evidence to support these findings?

217. No testimony exists in any transcript to support what Defendants are doing. Plaintiff should not have to deal with and address this level of corruption. Anyone who makes up findings

and invents evidence deserves to have their order vacated by a federal judge and to be sanctioned.

218.    The Defendants found as a matter of law, in direct violation of federal law, that Plaintiff's inability to appear was willful when, in fact, ARDC officials asked Plaintiff Lowery to call in and join the hearing minutes before the hearing was to begin.  The response from the ARDC and Hearing Board was to hang up the multiple times thus refusing Plaintiff the ability to participate in what became a sham hearing.  This is outrageous behavior by state officials.

219.    Copies of the Court order of May 2 entered on May 10, 2024 are contained *in the Master Index, Exhibit 4, 5, 6, & 22..*

220.    The Defendants have ruled state Commission Rules are superior to federal law.  State officials are inventing testimony and facts and therefore Plaintiffs are entitled to declaratory judgment as a matter of law.

221.    The Defendants improperly and illegally made up evidence and facts.  They intend to send their illegal orders into Oklahoma without having jurisdiction to do so.

222.    Then these same Defendants wrote that a 62 year old cancer patient with sepsis, five days post emergency abdominal surgery, should bounce out of bed with tubes hanging out of her urethra, hop on a plane, fly nearly 1000 miles to Illinois and try a case.

223.    Defendants' conduct is outrageous in its violation of federal law.

224.    The Defendants argue that Plaintiff's condition is not serious enough to grant a continuance.  The question is what evidence did the Defendant possess to render its decision.  The is a blatant revelation of its bias and discrimination.

225. In February of 2024, Plaintiff asked Defendants for a five day stay so she could go in-patient in Oklahoma for testing and treatment of her ADA covered medical conditions. Now Defendants claim it wasn't specific enough. Federal law doesn't work that way, their violation because it was their duty to inquire and the Illinois Defendants breached its duty.

226. This is not an unreasonable request for someone with Conditions set forth in Group II Confidential exhibits. From February to May 2024, the Defendants objected to every ADA request and then the Defendants' Chair always blindly sided with the Defendants prosecutor.

227. Plaintiff filed 60 valid and truthful motions. Not one was granted. That is illegal bias in violation of the U.S. Constitution.

228. Defendants conduct is:

   a.    extreme bias against one or both of the parties.

   b.    collusion between the panel and parties.

   c.    in violation of due process rights and the accused overall rights were not respected.

   d.    unfair as the process as it was completed with such excessive haste that the parties could not have a fair trial.

   e.    is not impartial by the ARDC or the Hearing Board.

   f.    the proceedings lacked all decorum.

And when all of these things are present it means the Illinois and U.S. Constitution was violated.

229. Defendants ordered Plaintiff be denied medical treatment in Oklahoma for blood cancer, sepsis, and her kidney stones. The only conceivable reason to do that is to cause the death of Plaintiff.

230.	The Defendants advocate for violation of federal law and therefore a permanent injunction is proper.

231.	Pursuant to the ruling in *Reed v. State of Illinois*, Case No. 12-cv-7274 (N.D. Ill. May 09, 2016) (7th Circuit) 'for the state court to deny any and all reasonable accommodations to a party litigant, without which the disabled party has no chance of prevailing in her trial, and then for another Court (this federal court), on the basis of that rejection, to refuse to provide a remedy for the discrimination she just experienced, *is to deny a party litigant full and fair opportunity to vindicate herself from the false claims and lack of jurisdiction of these Defendants*.

232.	In *Reed*, the federal court ruled that 'Congress has abrogated states sovereign immunity for cases that arise under Title II of the ADA *if they implicate the "fundamental right of access to the courts."* Tennessee v. Lane*, 541 U.S. 509, 533–534, 124 S.Ct. 1978, 158 L.Ed.2d 820 (2004).

233.	This case confirms the fundamental right of access to the Courts by those suffering a disability.  In the case at bar Plaintiff, because of her disability, has been denied ALL ACCESS to the Courts.

234.	In this case Defendants refused both the application and enforcement of the ADA claiming state court officials are not subject to federal law.  This is a frivolous argument made by supposedly knowledgeable Defendants.

235.	The fundamental right of access to the courts refers to those constitutional rights that protect a litigant's ability to get into court and to receive a judgment. *King v. Marion Circuit Court*, 868 F.3d 589, 592 (7th Cir. 2017), cert. denied, —— U.S. ——, 138 S. Ct. 1582, 200 L.Ed.2d

768 (2018); see, e.g., *Lane*, 541 U.S. at 515, 124 S.Ct. 1978 (physical exclusion of wheelchair-bound litigants from second-floor courtroom is denial of access).

236.    Defendants were repeatedly informed that Plaintiff Lowery:

a.      Suffered from ADA covered conditions which placed her in the protected class under federal law.

b.      Had conditions covered by the ADA and RA.

c.      required timely medical treatment otherwise she would suffer injury up to and including death.

d.      The lack of timely and proper medical care lead to septicemia which caused severe medical complications and permanent damage to multiple organs.

e.      Sepsis rendered Ms. Lowery temporarily totally disabled requiring the appointment of a durable POA over her health and finances

f.       mortality rate for her sepsis was 60% with bed rest, and 100% mortality rate if she went AMA and tried to appear before Defendants in Illinois.

237.    A copy of the Plaintiff's Motion filed on May 1, 2024 *(Exhibit #24)* along with the Defendant's Orders filed on May 2 & 10, 2024*. (Exhibit 4, 5 & 6)*

238.    Defendants "Hearing Board' included:

a.      Jose Lopez who is the Hearing Board Chair.  He is the securities chief to an international law firm Perkins Coie.

b.      Martha Ferdinand of St. Louis.  She claims to be a healthcare attorney.

c.      Ms. Delheimer is Division Manager to the Illinois Department of Aging.  The Illinois department of aging exists to serve and advocate for older Illinoisans and their

caregivers. They are also ordered to report abuse and neglect of anyone over the age of 55 in state agency services.  Ms. Delheimer denied TEN ADA requests for disability accommodation to a cancer patient over the age of 55 to receive care.

      d.      The Board engaged in a clear conflict of interest.

239.    As an employee of the State of Illinois Defendant Delheimer and Defendant Ferdinand as a health care attorney, both should have known by education, training and experience that a 62 year old cancer patient with sepsis had a fatality rate of 60%.

240.    After all, it was Ms. Delheimer's job and duty to know the risks when sepsis is present.  Ms. Delheimer works for a state agency whose sole purpose is to make sure elderly people, like Plaintiff, are not medically neglected.

241.    Ms. Ferdinand claims to be a 'healthcare attorney' and that means she was in direct competition with of Plaintiff Lowery.  Yet she claims not to have a conflict under the Clayton Act.

242.    Defendant Delheimer violated her agency's mission statement, statutes, and purpose of her governing agency by engaging in intentional medical neglect of an elderly cancer patient in Oklahoma.  She sent repeated orders into Oklahoma to harm two elderly Oklahomans.

243.    Defendants went against the medical advice of three board certified physicians and every known medical treatise based upon what testimony or evidence.

244.    The Defendants ordered Plaintiff to get on an airplane and fly to Springfield, Illinois with medical tubes coming out of her urethra, taking antibotics for sepsis while temporarily totally disabled, with coronary syndrome & pancreatitis, looped out on Opioid medications and unable to prepare her case.  This is what Defendant demanded of Plaintiffs under the ADA

245. The delay and repeated mis-diagnosis by Defendants has caused Plaintiffs to become liable for medical bills past, present and future in an amount of more than $50 million dollars and the sole proximate cause of the injuries are Defendants' conduct.

246. Defendants refused to speak to Plaintiff's Power of Attorney, her physicians, nor did they even attempt to make a reasonable inquiry about her emergency medical situation. Defendants simply continued to attack Plaintiff to try to cause her financial ruin and possible death.

247. On May 2, 2024, the Defendants failed to receive any medical testimony from anyone except Plaintiff's physicians so where did the facts come from to place in their orders of May 2, May 10 or December 12, 2024. It does not exist.

248. Defendants made up the medical evidence just like they fabricated the social media accounts and posts.

249. That means the May 2, 2024, May 10, 2024, and December 12, 2024, Orders are a product of personal bias, illegal hearsay and the discriminatory personal beliefs of individuals who are hell bent on violating federal law. No testimony exists in the record to support a single medical finding of Defendants.

250. Defendants entered factual findings invented out of whole cloth. They made uip false medical testimony to target Plaintiffs and called board certified physicians liars. It is outrageous conduct which defines why no federal judge can send a disabled person back into that malignant system.

251. No disabled person, and particularly Plaintiff Lowery, can get a fair hearing in Illinois before any Illinois court. The ARDC with it threats to discipline any Illinois attorney who dares to

help or represent her in any proceeding in Illinois court system.

252.  In the December 12, 2024, order the Defendants wrote they based their findings on a picture of Plaintiff in the surgical suite.  Their personal belief was that Ms. Lowery did not look sick. A person in the pre operating suite of a hospital does not "look" sick is not a proper diagnostic endeavor.  Defendants statements are so outrageous as to constitute extreme bias and bad faith.

253.  To Defendants only a dead person or corpse would ever look sick enough.  If an individual is prepared for surgery and in the pre operating room for emergency surgery with sepsis does not look sick enough to get an ADA accommodation, then clearly no one will ever be sick enough.

254.  Defendants December 12th Order is an outrageous default order which illegally discloses Ms. Lowery's private health information without her permission and does so falsely.  It is clear the order was written to retaliate.  Where is the transcript testimony from a single medical provider who was qualified to interpret the records?  There is none.

255.  The Defendants conspired to invent medical testimony.  No qualified medical expert testified as to the basis for any clinical finding of the Defendants as contained their May 2, May 10, or December 12, 2024 orders.

256.  No citation exists to any competent medical testimony in any transcript or any affidavit to support the Defendants medical findings.  That is a clear violation of the ADA. This proves the Defendants have engaged and will continue to conspire to violate federal law, the ADA.

257.  The Defendants conduct is an intentional access barrier under the ADA. Plaintiffs are entitled to summary judgment under the law, sanctions, damages, attorneys fees and costs.

258. Defendants repeatedly barred Plaintiffs from appearing remotely by Order - that constitutes a physical barrier to the Courtroom. That Order violated the ADA.

259. Next telephoning Ms. Lowery and ordering her to appear on two minutes notice also violates the ADA.

260. Defendants blocked Plaintiff's discovery and her appearances from April 9, 2024 through May 2, 2024. Ms. Lowery could not prepare her case. That too was an ADA violation that went on for almost 30 days and it was done to prevented Plaintiffs from preparing her case.

261. All of the orders leading up to the May 2, 2024, order which prevented Ms. Lowery from obtaining discovery (no interrogatories, no admissions, no remote depositions) were a violation of the ADA and were in retaliation for Ms. Lowery asserting her civil rights.

262. Defendants orders that permitted the Illinois Defendant's witnesses to appear remotely, but denied said accommodation to Plaintiff and her witnesses is an ADA violation and retaliation into the State of Oklahoma.

263. One of plaintiff's witnesses was a retired elderly physician, Dr. Donald Buser, M.D., who requested ADA accommodation. Another witness was the Retired Chief Justice Lloyd Karmeier who is over 80 years old.

264. The Defendants refused Plaintiff's ADA requests for them as well. Defendants have a pattern and practice of repeatedly violating the ADA and using ADA disability requests as a weapon against attorneys. This is the ARDC's way to keep disabled persons out of the profession, especially if they hold conservative values.

265. On May 1, 2024, Plaintiff electronically filed a motion for continuance. In that Motion, Plaintiff provided her primary care physician's affidavit, her medical records (unredacted)

and her affidavit with her Power of Attorney's signature/phone number on it.

266. Plaintiff's Lowery's physician Dr. Vanschoyck had certified her on April 15, 2024 as temporarily totally disabled due to sepsis. The Oklahoma Bar and Oklahoma judges accepted his affidavit as proper certification under the ADA of Ms. Lowery's temporary total disability. Only the Defendants who had no jurisdiction objected to it.

267. Plaintiff was diagnosed with sepsis on April 15, 2024, in the St. Francis ED and septic shock on April 25, 2024 at the Warren Clinic. Plaintiff was rushed into emergency surgery on April 26, 2024.

268. By May 2, 2024, the Plaintiff's sepsis progressed. The situation became dangerous because Defendants had for three months denied Plaintiff Lowery all access to medical care under the ADA.

269. Defendants' statements on May 2, 2025 that Plaintiff had no infection is not born out by the medication history or the medical records. In this day and age, no one has emergency surgery within 24 hours if an emergency does not exist. Ms. Lowery's health insurance paid for the emergency surgery with a diagnosis of sepsis. That is conclusive evidence the Defendants orders are a fraud.

270. On May 10, 2024 the Defendants published in a court order that Plaintiff, her physician Dr. Patrick VanSchoyck, the St. Francis Hospital Medical Director, Dr. Rashid, the St. Francis Surgeon, Dr. Benson, and the Epic Patient Chart system, lied. All of these health care providers conspired to present to Defendants false medical reports about Plaintiff Lowery's medical condition.

271. Again Defendants do not have to provide any proof, as state officials all they have to do is

make rabid unhinged allegations against Oklahoma hospitals and medical providers. The Defendants conduct has made it impossible for Plaintiffs to defend themselves. They violate the ADA by blocking all of Defendants witnesses and discovery and then they won't let her into the hearing room.

272. Yet in the next breath these same Defendants wrote in an order they could not understand the plaintiff's medical records.

273. Defendants refused to pick up the telephone and communicate their concerns with any of Plaintiff's medical professional or the POA, a duty under federal law. Instead Defendants demanded, in violation of federal law, to speak to the totally disabled person while she is was sedated. Then the Defendants locked her out of the hearing room. Then they falsely disclosed her PHI.

274. The Defendants violate federal law, enter orders without jurisdiction and then argue to this Court no one has jurisdiction over them to address their illegal behavior. If this Court cannot rule, then this case has to be transferred to a court that can rule. The problem is simple, Ms. Lowery does not have legal counsel in Illinois. She is currently disabled.

275. The Defendants cancelled her malpractice coverage.

276. Pursuant to federal law, the Defendant had a duty to make a good faith inquiry under the circumstances, because it was an emergency situation involving a medical emergency covered under the ADA.

277. Under the ADA, it is questionable whether the Defendants should have asked for Plaintiff's medical records, but Plaintiff wanted to demonstrate she was extremely ill. Plaintiff wanted to demonstrate she was acting in good faith.

278.	Even after Plaintiffs provided her medical records to the Defendants, the Defendants ignored the evidence and they continued to berate Plaintiff with false assertions in direct violation of federal law, the ADA.

279.	On May 2, 2024, the Defendants denied Plaintiff's ninth (9th) ADA request for accommodation barring her from the courtroom.

280.	The Illinois Defendants defaulted a temporarily totally disabled person and denied her all access to the Court system. On May 2, 2024 the Defendants lacked personal and subject matter jurisdiction over plaintiff's.

281.	Defendants are intentionally praying upon the most vulnerable members of society and knowingly refusing to follow federal law.

282.	Plaintiffs are qualified individuals with disabilities. The Defendants repeatedly denied courtroom aceess, discovery, all of which are programs or activities covered by the ADA because Plaintiff have a disability covered by the ADA. *See* 29 U.S.C. § 794(a)*; Jaros*, 684 F.3d at 672.

283.	Although the Rehabilitation Act does not contain an express accommodation requirement, the Courts have read one into the statute generally. *See Jaros*, 684 F.3d at 672 (citing *Alexander v. Choate*, 469 U.S. 287, 301, 105 S.Ct. 712, 83 L.Ed.2d 661 (1985)).

284.	The Seventh Circuit ruled that a plaintiff seeking compensatory damages under the Americans with Disabilities Act and/or the Rehabilitation Act is only required to demonstrate *deliberate indifference* to survive the defendants' motion to dismiss.

285.	Defendant's Miller' pleading filed on May 3, 2024, the Illinois Defendants wrote:

> Her (Plaintiffs) failure to appear at
> hearing should be viewed as a

> refusal to concede to the Court's
> authority and, as such, warrants a
> disbarment.

This is proof the Defendants intended the Default.  It also proves they intended to violate the ADA via an improper default proceeding..  (Exhibit #12).

286.　As a result of Defendants violation of the ADA, plaintiff has suffered permanently injuries and disability in excess of $75,000.  Because this is a repeated issue, Plaintiff seeks treble damages and attorneys fees for the intentional, repeated disregard for human life under the ADA.

WHEREFORE, premises considered, Plaintiffs pray for judgment against the Defendants in excess of $75,000, for attorney fees and costs and for exemplary damages for the repeated violation of civil rights under the ADA and for any other relief this Court deems just and proper.

## COUNT II
## ILLEGAL FEDERAL RETALIATION

287.　Plaintiffs reallege and reassert all facts set forth in prior paragraphs and incorporates same into this Count.

288.　This Court has jurisdiction over this action under 28 U.S.C. § 1331, as this action arises under the laws of the United States, specifically Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d et seq., and any other federal statute invoked by this pleading. Venue is proper in this district under 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claim occurred here.

289.　Plaintiffs allege Defendants engaged in illegal retaliation and discrimination in violation of numerous federal statutes such as the ADA, the Clayton Act,  Title VI of the Civil Rights Act

of 1964.

290.   Plaintiffs seek a declaration that Defendant's actions violate federal law and entitle them to the relief requested.

291.   In this action, the Defendant's Illegal retaliation is covered by several federal statutes. Plaintiffs allege the Defendants acts of retaliation violated the following:

   a.   Title VII of the Civil Rights Act of 1964: This act prohibits retaliation against individuals who oppose discrimination or participate in proceedings under the act. It's enforced by the Equal Employment Opportunity Commission (EEOC).

   b.   Age Discrimination in Employment Act (ADEA): Similar to Title VII, it prohibits retaliation for complaints or participation in proceedings concerning age discrimination.

   c.   Americans with Disabilities Act (ADA): This act includes protections against retaliation for exercising rights under the ADA, like requesting accommodations or participating in ADA-related proceedings.

   d.   18 U.S. Code § 1513: This criminal statute addresses retaliation against witnesses, victims, or informants, making it a crime to retaliate with the intent to harm for providing truthful information to law enforcement or for participating in federal proceedings.

292.   Moreover at the time the retaliation occurred, Plaintiffs were engaged in a protected activity under federal law.  Examples of these protected activities includes but is not limited to:

   a.   Opposing any practices made unlawful by the relevant statute (e.g., discrimination). Reporting to Defendants sexual harassment, ADA violations, ADA retaliation, anti

Semitism, etc.

b.      Participating in any manner in an investigation, proceeding, or hearing under these laws. *32 false bar complaints into Oklahoma and the harassment of being subjected to repeated false bar complaints.*

c.      Filing a charge, testifying, assisting, or participating in any manner in an investigation or proceeding under the statute. *Ms. Lowery was a whistle blower in a federal drug investigation which led to multiple convictions along with multiple reports for ADA violations to DOJ and AG.*

b.      <u>Adverse State Action</u>: The state must have taken an adverse action against the plaintiffs. *Clearly this has occurred to plaintiffs repeatedly. Plaintiffs' were repeatedly subjected to false bar charges, false complaints, publication of those false charges by Defendants along with orders denying Plaintiff's health care in Oklahoma in an attempt to cause her death and destroy the firms practice in Oklahoma.*

c.      <u>Demotion, termination, or refusal to hire</u>. The actions of Defendants are and will continue to harm Plaintiffs by *preventing Plaintiffs from being re-admitted to federal court bar, state bars, Tribal Courts*. It has also prevented Plaintiffs from obtaining malpractice insurance and has caused all of insurance premiums to skyrocket.

d.      <u>Denial of benefits, harassment, or undesirable job assignments</u>.

Any action that would dissuade a reasonable person from making or supporting a charge of discrimination. *Targeting Ms. Lowery for reporting harassment was done to stop women from reporting male judicial harassment.*

e. <u>Causal Connection</u>: There must be a causal connection between the protected activity and the adverse action. This typically involves demonstrating that:

    i. The adverse action happened close in time to the protected activity.

    ii. There is direct evidence (like statements from the employer) linking the two, or

    iii. Circumstantial evidence suggesting that the action was taken because of the protected activity.

293. These elements are generally consistent across the different statutes. For instance, under Title VII, the Supreme Court clarified the adverse action must be one that would dissuade a reasonable person from engaging in protected activity, expanding the scope beyond just employment decisions *to any materially adverse action*. [Emphasis added.] Here the message the Illinois Supreme Court is sending is no lawyer may complain about bullying, sexual harassment or discrimination.

294. Plaintiffs' state that Defendants have engaged in conduct which amounts to illegal federal retaliation by conduct and acts described in this Count.

295. On October 29, 2018, Ms. Lowery filed a complaint with Defendants about Defendant Andrew Gleeson's 'creepy behavior' toward her. She complained in 2018 to Defendants the judge was harassing her.

296. Immediately and in direct retaliation for filing that complaint, Defendant Andrew Gleeson retaliated by threatening Plaintiff Lowery in an elevator on November 20, 2018.

297. On November 20, 2018, Defendant Gleeson threatened Plaintiff Lowery. Defendant Gleeson told Plaintiff Lowery there was a price to pay in Illinois for disobeying authority. Plaintiff

had to 'blow the judge.' If she refused, the judge would bury her professionally with bar complaints until he destroyed her 40 year professional career as a lawyer.

298. Defendants Gleeson stated he would continue to harass Plaintiff Lowery until she was financially destroyed and "living under a bridge."

299. Plaintiff Lowery reported the threat to the Illinois Supreme Court Chief Justice, Lloyd Karmeier following the incident.

300. Chief Justice Lloyd Karmeier reported to Defendants, the ARDC, that Plaintiffs Lowery properly reported the incident as required by the Rules.

301. On December 31, 2018, Defendant Gleeson retaliated again for reporting the incident to the Court. Defendants Gleeson filed a bar charge.

302. Defendants retaliation & harassment into Oklahoma has never stopped.

303. The December 31, 2018 Gleeson complaint was based upon of course, Internet posts he likely concocted.

304. The Court found Ms. Lowery did not make the posts. The repeated theme of 'fake internet posts' will never stop because it has proven to be a favored tool of Defendant Gleeson.

305. In the fall of 2018, Plaintiff Lowery was living in an apartment in Oklahoma. Despite having photographs of her presence in Oklahoma, the Defendants continued to falsely claim she was attending protests an living in Illinois.

306. Defendants found Plaintiff Lowery did not make the posts. Instead the Defendants found she lied when she said she did not making the posts. (Inconsistent verdict). Defendants also found Ms. Lowery 'disparaged Gleeson the judge." She complained about his lurid behavior to a woman customer service representative in a private recorded phone call.

307. The Defendants problem is simple. The only way the Board could identify the judge was based upon his repeated false complaints. The very reason Ms Lowery complained to the bar. This demonstrates the extreme lengths these Defendants have gone to target Plaintiffs in Oklahoma.

308. The Defendants wrote Ms. Lowery lied when she complained she was being harassed. Then these Defendants found it was Ms. Lowery who was retaliating. This Court can take judicial notice that Defendant Gleeson has sent 32 false complaints into Oklahoma against Ms. Lowery as follows, to-wit;

Complaint #1    April 24, 2017
Complaint #2    April 26, 2017
Complaint #3    August 1, 2018
Complaint #4    April 24, 2017 (Rearguing)
Complaint #5    April 26, 2017 (Rearguing)
Complaint #6    August 6, 2018,
Complaint #7    August 21, 2018
Complaint #8    October 15, 2018
Complaint #9    December 31, 2018
Complaint #10  October 19. 2022
Complaint #11  October 24, 2022
Complaint #12  October 25, 2022
Complaint #13  November 10, 2022
Complaint #14  November 17, 2022
Complaint #15  January 18, 2023
Complaint #16  January 24, 2023
Compliant #17  April 27, 2023
Complaint #18  July 13, 2023
Complaint #19  September 18, 2023
Complaint #20  October 9, 2023 (forwarded OK)
Complaint #21  November 30, 2023
Complaint #22  December 20, 2023
Complaint #23  February 2, 2024

Complaint #24  June 8, 2024

AND then Defendants retaliated against Plaintiff Ronald Wilkinson by filing an

additional eight complaints against him into Oklahoma.

309. Every time plaintiffs asked Illinois officials to address the illegal conduct by Defendants, Illinois state officials retaliated.

310. This retaliation is part of the bullying problem identified by the Red Bee Group published in their study. *(See Group I, Exhibit #7)*.

311. The Red Bee Group was hired to investigate whether Defendants had a bullying problem. Despite finding there is a serious bullying problem, the Illinois Supreme Court refuses to establish any procedure for addressing the issue.

312. The Defendants retaliation started in 2018 when Ms. Lowery complained to the Defendants that Andrew Gleeson was acting in creepy manner toward her. By creepy, Plaintiffs mean Defendant Gleeson would follow Plaintiff Lowery all over the Courthouse.

313. Defendant Gleeson as Chief Judge, would follow Plaintiff Lowery, including going into the ladies bathroom, sitting behind Ms. Lowery in the courtroom, pulling up a chair behind her and then he would start breathing down her neck. His behavior was like a creepy sex pest.

314. In another instance Plaintiff Lowery was physically attacked while walking down a hallway in a courthouse. The attacker was an Illinois state employee who was friends with Defendant Gleeson. When Plaintiffs reported the incident to the ARDC, the Defendants refused to address it. The matter was witnessed by another states

attorney from a neighboring county who was appalled. When he reported the incident, he was threatened to "forget what he saw."

315. Then the probate judges before whom Plaintiff practiced told her that Defendant Gleeson had instructed them not to assign any cases to her because "Ms. Lowery was a problem." That is more of Defendants retaliation.

316. The October 29, 2018 email to Defendants stated:

> I am extremely concerned about this judge's mental state. Last week, I received telephone calls from two judges who indicate Judge Gleeson is soliciting bar complaints against me and he is pumping them for personal information.
>
> I do not appear in Judge Gleeson's courtoorm as a practicing attorney and other than a passing comment at a bar CLE, I have never had a conversation with him. Yet he is displaying a very unhealthy obsession with me, a single female corpoarate healthcare attorney. Whether this is in retaliation for my being a JIB witness, a mental health issue or from some other reason, I do not know; But I believe it is time that someone addressed it and address the propriety of his actions.

317. After making this Complaint to the Illinois Supreme Court, the Defendants retaliated against Plaintiff by attacking her in the elevator on November 20, 2018. Then they filed a false complaint against her law license on December 31, 2018.

318. In the fall of 2022, Plaintiff's Oklahoma social media account on Twitter (now X) was hacked.

319. Withing minutes of the hack more than 1000 false posts were placed on the account.

320. This was the incident in which Plaintiff Lowery began working with X engineers to

try to determine who was targeting and hacking her accounts.

321.  X Corp told her to take all of her accounts in her name down.  X Corp continued to monitor her accounts in an attempt to trace the hacker.  In fact the hack was traced back to the St. Clair County Annex.   The Computers hacked were in Tulsa, Oklahoma.

322.  *Within an hour of the hack occurring*, Defendant Gleeson was sending complaints to the Oklahoma General Counsel's Office.  In those seven complaints against plaintiffs he claimed plaintiffs had gone on a rampage in Oklahoma based upon the 1000 hacked posts being placed on the account.    Defendant Gleeson never once disclosed that X (Twitter) placed a notice on the account that it had been hacked.

323.  Defendant Gleeson and Illinois Attorney Brian Flynn download hacked tweets at 10:30 p.m. on a Saturday night from the St. Clair County Courthouse and started sending 7 complaints into Oklahoma against Plaintiff's Lowery and Wilkinson in Oklahoma.

324.  This certainly raises an issue that Defendant Gleeson was directing activities into the jurisdiction repeatedly as far back as the fall of 2022.

325.  Because the harassment from Defendants would not stop, on April 4, and April 24, 2023, Plaintiffs informed the Defendants by formal complaint with the Illinois Supreme Court complaint about Gleeson's ongoing retaliation into Oklahoma.

326.  Plaintiffs also filed numerous complaints with the Judicial Inquiry Board and did so

by certified mail.  Despite doing so Mr. Deno and the JIB lost every single complaint.

327.    Defendants then instructed Plaintiffs to submit the complaint to Ms. Deana Brown who is the Diversity Equity and Inclusion "director," however, no investigation ever occurred there either.

328.    On April 4, and April 24, 2023, Plaintiffs complained Defendant Andrew Gleeson was retaliating and harassing them in Oklahoma.

329.    In October & November of 2022, Defendant Gleeson sent repeated formal complaints on state letterhead to the Oklahoma Bar.  Defendant Gleeson complaint to Oklahoma officials that Plaintiffs were engaged in an Oklahoma rampage against Andrew Gleeson.

330.    Since Mr. Wilkinson is a descendant of the Choctow Nation[5] and Ms. Lowery is an honorary member of the Cherokee and Muscogee Creek Nations along with having Jewish heritage, it is not exactly understood how defendants intended the terms like "cabal," "common," and "rampage" were used to describe a Jew and an Navie Indian is clearly intended as "discriminatory effect" upon plaintiffs.

331.    Next, the Defendants allegations have a serious issue.  The only way Defendant Andrew Gleeson would have any basis to make these repeated complaint into Oklahoma was if Defendant Gleeson was in Oklahoma stalking and conducting surveillance of Plaintiffs.

332. Plaintiffs reported it to Defendants as more of Defendant Gleeson's creepy conduct. But here is the problem, it definitively means the acts upon which these Defendants complain never happened in Illinois, Plaintiffs were not members of the Illinois bar and the Illinois Supreme Court has no jurisdiction in this matter.

333. When the claim was made by Defendants, it was clearly about conduct they claimed occurred in Oklahoma and it is an admission Defendants knew Plaintiffs were not subject to their "supervision under Rule 751" since 2023.

334. In retaliation for filing a compliant, on April 27, 2023, Plaintiff got a 14 day letter from Defendants saying the allegation about Defendant Andrew Gleeson harassing her in Oklahoma was a lie. When counsel pointed out the 32 false complaints, to Defendants the judges conduct was "not relevant."

335. In Illinois a disabled woman living in another state who is being bullied across state line has no right of redress in Illinois under the ADA. When Ms. Lowery complained she was being bullied under the ADA, well they charged her for saying that too.

336. On June 27, 2023, when Justice Karmeier told Defendants the Plaintiffs properly reported the Gleeson incident, he also told Ms. Miller he believed the incident occurred and it was covered by federal law. That Ms. Miller's conduct was illegal and retaliatory. This is what set off Defendants, and in particular Ms. Miller per Justice Karmeier. Defendant Miller became enraged and immediately retaliated.

337. On June 27, 2023,the very day the Chief Justice confirmed Plaintiff Lowery properly

reported the judge's conduct, Defendant Miller retaliated. Defendant Miller sent an illegal & retaliatory subpoena duces tecum out of spite to the St. Louis Holocaust Museum claiming the State of Illinois needed Ms. Lowery's "Jewish attendance records," "the ticket price of admission to the St. Louis Holocaust Museum and the names of every Missouri Jew at the meeting. It is clear this request has nothing to do with any legitimate state interest and was intended solely for the purpose of embarrassment, harassment and annoyance.

338. Then at hearing on May 2, 2024, Defendant Miller stoop up and said the subpoena was an ADA inquiry. In the history of US jurisprudence, states have never subpoened Jewish attendance records of the entire Missouri Jewry in order to establish an ADA disability. Nor does an ADA inquiry involve the ticket price of admission to the St. Louis Holocaust Museum or any of the other inquiries. This conduct raises serious issues about the character and motives of the Defendants. The Illinois Supreme Court whose Chief Justice husband went on a r when it appears that employees are permitted and encourage to engage in rabid anti-Semitic acts.

339. Then the Defendants changed the allegation to state Defendant Gleeson never harassed Plaintiffs and that to make such an complaint was per se false and it impugned the judiciary.

340. The foregoing conduct is illegal federal retaliation because no good faith basis for claiming Defendant Gleeson was not engaging in harassment when he has filed 32 false complaints into Oklahoma. This also demonstrates and proves the Defendants

-68-

have a direct conflict of interest and are biased.

341.    Defendant Andrew Gleeson admits he is both subject to Oklahoma jurisdiction and

that he is illegally retaliating against Plaintiffs in Oklahoma.

342.    In his October/November 2022 complaints to the Oklahoma General Counsel's office,

Defendant Andrew Gleeson completed a "Grievance Form."  A copy of the form is

attached as Group III, Exhibit #17.

343.    In that Oklahoma Bar form, Defendant Andrew Gleeson states he is retaliating by

submitting the complaint against Plaintiff Ronald Wilkinson because:

> Attorney was a character witness in an Illinois ARDC
> hearing involving Illinois attorney Margaret Jean Lowery.

Defendant Gleeson falsely stated "Illinois attorney" because he also sent several

complaints to the Oklahoma GC against Plaintiff Lowery.  The Defendants here

admits they are retaliating against Plaintiffs. Defendant Gleeson also states he will

come testify in Oklahoma.  That means Defendants have agreed and submit

themselves to Oklahoma jurisdiction.

344.    On April 27, 2023, Defendants retaliated against Plaintiffs by sending a false

complaint to Plaintiffs.

345.    The complaint was retaliation for plaintiffs' reporting the ongoing harassment into

Oklahoma.

346.    Then Ms. Lowery began working on a bar journal article about the bullying and

harassment in bar regulation with Mary Robinson and Dan Murdock.

347. Suddenly Ms. Lowery is accused of making a post about Judge Gleeson's divorce. Ms. Lowery was living in Oklahoma and had retired from the Illinois Bar. Ms. Lowery then contacted X who confirmed there were no posts or accounts who made the post.

348. On July 27, 2023, Ms. Lowery filed a complaint with the DOJ about Defendants retaliation, discrimination and for the ongoing ADA violations *into Oklahoma*. (Group III - Exhibit #18).

349. The Defendants retaliated against Plaintiff for filing the complaint by falsely charging Plaintiff Lowery with professional misconduct in September of 2024 when Ms. Lowery was no longer a member of the Illinois bar under Rule 751 and she had was complaining to federal officials about the conduct.

350. On November 14, 2023, Plaintiff's again complained to the DOJ about Defendant's conduct and behavior. The Defendants again immediately retaliated by inventing social media accounts and posts were Ms. Lowery's.

351. To show how retaliatory and insane the allegation of Defendant are, Plaintiff Lowery had an X account, it was the one X Corp helped her open in December of 2022 and it was her registered blue check mark account. The account has 25,000 followers. The Defendants claim that Plaintiff Lowery opened an account in her name on or about November 1, 2023 and began making posts against Illinois.

352. So Plaintiffs complain to federal officials about Defendants conduct and suddenly

plaintiffs have a fake social media account.

353.    But what Defendants want a federal court to believe is that his account which was just opened in Ms. Lowery's name and who likely had no followers was being used by Ms. Lowery in lieu of the account she already had with 25,000 followers.

354.    And so this Court has an idea of how insane the Defendants allegation is, here are metrics on two posts from her real account.  One from July of 2024 and one from December of 2024.




January 8-9 2025 post



355.    Defendants are arguing Plaintiffs opened a new account in her real name with no followers in November of 2023 solely for the purpose of making posts against Defendants.

356.    Defendants allege Plaintiffs opened a new account with no followers rather than simply placing the posts on her existing account where it would garner anywhere from 100,000 to a million views.

357.    The Defendants are arguing plaintiffs did this after complaining to the DOJ because opening a lunatic account to attack people is such a good way to impress federal officials or was it the way the Defendants ensured that the Biden DOJ would not accept the complaint.

358.    Then Defendants claimed Ms. Lowery was emailing the inquiry board members from Oklahoma to threaten them.  How would Ms. Lowery have the email of Defendants personnel living in Oklahoma.  But Defendants had the Inquiry Board members email addresses.   This is more direct evidence of Defendants illegal federal retaliation.

359.    In fact, when X Corp confirmed it was the Defendants who were behind the retaltion and fraudulent accounts, which caused Plaintiff Lowery to collapse in her office in December of 2023 and be rushed by ambulance to St. Francis Hospital South for emergency treatment.

360.    It also demonstrates the causation between the Defendants conduct and the plaintiff's injuries.

361. On December 20, 2023, the Defendants filed a false interim suspension complaint against Plaintiffs based upon their fraudulent posts claiming Ms. Lowery was a danger to the Illinois public as a retired lawyer living in Oklahoma.

362. The Defendants filed the false complaint because Plaintiffs complained to the DOJ about their conduct into Oklahoma on November 14, 2023. Within 30 days of filing that DOJ complaint, Defendants had retaliated with a false interim suspension complaint & order. (*Exhibit #17*)

363. On November 17, 2023, plaintiffs a complaint with the Illinois Attorney General from Oklahoma about Defendants conduct.

364. The Defendants retaliated again by filing the interim suspension petition and suspension order.

365. Then Ms. Lowery filed an ADA complaint in February of 2024 and Defendants retaliated by filing an Amended Complaint listing out the false posts Defendants fabricated as the basis for the complaint.

366. Then from February of 2024 through January of 2025, the Defendants retaliated against Plaintiffs and tried to kill Plaintiff Lowery by blocking ten ADA requests from medical care, treatment and rehabilitation in Oklahoma.

367. On November 30, 2023, the Defendants and Ms. Miler retaliated for filing that complaint by sending to Plaintiff a false bar complaint claiming Ms. Lowery was making malicious posts on the X Corp platform.

368.    On December 20, 2023 the Defendants filed a false Petition for Interim Suspension of her non existent Illinois bar license.  As this court can see, ever time Plaintiffs complain, Defendants retaliate.

369.    In April of 2023, Ms. Lowery notified the Illinois Bar she was retiring.  Defendants retaliated by sending a subpoena to the St. Louis Holocaust Museum to seize Ms. Lowery's attendance records and to determine the ticket price of admission..

370.    When Defendants discovered they were about to lose jurisdiction over Plaintiff Lowery, Ms. Miller sent out a spiteful subpoena to the St. Louis Holocaust Museum.

371.    On June 27, 2023, the Defendants demanded from the St. Louis Holocaust Museum, Ms. Lowery's Jewish attendance records, the list of safety meeting members and the ticket price of admission.

372.    On June 27, 2023, Defendant Miller held a telephone conference with retired Chief Justice Lloyd Karmeier and Justice Karmeier told Ms. Miller she was wrong and that Ms. Miller was illegally federally retaliating and to stop.  Ms. Miller was furious with Justice Karmeir and so she set out to embarrass Ms. Lowery in front of her religious community.  At the May 2, 2024 default hearing, Ms. Miller claimed the inquiry was for the ADA.  No one makes an ADA inquiry of the Holocaust Museum ticket price. This demonstrates the Defendants are illegally retaliating under the ADA.  They admit they were doing so and as a result, Plaintiffs are in fact entitled to summary judgment on the issue.  Ms. Miller also stood up and said there was no evidence in

Illinois that Ms. Lowery did anything wrong so they will proceed by proving a negative. (Exhibit #15) It is an admission by Defendants they are retaliating.

373. When Ms. Lowery asked for discovery, an ADA and or an adjudication of jurisdciton, the Defendants retaliated. Ms. Lowery filed 60 motion and not one was granted. That is a level of bias and retaliation which is shocking.

374. When Ms. Lowery filed on May 2, 2024 to enforce the ADA, the Defendants retaliated and locked her out of the hearing room to default her.

375. In fact, the Defendants planned the retaliation efforts with the Oklahoma Bar officials if their email of April 23, 2024 is to be believed. In that email Defendant Miller wrote:

> I spoke with Bill (Moran) and reminded him that the ARDC would file charges if he helped Ms. Lowery. The decision regarding her license was made. Nothing she raises in argument about jurisdiction will make any difference. This
>
> is a done deal. Once the default is entered, the case is effectively over. Ms. Nester is on board, and will rush our judgment through before she can do anything about it. That will teach her the lesson she deserves.
>
> The Clerk forwarded the phone hearing information, again to her. Everything is in place. We will make sure she doesn't appear on the 2nd.
>
> Rachel C. Miller

Bill Moran was Ms. Lowery's Illinois Counsel who was assisting her with her Illinois legal. Ms. Tracy Nester is the Oklahoma Assistant General Counsel. There are in fact emails to and from Ms. Nester planning this illegal default in Group I, Exhibit #11.

376. When the Defendants illegally retaliated, the Plaintiff sought a TRO for violating the ADA so the Defendants illegally retaliated by:

    a.      Threating plaintiffs with a bar complaint

    b.      filing a bar complaint for trying to enforce the ADA

    c,      wrongfully denying Ms. Lowery ADA request and then illegally retaliating by disclosing her private health information in a false light in the December 12 2024 order

377. On December 26, 2024, Plaintiff Lowery filed a motion to vacate the illegal December 12, 2024 default order for violating the ADA and the U.S. Constitution.

378. The Defendants retaliated again and refused Plaintiffs ADA request and Defendants refused to address the HIPAA violation. Defendants then the ordered Plaintiff to respond ignoring the ADA and HIPAA request and refusing to address the issues. The Defendants falsely claimed the ADA and HIPAA violations were moot.

379. Plaintiff Lowery has asked more than SIXTY times for Defendants to address issues of civil rights compliance, harassment, jurisdiction, ADA and all Defendants ever do is retaliate with false charges.

380. In fact, Defendants are not arguing their Rules do not let them comply with federal law. In Ms. Miller's objecton to ADA and HIPAA compliance she admits that their rules are defective and do not permit them to comply with federal law. Defendants have therefore invited this Court to declare their system unconstitutional since it

openly flaunts its violation of federal law.  (*Group III, Exhibit #21*)

381.    Defendants admit their system is a complete failure and is unable to comply with federal law, therefore this Court should declare the entire system unconstitutional as a matter of law and enjoy the Defendants from proceeding until the system is fixed.

382.    Plaintiff seek to permanently enjoy Defendants for violating the ADA and for retaliation.  All orders involving Ms. Lowery or Mr. Wilkinson must be withdrawn and scrubbed from the Internet with the payment of damages to Plaintiffs.

383.    Plaintiffs cannot get a fair hearing in Illinois because of Defendants conduct.

WHEREFORE, premises considered, Plaintiffs pray for judgment against the Defendants in excess of $75,000, for punitive or exemplary damages against the Defendants in excess of $100 million and for such other relief as this Court may deems just and proper.

## COUNT III.

## <u>VIOLATION OF ANTI TRUST LAWS - THE CLAYTON ACT</u>

384.    Plaintiffs' realleges and reasserts all facts set forth in prior paragraphs and incorporates same into this Count.

385.    This Court has jurisdiction over this action under 28 U.S.C. § 1331, as this action arises under the laws of the United States, specifically the Clayton Act, Title 15 U.S.C. 12-127 & the ADA, 42 U.S.C. §183, 2000d et seq. Venue is proper in this district under 28 U.S.C. § 1391 because a substantial part of the events or omissions giving

rise to the claim occurred in Oklahoma.

386.    Defendants have violated anti trust laws such as the Sherman Antitrust Act & the Clayton Act by setting up a bar system to exclude disabled lawyers.

387.    The purpose of the Sherman Antitrust Act (1890) was to combat anti-competitive practices, reduce market monopolization, and promote competition.

388.    Defendants are purposefully excluding disabled lawyers from participation in order to restrain trade by limiting competition within the legal profession. Specifically:

    a.    Section 1 prohibits contracts, combinations, or conspiracies in restraint of trade.  One look at the email from Defendant Rachel Miller on April 23, 2024 about what she and Oklahoma Bar Assistant GC Tracy Nester planned in Oklahoma in restraint of trade (Exhibit 12) and this Court has jurisdiction over the parties and subject matter of this action.

    b.    Section 2 deals with monopolization or attempts to monopolize. Defendants exclusion of disabled lawyers significantly reduces the number of practitioners in the market and this practice aims to monopolize the legal services to exclude Oklahoma disabled lawyers.

389.    The purpose of the Clayton Act (1914) was to  clarify and enhance the Sherman Act by specifying certain practices that are considered in violation of antitrust law.

    a.    Section 7 addresses mergers that may substantially lessen competition. Although less directly applicable, the Defendants bar's actions have lead to a

scenario where firms or practices are consolidating due to a reduced pool of lawyers, and this is to reduce competition.

b.    The Clayton Act also outlaws price discrimination, exclusive dealings, and tying arrangements, which, although not directly relevant here, supports the broader anti-competitive framework.  Defendant, the Illinois Supreme Court selects its commissioners and makes its appointments to exclude disabled lawyers and those from the opposing political parties in order to perpetuate a one party system through court appointments.

390.    The Americans with Disabilities Act (ADA) (1990) purpose was to prohibit discrimination against individuals with disabilities in all areas of public life, including employment, housing, education, and transportation.

a.    Title II applies to state and local governments, ensuring that they do not discriminate against people with disabilities in their services, programs, or activities. Defendants as an arm of the state would fall under this provision.

b.    Title III covers public accommodations, which  extends to the licensing and regulatory practices of Defendants, a state bar, ensuring that they are accessible to people with disabilities. *Reed. v. Illinois*.

391.    Plaintiff's are arguing that Defendants' ADA discrimination, their repeated act of excluding disabled lawyers from law practice violates the rights of disabled individuals to equal participation in public services, including the legal profession.

392.    Both the Sherman and Clayton Acts state that when states limits competition within the legal market it leads to higher costs for legal services or reduced innovation and a reduced pool of qualified lawyers to represent the public within the bar.

393.    Defendants target minorities and disabled persons from other states, like Oklahoma, with bar complaints in order to lessen competition and to create a monopoly in favor of Illinois lawyers.

394.    Defendants have a bar system with interlocking directorates.  Commissioners are selected by the Justices as political favor and they serve on multiple interlocking boards like the Inquiry Board, Hearing Board and Review Board.  This means that an attorney with an issue with one board will have an issue with all boards because they are all interrelated agencies in the bar.

395.    Defendants have instituted this system to maintain an exclusive monopoly over who may practice and perform legal services in Illinois, but throughout the nation.

396.    Illinois Supreme Court Rule 756 violates federal antitrust provisions because is requires  a disabled lawyer to gives up her bar license in every other state in order to permanently retire from Illinois.  Rule 756 is the Defendants monopolistic control over the other 49 state bar licenses and it is a restraint of trade and price fixing in direct violation of the Clayton Act.

397.    Plaintiffs seek to have Illinois Supreme Court Rule 756, which prohibits lawyers from permanently retiring from the Illinois Bar if they have an active license to practice

law in any other state or jurisdiction, as a violation of federal anti trust laws. Plaintiffs are entitled to treble damages, declaratory judgment and a permanent injunction against Defendants for violation of the Clayton Act.

398. The regulation of the practice of law in Oklahoma is under the exclusive control of the Oklahoma Supreme Court. Next, Plaintiffs want to be clear, they do not want to practice law in Illinois.

399. So why are the Defendants attacking Plaintiffs in Oklahoma. The only explanation is that Defendants want exclusive monopolistic control over the nation's lawyers so that conservative lawyers have no voice in Illinois. That's illegal censorship. The President of the United States on January 20, 2024 entered an executive order stating this kind of censorship on social media platforms must stop. Here its not even Ms. Lowery's accounts and she has been forced to spend seven years of her life from two states away fighting Defendants illegal state sponsored censorship.

400. On January 20, 2025, the President entered an executive ordered titled "RESTORING FREEDOM OF SPEECH AND ENDING FEDERAL CENSORSHIP." It is clear Defendants are attempting to enforce Biden era censorship rules.

401. Defendants also have a habit of placing state employees on professional boards as lay people in order to further control the outcome and to drive out all competition.

402. A state employee is not going to rule against their employer, the State of Illinois. In fact the practice of placing state employees on these Board is to drive out all

competition.

403. Defendants system forbids an accused attorney from contesting jurisdiction until the day of hearing. The rule is a sure fire way to drive out all competition and especially to target disabled lawyers from participating in the bar. It drives up the costs of responding so no one but silk stocking law firms can compete. The rules are intended to drive out all competition, but especially solo and small firms where disabled lawyers are likely to practice.

404. Then if the disabled person tries to show up, the Defendants bolt the hearing door shut to make sure Plaintiffs cannot make any record.

405. That is clearly the motive behind what Defendants are doing and it requires this federal court to declare the Defendants Illinois ARDC system is defacto an unconstitutional restraint on trade

406. Exclusive Dealing or Tying Arrangements (Section 3): The Defendants use contracts, agreements, or practices that condition participation and retention of a license as a way to stifle competition. For example:

   a.   The Defendants openly threaten lawyers to not assist accused lawyers such as Plaintiffs with a defense;

   b.   Exhibit #12 demonstrates such agreements exists. Defendants default disabled lawyers and then send their knowingly corrupt orders into Oklahoma for enforcement.

c.   The purpose of the complaints into Oklahoma was to lessen competition and to create a monopoly.

d.   Only those who agree with the Illinois Justices political whim may practice law in Illinois or apparently in any other state of the USA.

407.   Exclusion from Professional Opportunities:

Section 2 of the Clayton Act deals with price discrimination, however, Defendants conduct in a broader sense and with broader interpretation constitutes an exclusionary practice of the disabled.  It should be scrutinized because it has lead to monopolistic behaviors to restrict competition of Oklahoma lawyers.

408.   Defendants are targeting disabled attorney in other state with bar complaints because a bar complaint and discipline drives down the hourly rate an attorney can charge.

409.   Disabled attorney already struggle to capture market share and the continual label of liar is being placed on disabled lawyers to destroy competition and to exclude the disabled attorney from participation in bar activities.

410.   This explains why Defendants have targeted Plaintiffs with 32 false bar complaints into Oklahoma.  Defendants want to guarantee foreign disabled lawyers do not compete with Illinois lawyers who are present in the jurisdiction in order to maintain an artificially high price for them in Illinois.

411.   Defendants repeated denial of ADA accommodations necessary for disabled

attorneys to practice law has created an unfair competitive environment in Oklahoma of bullying and harassment where only non-disabled attorneys have full access to professional opportunities.

412. Plaintiffs are therefore stating that the Illinois ARDC system violates federal antitrust laws because it significantly impacts market competition. The purpose of refusal to enforce the ADA is to reduce competition to only able bodied lawyers.

413. One of the problems is the ARDC and Court have interlocking directorates and the entire purpose is exclude and stifle competition

414. The repeated denial of accommodations as set forth in this complaint indirectly discriminates against disabled attorneys, reducing the number of competitors in the legal market. Since Defendants completely control the bar process, this means the Defendants conduct is intended to destroy consumer choice.

415. Defendants hold complete control over all legal practices, who is admitted, who garners court appointments and who is listed on bar referrals and court lists.

416. By denying ADA accommodations, the Defendants are intentionally reducing the number of disabled attorneys who may practice law in Illinois and this is being done to limit consumer choice to only those attorneys with office in Illinois.

417. Under the Clayton Act, actions that reduce consumer choice or manipulate market conditions are anti-competitive, although this is an unconventional application of the law. So was the legal approach in *McGirt*.

418.    While Plaintiffs have plead Defendants engaged in a direct violation of the ADA,

plaintiffs are arguing the repeated failure to provide accommodations under the ADA

also serves to create or maintain a monopoly in legal services, which should now be

scrutinized under antitrust laws.

WHEREFORE, premises considered, Plaintiffs pray for judgment against the

Defendants for actual fraud in excess of $75,000 in damages and for a punitive or exemplary

damages judgement against the Defendants in excess of $100 million dollars and for such

further believe as this court deems just and proper.

## COUNT IV

### WRONGFUL DISCLOSURE OF PRIVATE HEALTH INFORMATION

419.    Plaintiffs realleges and reasserts all facts set forth in this Complaint.

420.    Defendants wrongfully disclosed Plaintiff Lowery's private health information in a

public order without her authorization or consent which is a violation of 42 U.S.C.

1320d-6 (a)(2) and (b)(2); (b)(3):

421.    Defendants are an entity covered under HIPAA as they are state officials who receive

and transmit health information in electronic form.

422.    Wrongful Disclosure: Defendants wrongfully disclosed plaintiffs individually

identifiable health information in violation of the Privacy Rule.

423.    Plaintiff Lowery never authorized Defendants to disclose any PHI of plaintiffs

publically.

424. Plaintiff Lowery only provided the information to Defendants for an ADA accommodation which Defendants wrongfully denied.

425. Then Defendants wrongfully retaliated by disclosing her confidential Protected Health Information in public orders on May 2, May 10 and December 12, 2024 in Illinois ARDC Case Number 2023 PR 00060.

426. Defendants made the disclosure without authorization and where an authorization from Plaintiff was required.

427. Next the use or disclosure was for a purposes not permitted by the Privacy Rule.

428. Defendants violation was an intentional or knowing violation of the HIPAA rules.

429. The Defendants violation has been repeated at a violation rate of $50,000 per violation for an accrued penalty of $100 million dollars against Defendants.

WHEREFORE, premises considered, Plaintiffs pray for judgment against the Defendants in excess of $75,000, for accrued penalties of $50,000 per violation, for punitive or exemplary damages against the Defendants in excess of $100 million and for such other relief as this Court may deems just and proper.

## COUNT V

## INTERSTATE FRAUD

430. Plaintiffs realleges and reasserts all facts set forth in this Complaint.

431. Fraud under federal law invokes any number of statutes including Section 1001 of Title 18.

432.     Defendants committed fraud against the Plaintiffs by engaging in the following conduct.

433.     <u>Representation of a Material Fact</u>: Defendants made material statements or representation of material facts to third parties as state officials about Plaintiffs.

434.     <u>Falsity of the Representation</u>: Defendant statements to others about Plaintiffs were false or misleading and the purpose of the false statements was to deceive.

435.     <u>Knowledge of Falsity or Reckless Disregard for the Truth</u>: Defendants knew the representation they were making about Plaintiffs were false and Defendants made the false statements with reckless disregard for whether the statements were true or not.

436.     <u>Intent to Deceive or Defraud</u>: Defendants intended their statements against Plaintiffs to deceive or defraud.  Defendants intended to mislead others for the purpose of personal gain and that was to avoid a federal tort claim while destroying the credibility of Plaintiffs wrongfully.

437.     <u>Justifiable Reliance by the Victim</u>: Plaintiffs as Oklahoma lawyers, believed Defendants as state officials and lawyers would act honorably.  Plaintiffs thought Defendants would  make a reasonable inquiry.  Defendants refused to make any reasonable inquiry when such a duty existed.

438.     Plaintiffs also believed Defendants would act only when they had jurisdiction. Instead Defendants acted extra judicially.  Plaintiffs never thought Defendants would make

up false posts and invent false social media accounts to target Plaintiffs in Oklahoma.

439.    Defendants targeted Plaintiffs in Oklahoma because Plaintiff Lowery is a conservative Republican from Oklahoma and her law Parntner Mr. Wilkinson is a Democrat, Defendants attacked plaintiffs for their political beliefs, because they are Jewish, affiliated with a Native American Tribe and because they are disabled.

440.    The State of Oklahoma relied upon Defendants false representations and false evidence repeatedly. The Oklahoma General Counsels Office relied upon the integrity of these Defendants and it is clear no one in the USA should rely upon any order which comes from these Defendants.

441.    Defendants conduct caused Plaintiffs and other victims to act or to refrain from acting based on the belief that the representation was true.

442.    An example of this reliance was OBA Assistant GC Nester not calling X Corp to verify the fake posts because Illinois likely told her they verified the evidence.

443.    Both the Oklahoma General Counsel's Office and Oklahoma Attorney General Gentner Drummond relied upon Illinois organized criminals instead of making a reasonable inquiry. If the Oklahoma Supreme Court wonders why anti retention campaigns are popping up it is because its General Counsel is standing up in CLE's telling the public to generate complaints against the membership.

444.    Based upon the emails, it appears the General Counsel's Office and the AG Mr. Gentner Drummond are conspiring to violate Oklahoma Professional Rule 3.4. Why

would the Oklahoma AG help the GC's office hide exculpatory evidence in direct violation of President Trumps declared rules against censorship. In another example of AG Drummond's failures, he permitted the Defendants to take a baseball bat and tire iron to Plaintiff Lowery's car in South Tulsa in June causing $22,000 in damages. Mr. Drummond said that a Chicago Teamster screaming Death to Jews in South Tulsa as he destroyed plaintiff's car was not a hate crime. Mr. Drummond's conduct in supporting Chicago Mob Democrats outrageous conduct is without any explanation.

445. The Oklahoma Supreme Court just like the Plaintiffs were bamboozled into believing Defendants were acted with integrity and that they had jurisdiction under Rule 751. Illinois had no jurisidiction.

446. <u>Causation and Damages</u>: Plaintiffs relied on the false representations to the point that they have been permanently damaged.

447. <u>Use of Interstate Communication or Commerce</u>: Defendants used the US Mail, internet, telephone, faxes and other forms of electronic communication to commit fraud from Illinois into Oklahoma or through the interstate nature of the act.

448. In fact, the Defendants engaged in repeated wire fraud via the collection of "costs" when the costs were obtained through vendor fraud scheme.

449. Defendants engaged in fraud by inventing posts, calling up Plaintiff and telling her she had to call them back, then lying about the phone call all in an effort to defraud

Plaintiff of their Oklahoma bar license when the Defendants did not have subject matter jurisdiction.

450. The Defendants engaged in repeated fraud to obtain a wrongful default judgement by hanging up the phone on Plaintiffs in order to bar them from the hearing room. Then they filed a fraudulent complaint against Plaintiff Wilkinson to further waste Plaintiff's time and resources with bogus complaints.

451. The Defendants engaged in actual fraud by repeatedly filing false complaints to target Plaintiffs.

WHEREFORE, premises considered, Plaintiffs pray for judgment against the Defendants for actual fraud in excess of $75,000 in damages and for a punitive or exemplary damages judgement against the Defendants in excess of $100 million dollars and for such further believe as this court deems just and proper.

## COUNT VI
## 14th AMENDMENT - DUE PROCESS

452. Plaintiffs realleges and reassert all facts set forth in prior paragraphs and incorporates same into this Count.

453. This Court has jurisdiction over this action under 28 U.S.C. § 1331, as this action arises under the laws of the United States, specifically the 14th Amendment to the U.S. Constitution, Title VI of the Civil Rights Act of 1964, 42 U.S.C. §183, 2000d et seq.. Venue is proper in this district under 28 U.S.C. § 1391 because a substantial part of

the events or omissions giving rise to the claim occurred in Oklahoma.

454. Plaintiffs allege Defendants engaged a violation of their substantive and procedural due process rights under the 14th Amendment to the U.S. Constitution by:

a. filing charges with no jurisdiction under Rule 751

b. denying all discovery

c. having inadequate rules to address jurisdiction & venue timely

d. refusing to address fraud in the proceedings

e. inadequate notice

f. failure to have rules to comply with the ADA

g. barring plaintiff from hearing or from confronting witnesses.

h. conspiring with Oklahoma state officials to deprive plaintiffs of their civil rights;

455. Plaintiffs seek a declaration that Defendant's rules and processes violate the U.S. Constitution and Plaintiff's constitutional rights.

456. Plaintiffs allege Defendants have engaged a fundamental denial of substantive and procedural due process rights by denying ten (10) ADA requests, 60 motions, all discovery, depositions before a CSR, violation of Rule 3.4 and the right to appear at her own hearing.

WHEREFORE, premises considered, Plaintiffs pray for judgment against the Defendants in excess of $75,000 for compensatory, for punitive or exemplary damages against the Defendants in excess of $100 million and for such other relief as this Court may deems just and proper.

## COUNT VII

### TITLE VI - 1964 CIVIL RIGHTS ACT

457. Plaintiffs' re-allege and reassert all facts set forth in prior paragraphs and incorporates same into this Count.

458. This Court has jurisdiction over this action under 28 U.S.C. § 1331, as this action arises under the laws of the United States, specifically Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d et seq. Venue is proper in this district under 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claim occurred here.

459. Plaintiffs allege Defendants engaged in discriminatory practices against individuals of Jewish descent, in violation of Title VI of the Civil Rights Act of 1964.

460. Plaintiffs seek a declaration that Defendant's actions violate Title VI of the Civil Rights Act of 1964.

461. An injunction requiring Defendant to cease all acts of discrimination against Plaintiffs.

462. On or about June 27, 2024 Plaintiffs were subjected to discriminatory actions by

Defendant's employees, agents, or through its policies, including but not limited to:

a.  Ongoing acts of harassment, slurs, or derogatory comments regarding Jewish identity by sending a subpoena to the St. Louis Holocaust Museum to seize her Jewish records.

b.  Exclusion from educational or employment opportunities by the Administrator at the Illinois meet & greet in 2025.

c.  Hostile environment due to persistent antisemitic behaviors or symbols displayed by Defendant or its agents such has comments by the Inquiry Board about Plaintiffs Jewish identify in the fall of 2023.

463.  The Illinois Supreme Court has permitted an open campaign against Jews and has exported hate into Oklahoma.

464.  For instance it is not uncommon to see billboards against Jews or the Jewish State in Illinois on Illinois interstates.

465.  This billboard was displayed in Chicagoland in the fall of 2024.





466.    The billboard is not the only issue.   In the fall of 2023, the Attorney for the Illinois

Comptroller went on social media tirade spewing "Death to Jews" and "Hitler did not

do enough to kill you all."  This was an Illinois state official promoting hate against

Illinois Jewish lawyers just like the Chief Justice husband made offensive comments

on FBI tapes.  When everyone in leadership is spewing hate against the same ethnic

group and then Defendants act on that hate, it is a violation of federal law into Oklahoma.

467.    Ed Burke, the spouse of the Chief Justice was also caught on the FBI airwaves spewing his anti Semitic tirades against members of the bar who were Jewish.

468.    Defendants refuse to address the hate and instead blame Plaintiffs.

469.    Anti Semitism in Illinois is growing. Illinois Defendants refused to help Ms. Lowery about the hate because well, they were the ones engaging in the bullying and hate.

470.    Hateful comments about Jews were made by ARDC staff and as demonstrated by their subpoenas to the St. Louis Holocaust Museum. They have made it a pattern and practice of targeting Jewish lawyers even two states away with their hate.

471.    Then the Defendants filed a bar charge against Ms. Lowery for complaining about the anti Semitic hate in Illinois.

472.    These actions have created an intimidating, hostile, or offensive environment against Plaintiff's various identities.

WHEREFORE, premises considered, Plaintiffs pray for judgment against the Defendants in excess of $75,000, for punitive or exemplary damages against the Defendants in excess of $100 million and for such other relief as this Court may deems just and proper.

## COUNT VIII

## THREATS, INTIMIDATION, STALKING & HARASSMENT

## TITLE 18 U.S.C. §241, §875, §1503 & §2261A

473. Plaintiffs' re-allege and reassert all facts set forth in prior paragraphs and incorporates same into this Count.

474. This Court has jurisdiction over this action under 28 U.S.C. § 1331, as this action arises under the laws of the United States, specifically Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d et seq. Venue is proper in this district under 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claim occurred here.

475.  This Court has jurisdiction over the Defendants because Defendants violated Title 18 U.S.C. §241, §875, §1503 & §2261A.

476. The Defendants, constituting two or more individuals, entered into an agreement, to send repeated threats of harm into Oklahoma to injure Plaintiffs and their Oklahoma property.

477. Title 18 U.S.C. §241 makes it unlawful for two or more persons to agree to injure, threaten, or intimidate a person in the United States in the free exercise or enjoyment of any right or privilege secured by the Constitution or laws of the United States or because of his or her having exercised such a right.

478. Plaintiff alleges the repeated complaints into Oklahoma along with the email threats to Plaintiffs on May 2, 204 along with the complaint sent to Oklahoma on June 7, 2024 proves

there was an illegal agreement to harm Plaintiffs Oklahoma Bar licenses and to obstruct justice.

479. Title 18 U.S.C.§875 prohibits the transmission in interstate or foreign commerce of any communication containing *any threat to injure the property or reputation of the addressee or of another* or the reputation of a deceased person or any threat to accuse the addressee or any other person of a crime, with intent to extort from any person, firm, association, or corporation, any money or other thing of value.

480. The repeated bar complaints and email threats to Plaintiffs in Oklahoma by Defendants constitutes two or more persons who placed into interstate commerce threats to Plaintiffs

481. Title 18 U.S.C.§1503 defines "obstruction of justice" as an act that "corruptly or by threats or force, *or by any threatening letter or communication, influences, obstructs, or impedes, or endeavors to influence, obstruct, or impede, the due administration of justice*" The section also prohibits anyone from corruptly, or by threats or force, or by any threatening letter or communication, endeavoring to influence, intimidate, or impede any grand or petit juror, *or officer in or of any court of the United States, or officer who may be serving at any examination* or other proceeding before any United States magistrate judge or other committing magistrate, in the discharge of his duty.

482. The Defendants repeated threats to Plaintiffs were to violate plaintiffs civil rights.

483. Title 18 U.S.C. Section 2216(A) confers subject matter jurisdiction to federal courts whenever an individual threatens an individual in another state with the intent to injure, harass and intimidate them. The act must cause them to be in reasonable fear for their life,

safety or property. Plaintiffs allege the Defendants met this requirement by sending 32 false bar complaints against plaintiffs Oklahoma bar license.

484. An Oklahoma bar license is a property right which Plaintiff has an expectation will not be injured by Defendants.

485. On May 2, 2024, Defendants sent a threatening email to Plaintiffs

486. Defendant Rotskoff is the Deputy Administrator of the Illinois Court System and on behalf of all the Defendants, he sent a threatening email to Plaintiffs.

**487.** On February 21, 2024 Defendant Rotskoff sent and email to the Defendant Tracy Nester mocking Plaintiff's ADA requests. That's proof this was intentional retaliation in violation of federal law.

488. Defendant Rotskoff has repeatedly put pressure on the Oklahoma Bar to enforce his illegal orders in violation of federal law. Plaintiffs want a federal court order enjoining the Defendants that they may not send any more complaints or orders to Oklahoma about Plaintiffs.

489. The OBA only refused to act because Defendants illegal judgement was not "final."

490. The Defendants have repeatedly threatened witnesses and anyone who attempts to assist Plaintiffs.

491. The Defendants were specifically advised that a States Attorney ("SA") had exculpatory evidence. He witnessed Plaintiffs courthouse assault. So what did Defendants do to this witness a state prosecutor:

a.    Defendants threatened this individual that if he came forward, they would file a bar complaint against him

b.    The Defendants stated that if the SA notified Plaintiff or her attorney, the individual would be unemployed and disbarred.

c.    The Defendants threatened the individual that if the truth were told, the individual would lose his/her state health insurance. The SA has a disabled daughter who would die without the state health insurance. The Defendants threatened a state official that his disabled child would die if he/she came forward with his testimony.

WHEREFORE, premises considered, Plaintiffs pray for judgment against the Defendants in excess of $75,000, for punitive or exemplary damages against the Defendants in excess of $100 million and for such other relief as this Court may deems just and proper.

## COUNT IX

## MEDICAL MALPRACTICE PER SE & GENOCIDE

492.    Plaintiffs realleges and reassert all facts set forth in prior paragraphs and incorporates same into this Count.

493.    This Court has jurisdiction over this action under 28 U.S.C. § 1331, as this action arises under the laws of the United States and were placed into the stream of interstate commerce.

494.    Venue is proper in this district under 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claim occurred here.

495.  Plaintiff's allege the Defendants engaged in medical malpractice per se.

496.  Defendants, the Illinois Supreme Court, Cunningham, Lopez, Ferdinand and Delheimer are not licensed medical practitioners.

497.  None of the defendants have a medical license according the Illinois Department of Financial & Professional Regulation, yet Defendants engaged in the practice of medicine across state line and into Oklahoma to harm Plaintiffs.

498.  Next, Plaintiff Lowery did not give authorization or consent to any of the Defendants to treat her or to render any medical opinion about her health. Yet they did so in direct violation of the federal law Patient Rights Act.

499.  Then Defendants entered repeated orders barring timely medical treatment and evaluation. Defendants did it not once, but at least ten times.

500.  Defendants entered repeated judicial orders to deny medical care and treatment to Plaintiff in Oklahoma when Defendants knew Plaintiffs were under disability and Plaintiffs were members of a protected class under the 1964 Civil Rights Act.

501.  Plaintiffs allege Defendants knew they were harming a member of a Native American Indian Tribe living on Indian Land in Oklahoma and did it because of her status.

502.  This Court must listen to the recorded tapes of these hearings. It will be shocking to our Nation how these Defendants conduct themselves towards disabled persons and minorities.

503.     The Defendants conduct and acts toward Plaintiffs amounts to medical malpractice per se.

504.     From December of 2023 to December of 2024 the Defendants denied ten (10) ADA request for medical care and treatment. Plaintiff asserts Defendants did that to harm her and cause her death.

505.     This is State Sponsored genocide in direct violation of Title 18 U.S.C §1091.  Native American Indians and Jews have been historically targeted for genocide and extermination.  Defendants as state officials by repeatedly refusingl to follow federal law, the ADA & basic due process have violated.

506.     Under Title 18 U.S.C §1091 violate the Act when Defendants:

     a.     cause serious bodily injury or mental harm to members of the group

     b.     deliberately inflicting conditions of life calculated to bring about ye groups physical destruction in whole or part.

     The fines for such acts start at $1,000,000 per act.  We have a minimum of ten such acts in this case.  For inciting genocide the fine is $500,000.

507.     The Defendants had a legal duty to act with reason and within the acceptable standard of care which they refused to do.  Even when the Defendants were told this was causing harm, the Plaintiffs were part of the group, the Defendants ignored all warning and entered orders calculated to cause death to the group.

508. Then Defendants undertook the standard of care of a licensed board certified family physician, urologist and surgeon. The Defendants disagreed with their medical findings when the Defendants had zero medical training education or background to do so.

509. Defendants withheld life sustaining care and treatment to a cancer treatment with sepsis in order to hasten her death.

510. This was not a one off mistake. The Defendants did it not once, not twice, not even three times, they have done it a total of eleven times.

511. The Defendant made the following false medical findings about Plaintiff:

    a.   Plaintiff Lowery did not need medical evaluation and treatment

    b.   Plaintiff Lowery should not be given time to be medically evaluated or treated.

    c.   Plaintiff was perfectly healthy to appear to try a case while gowned up for abdominal surgery in St. Francis Hospital in Tulsa, Oakhoma.

    d.   Defendants can magically diagnose health status based upon a photograph when Defendants have never met Plaintiff Lowery.

    e.   Defendants called three board certified physicians including the medical director of St. Francis Hospital liars when they are not qualified to render any opinion and had no basis in which to do so.

    f.   Plaintiff Lowery did not have sepsis.

g.      Hypothermia is not a sign or symptom of sepsis.  In fact, it is a sign and symptom of sepsis.

h.      Because Ms. Lowery did not report pain in PACU she did not have sepsis.

i.      Ms. Lowery was not entitled to a rehabilitation period to recover from sepsis because of course these lawyers who are not qualified found she was not septic.

j.      Organ failure from sepsis is not a sign or symptom of sepsis.

512.   In fact, Plaintiff Lowery did have sepsis.  The sole proximate cause of her injuries and damages were the Defendants' wrongful conduct in violation of federal law.

513.   Defendants willful, wanton and reckless conduct has caused permanent organ damage to Plaintiff, reduced her life expectancy, caused permanent loss of one organ and irreversible damage to others.

514.   The sole proximate cause of these damages was Defendants practicing medicine without a license in order to violate the ADA.  The Defendants did not even rely on any testimony from licensed professionals, they simply made up the evidence to target Plaintiffs.

515.   This goes to the level of extreme bias these individuals and the imminent danger they pose to the Plaintiffs and the public.

516.    The Defendant Illinois Supreme Court and Defendant Gutierrez failed to properly supervise the Hearing Board and permitted them to violate federal and state law to target to individuals in another state.

517.    The damages Plaintiff have incurred are the following:

    a.    past medical bills of more than $250,000

    b.    future medica of more than $50 million if organ transplant is rquired

    c.    loss of one organ from the sepsis which has a month medical expensense pf $1500 per month

    d.    lost wages of $5 million

    e.    lost investment opportunities of $2.5 million

    f.    loss of reputation

    g.    being cast in a false light

    h.    lost chance of survival and reduced life epectancy

WHEREFORE Plaintiffs pray for judgment against the Defendants for actual fraud in excess of $75,000 in damages and for such further believe as this court deems just and proper.

## COUNT X

## DEFAMATION PER SE

518. Plaintiffs re-alleges and reasserts all facts set forth in prior paragraphs and incorporates same into this Count.

519. This Court has jurisdiction over this action under 28 U.S.C. § 1331, as this action arises under the laws of the United States and were placed into the stream of interstate commerce.

520. Venue is proper in this district under 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claim occurred here.

521. Plaintiff's allege the Defendants engaged in defamation per se.

522. Defendants published written statements to the Oklahoma Bar and others about Plaintiffs Wilkinson engaging in the unauthorized practice of law. Said statements were knowingly false.

523. Mr. Wilkinson never practiced law in Illinois.

524. In their December 12, 2024 Order the Defendants wrote Plaintiff Lowery was representing herself in the matter. If Defendants found Ms. Lowery was "representing herself" then what was the basis for the June complaint against Mr. Wilkinson claiming UPL. Which time were the Defendants lying?

525. The Defendants have made repeated false statements in bar complaints into Oklahoma repeatedly and those statements are not a privileged communication

because the Defendants have no jurisdiction and no supervisory authority under Rule 751.

526. Neither plaintiffs were members of the Illinois bar subject to Defendants supervision under Rule 751.

527. Next, this Court can take judicial notice that the Rules of Evidence do not permit Defendants to conclude posts someone else places on the internet are Plaintiffs.

528. It is not evidence to guess someone from Southern Illinois made the post because Ms. Lowery was not in Southern Illinois and has not lived in Southern Illinois since 2019.

529. Defendants are therefore admitting the posts were made by the Defendants if they were from "Southern Illinois" and about "Southern Illinois." Why? Because Ms. Lowery was not domiciled in Illinois since 2019, she was not a member of the bar after June 30, 2023 and she was living in Oklahoma since November of 2022. The Defendants statement is an admission of their fraud.

530. Therefore Defendant Pointer's admission and statements that the posts were by someone from Southern Illinois, then it is his admission he invented the posts or that it was Defendant Gleeson.

531. Defendants have just admitted their defamation per se to this Court. They admitted they were the ones who invented the evidence because if it was someone from Illinois making the posts as Defendants states in their order, then it could not be Plaintiffs.

532.     From November of 2022 forward, Plaintiffs were in Oklahoma.  The sheer volume of
         the medical records proves it.

533.     The next problem with Defendants December 12th order is all the conclusory
         statements with zero citation to the record.  According to the December 12th order,
         Ms. Lowery called someone a nincompoop and yet there is no reference to any
         document or even the transcript in the order.   According to the dictionary a
         nincompoop is a stupid or silly person or a fool, simpleton.

534.     According to the Defendants Ms. Lowery stated that Ms. Delheimer as a lay person
         should not be on the hearing board because she was a nincompoop.  Ms. Delheimer
         is head of the Illinois Department of Aging and her role is to protect persons over age
         55 from medical abuse.

535.     Ms. Lowery filed nine ADA requests for medical evaluation as a person under
         disability under the ADA and Ms. Delheimer wrote in an order it was Ms. Lowery's
         fault for not explaining the medical tests the doctor wanted to run.  Federal law
         places the burden upon the State to make a reasonable inquiry and to have asked
         follow up questions.

536.     Defendants have just admitted they defamed Plaintiffs by blaming the disabled
         person for not explaining the reasonableness of the accommodation request when no
         question was ever asked.

537. The burden is upon Defendants not Plaintiff to show they complied with federal law and if Ms. Lowery's request did not have enough detail, then Defendants had a duty to follow up with Plaintiffs and her physicians. Ms. Lowery was under disability and Ms. Delheimer knew it. However, the burden was upon the Defendants to site to a pleading or record and the entire order contains no basis for jurisdiction let alone these findings.

538. Defendant Pointer is not qualified under federal law to establish the source of posts because according to X Corp and Linked In, he never inquired.

539. Primary source verification is, as a matter of law, the only way to verify a social media account or post.

540. One does publish allegations a lawyer made the post by claiming the Defendants "saw it on the internet." Anyone can open an account in anyone's name and post. In fact, that has been proven to be what occurred here.

541. No reason existed for Plaintiffs to open an X account in Plaintiff's name. Ms. Lowery already had a large X account. The only reason to open an account in Ms. Lowery's name was to target her in Oklahoma with a false claim and charges in order to defame the plaintiffs

542. The Defendants findings that they were Ms. Lowery's posts are without merit. The publication of such a statement without any basis is defamation per se because the Defendants had no jurisdiction.

543. Since Ms. Lowery was not subject to Rule 751 supervision, the publication is defamation per se.

544. The Complaints by Defendants against the Plaintiffs are false, were made without any inquiry, were without privilege and were published to harm the professional reputation of Plaintiffs in Oklahoma.

545. Plaintiff's have suffered economic loss and physical injury as a result of Defendants false statements.

546. Plaintiff's have been made outcasts in the legal community as a result of Defendants wrongful and egregious conduct which they wrongfully published on the Internet.

547. Defendants statements were false about the professional qualification of Ms. Lowery and Mr. Wilkinson as Oklahoma lawyers

WHEREFORE Plaintiffs pray for judgment against the Defendants for defamation per se in excess of $75,000 in damages and for such further believe as this court deems just and proper.

## COUNT X

## ANTI SLAPP - STATE PENDENT CLAIM

548. Plaintiffs re-alleges and reasserts all facts set forth in prior paragraphs and incorporates same into this Count.

549. This Court has jurisdiction over this action under 28 U.S.C. § 1331, as this action arises under the laws of the United States and were placed into the stream of interstate commerce.

550. The Defendants conduct violates the First Amendment to the U.S. Constitution because the Defendants have targeted Plaintiff's for social media posts and for emails about disability.

551. Venue is proper in this district under 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claim occurred here.

552. Plaintiff's allege the Defendants violated the Oklahoma Citizens Participation (OCPA) Okla. Stat. Tit. 12 § 1432(A) (2019).

553. Plaintiffs are alleged to have made statements in a public forum in Oklahoma. Plaintiffs were only in Oklahoma in 2023 and 2024, therefore all statements were made in Oklahoma.

554. Plaintiffs have the right to petition the government including state officials in Illinois for redress to stop them from being harassed in Oklahoma.

555. Plaintiff Lowery and Plaintiff Wilkinson clearly asked Illinois officials to address a matter of public concern, bullying and harassment as an Oklahoma lawyer.

556. It is clear that Plaintiffs, Ms. Lowery and Mr. Wilkinson right of association in Oklahoma is being attacked by Defendants because they received an Oklahoma

complaint are an attack on both an Oklahoma citizen right of free speech and association.

557.    Defendants are clearly they are attacking Ms. Lowery and Mr. Wilkinson for publicly speaking out against Illinois ADA violations of federal law.

558.    The Defendants therefore have leveled these complaints to stop Mr. Wilkinson from representing Ms. Lowery and from seeking redress from the federal courts.

559.    The Defendants conduct was meant to chill the free speech of Oklahoma residents.

WHEREFORE Plaintiffs pray for judgment against the Defendants for violation of the OCPA and for attorneys fees and costs in excess of $75,000 in damages and for such further believe as this court deems just and proper.

Respectfully submitted,

LOWERY WILKINSON LOWERY, LLC

*Ronald D. Wilkinson*

Ronald D. Wilkinson, OBA 15157
505 North Main Street, Suite 123
Muskogee, Oklahoma 74401
(918) 361-9652
RonW@lowerywilkinsonlowery.com