**IN THE UNITED STATES DISTRICT COURT**
**OKLAHOMA EASTERN DIVISION - MUSKOGEE**

| | |
|---|---|
| 1. **LOWERY WILKINSON LOWERY, L.L.C.,** an Oklahoma Limited Liability Company; | **CASE No 25-CV-22 RAW** |
| 2. **MARGARET J. LOWERY,** individually & as owners of the firm; | **Federal Statutes Invoked** |
| 3. **RONALD D. WILKINSON** individually & as owners of the firm; | **42 U.S.C. § 12132**<br>**29 U.S.C. § 794**<br>**42 U.S.C. §1983**<br>**15 U.S.C. §12-27**<br>**VAWA 2022** |
| **Plaintiffs,** | |
| **vs.** | |
| 4. **STATE OF ILLINOIS OF ILLINOIS** by and through their agents, employees, volunteers and servants, **SAINT CLAIR COUNTY & ANDREW GLEESON**. | **JURY TRIAL DEMANDED** |
| 5. **ILLINOIS SUPREME COURT** by through their agency, agents, employees, volunteers & servants **AMY GRANT,** the Court's ADA Coordinator. | |
| 6. **ATTORNEY REGISTRATION & DISCIPLINARY COMMISSION** by through their agency, agents, employees, volunteers & servants **PETER ROTSKOFF, RACHEL MILLER, JOSE LOPEZ, MARTHA FERDINAND, ELIZABETH DELHEIMER, LEA GUTIERREZ, JEROME LARKIN;** | |
| 7. **SYNOPSIS, INC.,** an Illinois Limited Liability Corporation. | |

-1-

**AMENDED COMPLAINT**
**FOR DECLARATORY JUDGMENT, INJUNCTIVE RELIEF, AND DAMAGES**
**(ADA TITLE II, TITLE V, CIVIL RIGHTS, MALICIOUS PROSECUTION)**

COMES NOW, Petitioners, Lowery Wilkinson Lowery, LLC, by and through Margaret J. Lowery and Ronald D. Wilkinson, respectfully request per Rule 15 that this Amended Petition be filed for the relief set forth in this Complaint against the named Defendants, to-wit:

**I.**

**INTRODUCTION**

Plaintiffs Lowery Wilkinson Lowery, LLC, with principals Margaret J. Lowery and Ronald D. Wilkinson, individually bring this action under Titles II and V of the Americans with Disabilities Act (ADA), 42 U.S.C. §§ 12131 et seq. and 12203, 42 U.S.C. § 1983, the Clayton Act, 15 U.S.C. § 15, the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. §§ 1961 et seq., and Oklahoma law.

Plaintiff's seek declaratory judgment, injunctive relief, and damages for Defendants' coordinated campaign of disability discrimination, retaliation, anti-competitive conduct. Defendants fraudulent tactics have caused irreparable harm in Oklahoma including the loss of more than $3 million dollars from Ms. Lowery's retirement savings, permanent harm to their Oklahoma law practice and catastrophic medical damages necessitating organ transplant.

This Court has jurisdiction over Defendants' interstate misconduct originating in Illinois but directed into Oklahoma. Ms. Lowery, a former Illinois Bar, a Board of Bar Examiner Commissioner and 2017 U.S. Attorney nominee who exposed drug-related crimes by St. Clair County Judges Michael Cook and Joseph Christ in 2013. This plus the rejection of his affections was the triggering event to Gleeson's a retaliatory vendetta by Defendants, the Illinois Supreme Court, the Attorney

Registration and Disciplinary Commission (ARDC), St. Clair County officials, and Synopsis, Inc., against the Plaintiffs.

Defendants denied to Plaintiff Lowery more than ten ADA accommodations, despite her documented disabilities. In retaliation for attempting to assert her civil rights, the Defendants utilized the U.S. Mail to sent over 20 baseless bar complaints into Oklahoma utilizing fabricated evidence to pursue disciplinary actions without jurisdiction. Defendants regulatory pursuits demonstrate the foundation is not to protect professional standards but to engage in discrimination.

The facts consistently show a pattern of targeted bullying and harassment based upon gender, race, religion and disability with retaliatory acts which reflect a corrupt system of bias within Illinois' justice system. This bias shields white male attorneys with felony convictions while disproportionately targeting vulnerable groups protected by federal law. Plaintiffs were denied repeated access to the Courts in Illinois, where the Supreme Court rejects 99% of appeals and refuses to enforce ADA protections.

Plaintiffs seek relief in this Court to enjoin Defendants' interference with their Oklahoma licenses, to declare Defendants' actions unconstitutional and void, and recover damages for the severe personal, professional, and economic harm inflicted

This Amended Complaint seeks declaratory judgment, injunctive relief, and damages against Defendants for systemic violations of federal law, including Titles II and V of the Americans with Disabilities Act (ADA), 42 U.S.C. §§ 12131 et seq. and 12203, 42 U.S.C. § 1983, the Clayton Act, malicious prosecution, and a pattern of gender, racial, and disability-based discrimination entrenched in Illinois' justice system.

## II.

## JURISDICTION AND VENUE

1.    This is an ADA court access case.  The Oklahoma federal court has subject matter jurisdiction under 28 U.S.C. § 1331 (federal question), as this action arises under the ADA, 42 U.S.C. § 1983, and other federal statutes. Supplemental jurisdiction over state law claims exists under 28 U.S.C. § 1367.

2.    Personal jurisdiction exists over Defendants under Oklahoma's long-arm statute, 12 Okla. Stat. § 2004(F), due to their purposeful acts directed into Oklahoma, including filing 22 false bar complaints most after 2022 with the Oklahoma Bar Association (OBA) and seeking enforcement of void Illinois orders, establishing minimum contacts under *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286 (1980).

3.    Further, this Court has jurisdiction  under *Calder v. Jones*, 465 U.S. 783, 789-90 (1984), because of the Defendants' intentional conduct of specifically targeting Plaintiffs in Oklahoma with baseless complaints and retaliatory orders.  The Defendants conduct caused foreseeable harm in this forum, subjecting Defendants to jurisdiction here in Oklahoma.

4.    The Calder Effects Test is the applicable standard in this litigation. *Calder v. Jones*, 465 U.S. 783 (1984)).  Defendants directed tortuous acts into Oklahoma by U.S. Mail, email, phone calls, engaged in courthouse assaults.

5.     ARDC also sent false complaints to Oklahoma Bar in June of 2024, then Synopsis, Inc.'s sent fraudulent invoices to Plaintiff Lowery in Oklahoma on behalf of ARDC.  ARDC mailed and published fabricated about X posts to a Oklahoma.  On December 12, 2024 ARDC sent a false Hearing Board Report to the OBA targeting Plaintiffs property rights on

tribal land. This was done despite ARDC's lack of supervisory authority over Plaintiff's post June 30, 2023, Illinois bar retirement.

6.    Venue is proper under 28 U.S.C. § 1391(b)(2) because all or a substantial part of the events giving rise to the claims, including Defendants' interference with Plaintiffs' Oklahoma law practice, Ms. Lowery's medical treatment, all of the events occurred in Oklahoma and within this district.

### III.

### PARTIES

7.    Plaintiff Margaret J. Lowery is domiciled in South Dakota since 2019 and resides in Oklahoma.

8.    Plaintiff Lowery retired her Illinois bar license on June 30, 2023. Ms. Lowery has a documented disability under the Americans with Disabilities Act (ADA), stemming from a 1989 horseback riding accident that resulted in a broken back and spinal cord injury. From 2000, she served as General Counsel for Memorial Hospital in Belleville, Illinois, where she secured bond financing for a neuroscience center and the Shiloh Hospital, facilitating a merger with BJC Healthcare System.

9.    Plaintiff Ronald D. Wilkinson, an Oklahoma resident, is Ms. Lowery's law partner at Lowery Wilkinson Lowery, LLC, in Muskogee, Oklahoma.

10.    Defendants targeted Plaintiff Wilkinson with multiple false bar complaints filed with the Oklahoma Bar Association (OBA), alleging he engaged in the unauthorized practice of law in Illinois by serving as Ms. Lowery's Durable Power of Attorney during her disability.

11.    These actions were intentional, directed at Oklahoma and were retaliation for his advocacy on Plaintiff Lowery's behalf in the Oklahoma federal courts under the ADA.  Defendants conduct violates Title V of the ADA.

12.    Plaintiff Lowery Wilkinson Lowery, LLC, an Oklahoma limited liability company located on tribal land[1], suffered harm from Defendants' repeated false complaints and actions directed into Oklahoma.

13.    Defendant Andrew Gleeson, an Illinois judge and Chief Judge of St. Clair County, resides in Illinois. He is sued in his individual and official capacities for allegedly assaulting Ms. Lowery and filing over 22 false bar complaints against Plaintiffs to conceal his misconduct.

14.    Defendant St. Clair County, Illinois, a public entity, employed Gleeson as its chief elected judicial official. At Gleeson's direction, county officials, including the State's Attorney, allegedly assaulted Ms. Lowery on county property and instructed law enforcement to refuse her incident report.

15.    Defendant Illinois, a state entity, operates the Illinois Supreme Court under its state constitution.

16.    The Illinois Supreme Court exercises exclusive control over the Attorney Registration and Disciplinary Commission (ARDC), with jurisdiction limited by the Illinois Constitution to members of the Illinois bar.

---

[1]Ms. Lowery is an honorary member which is not Dawes citizenship.  Mr. Wilkinson is a Dawes citizenship eligible member of the Chotow Nation, but the courthouse in Arkansas burned to the ground..

17.    Defendant Illinois Supreme Court, through its regulatory arm, the ARDC, exceeded its jurisdiction by targeting Plaintiffs, who are not active Illinois bar members, with actions directed into Oklahoma.

18.    Defendant ARDC, a public entity under the Illinois Supreme Court, is responsible for attorney discipline in Illinois. It directed intentional misconduct into Oklahoma, harming Plaintiffs.

19.    Defendant Synopsis, Inc., an Illinois corporation, sent fraudulent invoices into Oklahoma via U.S. Mail at the ARDC's direction, contributing to the harm against Plaintiffs.

20.    Defendants Peter Rotskoff, Rachel Miller, Lea Gutierrez, Jose Lopez, Martha Ferdinand, Elizabeth Delheimer, and Joy Cunningham, ARDC officials residing in Illinois, are sued in their individual and official capacities. Each directed intentional misconduct into Oklahoma, targeting Plaintiffs under color of state law.

21.    Defendant Cynthia Grant, the Illinois Supreme Court's ADA Coordinator and Compliance Officer, resides in Illinois and is sued in her individual and official capacities for directing intentional misconduct into Oklahoma, harming Plaintiffs.

22.    The foregoing ARDC officials (Rotskoff, Miller, Gutierrez, Lopez, Ferdinand, Delheimer, Cunningham), along with Grant, serve as employees, agents, or assigns of the Illinois Supreme Court and ARDC, acting under its complete control. Their actions were taken under color of state law.

IV.

**FACTUAL ALLEGATIONS**

23. In 1989, Plaintiff Margaret J. Lowery sustained a spinal cord injury from a horseback riding accident in Glenpool, Oklahoma, treated at St. Francis Hospital in Tulsa. This permanent disability, per Dr. Patrick VanSchoyck's records, qualifies her for ADA accommodations (e.g., accommodation), yet she served as General Counsel for Memorial Hospital in Belleville, Illinois, for nearly 15 years.

24. In May 2013, Plaintiff Lowery reported a drug distribution scheme by St. Clair County Judges Michael Cook and Joseph Christ to federal authorities, leading to Cook's two-year prison sentence in 2014, Christ's cocaine overdose death, and convictions of county employees James Fogarty and Sean McGilvery. This whistle blowing triggered Defendants' retaliatory campaign, extending into Oklahoma with false bar complaints by 2022.

25. In January 2017, President Trump's administration contacted Ms. Lowery about serving as U.S. Attorney for the Southern District of Illinois. When Defendants' discovered this, it escalated the retaliation.

26. In 2018, Defendant Andrew Gleeson, Chief Judge of St. Clair County, made unwanted romantic advances toward Plaintiff Lowery during his divorce, prompting her October 29, 2018 email complaint to the ARDC about Gleeson's bizarre and creepy conduct.

27. Instead of investigating the complaint, Defendant Peter Rotskoff informed Gleeson. In retaliation, Gleeson assaulted her in the St. Clair County Courthouse elevator.

28. Then Gleeson had Lowery targeted on multiple occasions some of which were witnessed by Assistant States Attorney Paul J. Evans. These incidents align with findings of judicial bullying in the Red Bee Group study, commissioned by the Illinois Supreme Court in 2023.

29. The ARDC later charged Ms. Lowery with fabricating these assaults, denying the Illinois' court system has any documented bullying issues.

30. From 2018 to 2024, Plaintiffs repeatedly complained to Defendants about Gleeson's harassment and assaults (e.g., in 2019 and 2021), but Defendants failed to follow Illinois Supreme Court policies or federal law, instead escalating their retaliatory actions.

31. Since fall 2022, Defendants, led by Gleeson, sent over a dozen false bar complaints to the Oklahoma Bar Association (OBA), including six alleging everything from a "rampage" by Plaintiffs in Oklahoma. This was retaliation for Ms. Lowery's 2013 whistle blowing and 2018 complaint to Defendants. No procedure exists to address these violations, per Plaintiffs' unanswered inquiries to the Illinois Supreme Court.

32. Frustrated by this ongoing misconduct, the firm instructed Ms. Lowery to retire her Illinois bar license, effective June 30, 2023, notifying Defendants in writing.

33. Three days before her effective retirement date, June 27, 2023, Defendant Rachel Miller subpoenaed Ms. Lowery's visit records from the St. Louis Holocaust Museum, an act beyond ARDC's jurisdiction under Illinois Supreme Court Rule 751, as Ms. Lowery was retiring.

34. Ms. Lowery did not discovery Defendants conduct until the first week of October of 2023 during the Hamas attacks. Defendants conduct distressed Plaintiff Lowery given her family's Holocaust history and that prompted a November 14, 2023 complaint to the DOJ Civil Rights Division.

35.    In retaliation, Defendants fabricated an X account in Ms. Lowery's name, posting false content on November 30, 2023 from a zero-follower account, despite her established 25,000-follower account registered since 2022, per X Corp records.

36.    On September 12, 2023, the ARDC probed Ms. Lowery's disabilities via unauthorized inquiries, exceeding Rule 751's scope, as she no longer held an active Illinois bar license.

37.    On December 10, 2023 and on April 15, 2024, Ms. Lowery collapsed in her office from abdominal pain and was admitted to St. Francis Hospital, where a CT scan revealed a 7 mm kidney stone and hydronephrosis. Dr. VanSchoyck diagnosed sepsis, exacerbated by Defendants' ongoing harassment, per his affidavit.

38.    Starting February 2024, Ms. Lowery filed multiple ADA accommodation requests with the ARDC and Illinois Supreme Court, including a March 2024 request for five days inpatient testing, denied by Defendants Miller, Jose Lopez, and Joy Cunningham despite Dr. VanSchoyck's appeals.

39.    On April 9, 2024, Defendant Lopez indicated no dialogue would occur with Ms. Lowery or Dr. VanSchoyck, signaling intent to harm Ms. Lowery's Oklahoma license, per pretrial hearing records.

40.    On April 26, 2024, Ms. Lowery underwent emergency ureteroscopy at St. Francis Hospital for urosepsis, confirmed by Dr. VanSchoyck and Clinical Director Dr. Rashid. She was temporarily totally disabled on April 15, 2024 and with emergency abdominal surgery 10 days later with six weeks of recovery.

41.     On May 1, 2024 Andi Watson, Deputy Clerk of the ARDC sent Plaintiff the following email immediately after Plaintiff submitted an electronic Motion for Continuance under the ADA as follows:

> The following link is being provided pursuant to the Hearing Board Order entered on April 9 2024, allowing Judge Stiehl and Judge McGlynn to testify remotely. **Please note that no other individual will be admitted through this link.**

42.     On May 1, 2024, the Defendants wrote Plaintiff and told her she had to travel to Illinois to appear even though she had requested 9 ADA request including for emergency surgery.

43.     By May 2, 2024, with sepsis-induced organ failure, including pancreatic insufficiency and diabetes she was unable to travel, prepare or even appear. The extent of her organ failure was diagnosed in September of 2024.

44.     On April 23, 2024, Defendant Miller emailed ARDC staff, stating:

> "The decision regarding her license was made… Once the default is entered, the case is effectively over," planning a May 2, 2024 hearing despite Ms. Lowery's disability and lack of Rule 751 jurisdiction.

45.     On May 2, 2024, the ARDC denied Ms. Lowery's continuance request, hung up on her three attempts to join remotely (per Paul J. Evans), and locked her out of the hearing, defaulting her while she was incapacitated, as confirmed by Dr. VanSchoyck and Evans.

46.     The ARDC also denied all discovery and testimony access on April 9, 2024, and filed a false OBA complaint against Plaintiff Ronald D. Wilkinson on May 2, 2024, alleging unauthorized practice of law for acting as Ms. Lowery's advocate.

47.    The ARDC's May 10 and December 12, 2024 reports falsely denied Ms. Lowery's sepsis and assaults, citing inapplicable cases like In re Duric to evade ADA obligations, despite medical evidence from Dr. VanSchoyck.

48.    On January 6, 2025, the ARDC Review Board denied Ms. Lowery's Motion for New Trial and scheduled a oral argument in Chicago refusing to address Defendants lack of jurisdiction under Rule 751 for a license she does not have. The absurdity of the waste of time and money over non-existent social media posts Defendants invented in order to target a sicabled woman in another state is shocking.

49.    The Rooker-Feldman Doctrine does not bar this action. This Court retains jurisdiction because Plaintiffs filed their initial Complaint in January 2025, prior to the ARDC Review Board's final judgment on May 9, 2025 (¶ 38), as the December 12, 2024 Hearing Board order (Exhibit #4) was not a final state court judgment under 28 U.S.C. § 1257. *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005) (Rooker-Feldman applies only to cases seeking review of final state court judgments).

50.    Furthermore, Congress excluded ADA enforcement actions from Rooker-Feldman's scope under Title II, 42 U.S.C. § 12132, to ensure federal courts can remedy state violations of disability rights, as affirmed in *Tennessee v. Lane*, 541 U.S. 509, 531–533 (2004) (Title II abrogates state sovereignty for court access claims).

51.    Immunity does not shield Defendants from liability. The ARDC, Illinois Supreme Court, and individual Defendants (e.g., Rotskoff, Miller, Lopez) acted beyond their jurisdiction under Rule 751 by targeting Ms. Lowery post-retirement (June 30, 2023, Exhibit #1) and Mr. Wilkinson, a non-Illinois licensee, with 32 false complaints (¶ 7). Such ultra vires acts strip

quasi-judicial immunity, per *Forrester v. White*, 484 U.S. 219, 227–229 (1988) (immunity inapplicable when officials exceed authority).

52.    Additionally, Synopsis, Inc., a private entity, enjoys no immunity for mailing fraudulent invoices (¶ 39, Exhibit #2), and individual Defendants' intentional misconduct (e.g., Exhibit #12 conspiracy) negates immunity under *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982) (qualified immunity lost for knowing violations of federal law).

53.    The Eleventh Amendment does not apply. Defendants' violations of Titles II and V of the ADA (42 U.S.C. §§ 12131 et seq., 12203) implicate Plaintiffs' fundamental right of court access, abrogating state sovereign immunity, as held in *Tennessee v. Lane*, 541 U.S. 509, 533–534 (2004) (Congress validly abrogated immunity for Title II claims involving judicial access).

54.    The ARDC's May 2, 2024 default (¶ 35), denial of ten ADA accommodations (¶ 11), and barring Ms. Lowery from hearings (Exhibit #3) constitute deliberate indifference to her federally protected rights, actionable under *United States v. Georgia*, 546 U.S. 151, 159 (2006).

55.    Moreover, Defendants' interstate fraud via Synopsis invoices[2] (¶ 39) and complaints to Oklahoma (¶ 7) waive immunity by engaging in commercial acts, per *College Savings Bank v. Florida Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 680 (1999).

56.    Defendants' assertion that Plaintiffs cannot sue them under 42 U.S.C. § 1983 is meritless. Section 1983 applies to state actors, including Defendants ARDC, Illinois Supreme Court,

---

[2]Defendants actually emailed Ms. Lowery the State of Illinois/ARDC television cable bill demanding Lowery pay it.  (Exhibit #30).

St. Clair County, and their agents (e.g., Gleeson, Rotskoff, Miller, Lopez), for actions under color of state law violating federal rights, such as the Fourteenth Amendment due process violations from the May 2, 2024 default (¶ 35) and First Amendment retaliation via 32 false complaints (¶ 7). *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978) (municipalities liable for policies causing constitutional harm); *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 n.10 (1989) (individual capacity suits against state officials permitted under § 1983).

57. Gleeson's courthouse assaults (¶ 22) and Synopsis, Inc.'s fraudulent invoices (¶ 39) as a private actor conspiring with state officials further establish liability, per *Dennis v. Sparks*, 449 U.S. 24, 27–28 (1980) (private parties acting with state officials under color of law are subject to § 1983).

58. The Eleventh Amendment does not bar these claims, as Plaintiffs seek prospective relief (injunction) and damages against individuals and Synopsis, not the state treasury, under *Ex parte Young*, 209 U.S. 123, 159–160 (1908).

## V.

## PRIOR LITIGATION HISTORY

59. On May 2, 2024, after the ARDC excluded Ms. Lowery from a disciplinary hearing despite her temporary total disability from sepsis, as documented by Dr. Patrick VanSchoyck (Declaration A), she sought assistance by contacting Assistant State's Attorney Paul J. Evans (Declaration B) and her retained Oklahoma counsel, OBA member James Conrady.

60. This Court may note that this section was omitted from the initial Complaint. The omission resulted from guidance by the OBA General Counsel's Office, which advised against

disclosing professional complaints prior to their publication under Oklahoma Rules of Professional Conduct. Plaintiffs acknowledge and regret any resulting confusion.

61.   In April 2024, Ms. Lowery paid Mr. Conrady $10,000 to represent her during her temporary total disability from renal stones, sepsis and organ failure being caused by the Defendants.

62.   On May 2, 2024, while recovering from emergency surgery in Tulsa, she was unable to contact him despite repeated attempts.

63.   Mr. Conrady had represented to Plaintiffs that he filed an action with this Court (Eastern District of Oklahoma, Muskogee).  In fact, he represented that he filed it and that Judge White was the assigned Judge.

64.   Then Conrady 'disappeared,' leaving Ms. Lowery without federal counsel just after emergency abdominal surgery.

65.    Discovery will show Plaintiffs repeatedly contacted the Clerk of this Court to confirm the filing, only to find no record of it.

66.   Consequently, with Conrady unresponsive, Plaintiff Wilkinson filed an emergency motion for a Temporary Restraining Order (TRO) in the U.S. District Court for the Northern District of Oklahoma (Tulsa), without an accompanying complaint. Judge Hill declined to issue the TRO due to the absence of a complaint, rendering no decision on the merits.

67.   In September 2024, following Ms. Lowery's diagnosis of sepsis-induced organ failure, she inquired with Judge Hill's clerk and discovered that Judge Hill had previously represented a party in casino litigation against The Lowerys.  This was a Rule 2.11 potential conflict of interest under the Code of Judicial Conduct.

68. Given Ms. Lowery's critical health condition and her physician's directive to prioritize recovery, Plaintiffs voluntarily dismissed the case. It was refiled in January 2025 after her survival from organ damage was confirmed.

69. On February 21, 2025, the OBA filed an Emergency Petition for Interim Suspension against Mr. Conrady in the Oklahoma Supreme Court (Case No. 7863), with a published file date of March 21, 2025. The petition alleged harm to multiple clients, including Ms. Lowery, further complicating Plaintiffs' efforts to secure counsel during the ARDC proceedings.

70. As detailed in Count II (ADA Title V Retaliation), Ms. Lowery was a victim of Mr. Conrady's malfeasance, which, combined with Judge Hill's undisclosed conflict, hindered Plaintiffs' prior litigation efforts.

71. Defendants have exploited these events to misrepresent Plaintiffs' actions to delay justice. This is a pattern consistent with their repeated retaliatory conduct throughout this case.

72. Conrady's "disappearance" and false filing claim should explain the Northern District TRO filing by Mr. Wilkinson. Plaintiffs' were operating in good-faith. They were thwarted by Mr. Conrady not conducting himself in accordance with Oklahoma professional rules.

## VI.

## CAUSES OF ACTION

### Count I.
### ADA Title II Violation
### (All Defendants)

73. Plaintiffs reallege and reassert paragraphs 1-46 herein.

74.    Defendants, as a public entity under Title II, 42 U.S.C. § 12131, denied Ms. Lowery reasonable accommodations during ARDC proceedings, despite her documented disability, violating 42 U.S.C. § 12132 and 28 C.F.R. § 35.130.

75.    Defendants' refusal to grant continuances, exclusion from the May 2, 2024 hearing, and dismissal of physician affidavits proximately caused Ms. Lowery's physical and economic injuries.

76.    ARDC's May 2, 2024, denial of accommodations, hanging up on Lowery, disclosing her private facts during sepsis surgery, violated 42 U.S.C. § 12132, causing pancreatic failure.

77.    Defendants conduct was an intentional,  premeditated act into Oklahoma by Defendants as evidenced by Defendant Miller's April 23, 2024 email of a planned default.

78.    Plaintiffs seek damages in excess of $75,000 for this Count.

## Count II.
## ADA - Title V Retaliation
## (Against all Defendants)

79.    Plaintiffs reallege and reassert paragraphs 1-46 herein.

80.    Defendants retaliated against Lowery's ADA requests and 2013 whistle blowing, violating 42 U.S.C. § 12203, with assaults, 22 false complaints directed at Oklahoma, a planned default, and fake X posts.

81.    Defendants retaliated against Plaintiff Lowery for requesting ADA accommodations and reporting judicial misconduct, and against Plaintiff Wilkinson for advocating on her behalf, violating 42 U.S.C. § 12203.

82.    Retaliatory acts include

a.   filing 22 false bar complaints into Oklahoma;

b.   holding a fraudulent ADA hearing on May 2, 2024

c.   pursuing a void disbarment recommendation (May 2 and December 12, 2024) with fabricated evidence;

d.   targeting Mr. Wilkinson with a baseless UPL complaint (June 2024).

e.   releasing Ms. Lowery's health information and genetic information in retaliation for filing a federal lawsuit

83.   Defendants have consistently refused to follow the ADA and retaliated as evidenced by their bar complaint into Oklahoma against Mr. Wilkinson for seeking Article II ADA access to a hearing.  That's a violation of Title V of the ADA.

84.   Plaintiffs seek damages in excess of $75,000 for this Count.


### Count III.
### 42 U.S.C. § 1983 – Due Process
### (Against All Defendants)

85.   Plaintiffs reallege and reassert paragraphs 1-46 herein.

86.   Defendants denied Lowery due process under color of law via assaults, false complaints, and hearing lockouts, violating the Fourteenth Amendment.

87.   Plaintiffs seek damages in excess of $75,000 for this Count.


### Count IV.
### 42 U.S.C. § 1983 – First Amendment
### (Against ISC, ARDC, Gleeson, St. Clair County, Rotskoff, Miller)

88.   Plaintiffs realleges and reassert paragraphs 1-46 herein.

-18-

89. Defendants retaliated against Plaintiffs' right of speech, religion and association by sending repeated false complaints into Oklahoma making false professional smears, seizing religious records, targeting professional associations all which violated the First Amendment.

90. Plaintiffs seek damages in excess of $75,000 for this Count.

### Count V.
### 42 U.S.C. § 1983 – Excessive Force
### (Against Gleeson, St. Clair County)

91. Plaintiffs realleges and reassert paragraphs 1-46 herein.

92. Gleeson and St. Clair County's State's Attorney used excessive force in three courthouse assaults, violating the Fourth and Fourteenth Amendments.

93. Plaintiffs seek damages in excess of $75,000 for this Count.

### Count VI.
### Clayton Act Violation
### (Against ARDC, Rotskoff, Miller, Synopsis, Inc.)

94. Plaintiffs realleges and reassert paragraphs 1-46 herein.

95. Defendants ARDC, Peter Rotskoff, Rachel Miller, and Synopsis, Inc., violated the Clayton Act, 15 U.S.C. §§ 12–27, by engaging in anti-competitive practices designed to suppress Plaintiffs' Oklahoma law practice, exclude disabled and minority attorneys from the legal market, and monopolize legal services across state lines, causing substantial economic harm exceeding $3 million.

96. The Clayton Act prohibits practices that substantially lessen competition or tend to create a monopoly. Defendants' actions of filing 22 false bar complaints into Oklahoma since 2017, imposing fraudulent Synopsis, Inc. invoices and enforcing Illinois Supreme Court Rule

756(e), constitute an illegal scheme to restrain trade and exclude competition, violating 15 U.S.C. § 15.

97.  Since Ms. Lowery's 2013 whistle-blowing on St. Clair County judges and her 2018 ARDC complaint against Defendant Gleeson (¶¶ 19, 21), Defendants have targeted Plaintiffs with baseless complaints (e.g., "rampage" allegations, ¶ 25) to defame their professional reputation and drive them from practice in Oklahoma, where they operate Lowery Wilkinson Lowery, LLC.

98.  Rule 756(e) requires attorneys to surrender all other state licenses (e.g., Ms. Lowery's Oklahoma license) to retire permanently from Illinois, an unconstitutional overreach into Oklahoma's regulatory authority. This policy, enforced against Ms. Lowery's June 30, 2023 retirement (Exhibit #1), restrains interstate trade by barring multi-state practice, reducing competition, and artificially inflating legal service costs.

99.  Defendants ARDC, Rotskoff, and Miller, in concert with Synopsis, Inc., mailed fraudulent "investigative service" invoices to Ms. Lowery's Oklahoma address in September–November 2023 (¶ 39), despite Synopsis performing no work (Exhibit #2). These costs, unchallengeable under Rule 773, drained Plaintiffs' resources, furthering economic exclusion.

100. In fact the ARDC mailed Ms. Lowery their cable bill and demanded that she pay that too. (Exhibit #30). This is the level of harassment by these Defendants into Oklahoma.

101. The April 23, 2024 email from Defendant Miller (Exhibit #12) reveals a conspiracy to default Ms. Lowery, stating, "The decision regarding her license was made… Ms. Nester is on board, and will rush judgment through," coordinating with Oklahoma's Tracy Nester to

-20-

enforce void Illinois orders in Oklahoma, stifling Plaintiffs' practice and deterring competition.

102. Defendants' system which bars all pre-hearing jurisdictional challenges (Rule 235), denying discovery (¶ 36), and bolting hearing doors shut (¶ 35) created barriers to practice, as confirmed by the Red Bee Group study (Exhibit #7), which found a "serious bullying problem" targeting vulnerable attorneys, including minorities and the disabled.

103. Defendants' interlocking directorates (e.g., state employees like Delheimer on ARDC boards, ¶ 15) ensure biased outcomes, as seen in Judge Robert Adrian's case (Exhibit #8), where ARDC pursued post-retirement discipline despite Rule 751 limits. This excludes competitors, maintaining an Illinois monopoly over legal services.

104. The Defendants discrimination is evident because Defendants have never charged nor pursued Michael Madigan, who is a convicted federal felon, post retirement. That proves Defendants conduct is both retaliatory and it violates the Clayton Act.

105. By targeting Ms. Lowery (disabled, Jewish, female) and Mr. Wilkinson (Choctaw-affiliated) with 22 complaints, Defendants reduce market diversity, limit consumer choice, and drive up legal costs, violating the Clayton Act's purpose to prevent monopolistic practices. *Reed v. Illinois*, 14-1745 (7th Cir. 2015), applied unconventionally per McGirt.

106. These acts of presenting false complaints, fraudulent costs, and exclusionary rules, caused Plaintiffs over $3 million in lost wages, retirement savings, and practice revenue, plus reputational harm, as Defendants intended to "teach her the lesson she deserves" (Exhibit #12).

107.    Plaintiffs seek treble damages, injunctive relief barring Defendants from enforcing Rule 756(e) or filing further complaints, and a declaration that Defendants' practices violate 15 U.S.C. § 15.

**Count VIII.**
**Intentional Infliction of Emotional Distress**
**(Against Gleeson, St. Clair County, Rotskoff, Miller)**

108.    Plaintiffs realleges and reassert paragraphs 1-46 herein.

109.    Defendants' outrageous acts—assaults, false complaints, Holocaust probes—caused Lowery's sepsis collapse, violating Oklahoma law.

110.    Plaintiff's seek damages in excess of $75,000 for this Count.

**Count IX.**
**Civil Conspiracy (Against All Defendants)**

111.    Plaintiffs realleges and reassert paragraphs 1-46 herein.

112.    Defendants conspired to harm Plaintiffs via assaults, fraud, and smears, targeting their firm.

113.    Plaintiffs seek damages in excess of $75,000 for this Count.

**Count X.**
**Illinois Consumer Fraud Act**
**(Against Synopsis, Inc., Rotskoff, Miller)**

114.    Plaintiffs realleges and reassert paragraphs 1-46 herein.

115.    Plaintiff Margaret J. Lowery, admitted to the Illinois bar on July 21, 2000, and the Oklahoma bar since May 1987, petitioned the ARDC to retire her Illinois license under Illinois Supreme Court Rule 756(e), effective June 30, 2023, ending her active status.

116.    The ARDC acknowledged this retirement via written confirmation (Exhibit 1), and ISBA Mutual canceled her professional liability insurance accordingly.

117. Defendants ARDC, an arm of the Illinois Supreme Court, along with Peter Rotskoff and Rachel Miller, refused to process Ms. Lowery's retirement unless she surrendered her Oklahoma license—a condition not required by Rule 756(e). They falsely asserted supervisory authority over her post-retirement, claiming active status to pursue discipline for alleged social media posts after June 30, 2023.

118. Defendants misrepresented Rule 756(e)'s requirements by invoking Rule 756(f) (permanent retirement) to demand surrender of her Oklahoma license, despite her Rule 756(e) petition. This exceeds Rule 756's scope and constitutes an unconstitutional overreach into Oklahoma's jurisdiction, where Ms. Lowery resides on tribal land.

119. Defendants further engaged in deceptive practices by assessing fraudulent Rule 773 costs for "investigative services" by Synopsis, Inc., mailed to Ms. Lowery's Oklahoma address in September, October, and November 2023.

120. Synopsis, Inc. confirmed via email (Exhibit 2) that it performed no investigative work, issuing invoices solely at ARDC's direction. These costs, intended for ARDC's own investigators per its 2023 Annual Report, were improperly outsourced to a third party, evidencing fraud.

121. When Ms. Lowery challenged these costs via a February 2023 petition to Synopsis and ARDC, Defendants retaliated by initiating new disciplinary inquiries to block her retirement, including a false Interim Suspension Petition filed post-retirement. This culminated in the December 12, 2024 disbarment recommendation, which denied her discovery to prove the social media posts were fabricated (e.g., X Corp. records), amounting to defamation per se.

122.    The ARDC operates a fee-based system, collecting $385 annually from active attorneys (including Ms. Lowery until 2023) and imposing unchallengeable Rule 773 costs post-retirement. This constitutes "trade or commerce" under the Illinois Consumer Fraud Act (ICFA), 815 ILCS 505/1(f), akin to commercial transactions, not sovereign regulation, per *City of Chicago v. Comcast Cable Holdings, L.L.C.*, 384 F.3d 901, 904 (7th Cir. 2004).

123.    Defendants' billing for nonexistent Synopsis services mirrors *Avery v. State Farm Mutual Automobile Insurance Co.*, 216 Ill. 2d 100, 835 N.E.2d 801 (2005), where charging for unprovided services was deemed deceptive under ICFA. Their unchallengeable costs cause substantial injury without benefit, violating fairness standards in Robinson v. Toyota Motor Credit Corp., 315 Ill. App. 3d 1086, 735 N.E.2d 724 (2000).

124.    Defendants intended Ms. Lowery to rely on Rule 756(e)'s retirement process and Rule 773's cost legitimacy, knowing they would impose fraudulent charges and retaliate to extract payments and extend control beyond their jurisdiction.

125.    This deception and unfairness caused Ms. Lowery to pay $1,500 in costs under protest (August–October 2023), incur over $250,000 in medical expenses from exacerbated disability, and suffer approximately $3 million in lost wages and retirement savings, plus reputational harm to both Plaintiffs.

126.    Defendants' immunity claim under 745 ILCS 5/1 fails, as fraudulent cost collection and interstate retaliation waive sovereign protection, rendering their acts commercial and actionable under ICFA, consistent with Avery and Comcast.

-24-

127. Plaintiffs seek actual damages, punitive damages, injunctive relief, and attorney fees under 815 ILCS 505/10a, within the three-year statute of limitations, given Defendants' ongoing conduct.

128. Plaintiffs seek damages in excess of $75,000 for this Count.

## Count XI.
## Invasion of Privacy
## (Against ARDC, Lopez, Ferdinand, Delheimer, Miller & Rotskoff)

129. Plaintiffs realleges, reassert & incorporate paragraphs 1-46 herein.

130. ARDC via the Hearing Board and Miller's inquiries and disclosures of Lowery's medical and Jewish records violated her privacy & Oklahoma law.

131. Plaintiffs seek damages in excess of $75,000 for this Count.

## Count XII.
## Malicious Prosecution (Federal and Oklahoma Law)
## (Against Defendants Illinois & ARDC)

132. Plaintiffs realleges, reassert & incorporate paragraphs 1-46 herein

133. Defendants maliciously initiated and continued baseless disciplinary proceedings against Plaintiffs without probable cause or jurisdiction, with malice evidenced by fabricated evidence and retaliatory intent, causing injury to their Oklahoma practice.

134. Under Oklahoma law, *Young v. First State Bank*, 628 P.2d 707 (Okla. 1981), and federal common law, this constitutes malicious prosecution.

135. Plaintiffs seek damages in excess of $75,000 for this Count.

**Count XIII.**
**Declaratory Judgment – Lack of Jurisdiction and Void Orders**
**(Against Defendants Illinois & ARDC)**

136.    Plaintiffs realleges, reassert & incorporate paragraphs 1-46 herein.

137.    Under 28 U.S.C. § 2201, Plaintiffs seek a declaration that Defendants lack jurisdiction over them under Illinois Supreme Court Rule 751, that all ARDC orders (including May 2 and December 12, 2024) are void.

138.    Plaintiffs see to have various rules in Illinois declared unconstitutional or not applicable to her case, such as Illinois Rule 235 which to date Defendants have used to avoid addressing their lack of jurisdiction.

139.    Plaintiffs seek to have the *In re Duric* decision held unconstitutional because it was used to overturn the U.S. Constitution and the Congressional Record, to usurp the ADA.

140.    Plaintiffs also seek to have declared as unconstitutional the Illinois Rule which requires a lawyer to give up a bar license in Illinois to practice in any other state.  Illinois does not have the right to regulate another states practice and the rule sanction state sponsored extortion.

141.    Defendants' actions violate federal law and *McGirt*.

142.    Plaintiffs seek damages in excess of $75,000 for this Count.

**XIV.**

**REQUEST FOR RELIEF**

WHEREFORE Plaintiffs pray for the follow request relief:

a.    Declaratory judgment that Defendants violated federal law beyond Rule 751;

b.    Injunction barring Defendants from Plaintiffs' lives and Oklahoma;

c.    Compensatory damages in excess of $75,000 for each count to include plaintiffs' lost wages, stolen retirement saving, past present & future medical , lost of life expectancy, lost chance of survival, medical and emotional harm;

d.    Treble damages under 15 U.S.C. § 15 and 18 U.S.C. § 1964©;

e.    Punitive damages;

f.    Fees and costs under 42 U.S.C. §§ 12205, 1988, 15 U.S.C. § 15, and 18 U.S.C. § 1964©;

g.    And for such further relief as this Court deems just and proper.

Respectfully submitted,

LOWERY WILKINSON LOWERY, LLC

*Ronald D. Wilkinson*

Ronald D. Wilkinson, OBA 15157
505 North Main Street, Suite 123
Muskogee, Oklahoma 74401
(918) 361-9652
RonW@lowerywilkinsonlowery.com