**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| **LOWERY WILKINSON LOWERY, LLC,** *et al.*, | |
| **Plaintiffs,** | |
| **v.** | **Case No. 25-CV-22-RAW** |
| **STATE OF ILLINOIS,** *et al.*, | |
| **Defendants.** | |

**OMNIBUS ORDER**

Before the Court are the Plaintiffs' Motion for Recusal of Judge White for Cause [Dkt. No. 137], Motion to Dismiss by the State of Illinois [Dkt. No. 111], Motion to Dismiss Amended Complaint by St. Clair County, Illinois [Dkt. No. 109], and Motion for Sanctions and Brief in Support by State of Illinois. [Dkt. No. 166].

## I.    PROCEDURAL HISTORY AND BACKGROUND

The present case arose out of bar disciplinary proceeding in the State of Illinois in 2024 pertaining to an attorney, Margaret Lowery, who is licensed in Oklahoma and was previously licensed in Illinois ("Ms. Lowery"). Ronald Wilkinson is Ms. Lowery's law partner and appears from the record to have participated to some degree in the bar proceedings involving Ms. Lowery in Illinois ("Mr. Wilkinson").[1] Following the Illinois bar proceedings, the Plaintiffs embarked on a crusade against the State of Illinois, the Illinois Attorney Registration and Disciplinary Commission ("ARDC"), X Corp (formerly Twitter, Inc.), various lawyers and law firms,  the

---

[1] Both Mr. Wilkinson and Ms. Lowery are named plaintiffs in the present case and both individuals have entered appearances as attorneys claiming to represent each other and their law firm Lowery Wilkinson Lowery, LLC.

Illinois Chief Judge for St. Clair County, Andrew Gleeson ("Judge Gleeson"), various individual officials of the state of Illinois, including Governor J.B. Pritzker, and other employees of the Illinois Supreme Court and the ARDC.

Plaintiffs brought a version of the same case twice before in the United States District Court for the Northern District of Oklahoma. *See Lowery* v. *Gleeson et. al.*, N.D. OK. 24-cv-204 Dkt. No. 9 ("*Lowery I*") and *Ronald D. Wilkinson* v. *Peter Rotskoff, et al*, No. 24-cv-314 (N.D. Okla.) ("*Lowery II*"). While the two cases had different named plaintiffs, the facts alleged, the relief sought, and the legal arguments were the same in both cases. Plaintiffs requested that the court interfere in the State of Illinois bar disciplinary proceedings, arguing that the process was illegal retaliation that violates the ADA, the Hobbs Act, and various other federal laws. Ms. Lowery claims that the proceedings caused her to develop health problems such as septic shock and permanent organ damage.[2] Throughout all the cases in federal court, including the present case, the Plaintiffs repeated a pattern of filing numerous frivolous pleadings accompanied by voluminous often irrelevant exhibits, exhibiting unprofessional behavior, and burdening the other litigants and the court with unreasonable conduct and baseless claims. Plaintiffs also sought the recusal of Chief United States District Judge Ronald A. White in the present case. The record clearly shows that recusal is not proper, the present case should be dismissed for lack of personal jurisdiction, and that sanctions should be imposed for vexatiously multiplying litigation.

*1. Lowery I and Lowery II*

Plaintiffs filed a version of the instant proceedings twice in the United States District Court for the Northern District of Oklahoma. Because the Plaintiffs asserted the same claims engaged in the

---

[2] The Plaintiffs also filed a related lawsuit against X Corp. in the Western District of Texas claiming that the ARDC fabricated the tweets that led to Ms. Lowery's bar discipline. That case was dismissed pursuant to Fed. R. Civ. P. 12 on April 30, 2025. Case 1:24-cv-01228- RP.

same conduct in the first two cases, the said prior cases form the necessary backdrop against which the present case must be understood.[3] In *Lowery I*, the plaintiffs initiated the case by filing a motion for Temporary Restraining Order ("TRO") requesting that the court halt the ARDC proceeding. United States District Judge Hill denied the motion for lack of personal jurisdiction (N.D. OK. 24-cv-204 Dkt. No. 9 "*Lowery I*"). After the denial of the TRO plaintiffs filed a complaint requesting that the court take control of the ARDC and accusing the ARDC and other defendants of violating the ADA, intimidation, sexual harassment, racketeering, violations of equal protection, right to contract, and "state pendant claims." *Lowery* v. *Gleeson*, et al., 2024 WL 5358071 (N.D.Okla.). Plaintiffs further allege that the ARDC caused Ms. Lowery to develop sepsis, pancreatitis, hydronephrosis, and coronary syndrome. *Lowery I*, 2024 WL 5358071 at Dkt. No. 10 P. 20, ¶ 38.

Throughout the *Lowery I* proceedings, the plaintiffs made a series of dubious factual and legal arguments and repeatedly disregarded rulings from Judge Hill. Plaintiffs also initiated a considerable amount of motion practice during *Lowery I* including but not limited to, filing a second Motion for Temporary Restraining Order asserting the same arguments as the first [*Lowery I*, Dkt. No. 16], frivolous Motions for Sanctions [*Lowery I*, Dkt. Nos.18 and 65], Motions for Discovery [*Lowery I,* Dkt. No. 35], filing several deposition notices issued after the motion for pre rule 12 discovery was denied [*Lowery I,* Dkt. Nos. 97, 98, 105, 106, and 107] and a Motion to Transfer the case to Sioux Falls, SD [*Lowery I*, Dkt. No. 116]. The problematic conduct in these filings ranges in severity from simply offering irrelevant material to engaging in flagrant misconduct. For instance, in support of their Motion to Transfer, the plaintiffs attached a clearly irrelevant affidavit demonstrating the vaccination status of a dog. While other pleadings in *Lowery*

---

[3] Additionally, the court may take judicial notice of publicly filed court records for the purpose of regulating the activities of abusive litigants. *Kyte* v. *Denver Health*, No. 23-1199, 2023 WL 4742407, at *1 (10th Cir. July 25, 2023).

*I* contain more antagonistic transgressions such as the plaintiffs claim that the Oklahoma Supreme Court Justices submitted an artificial intelligence generated pleading, are "mafia dons", advocate "Death to all Jews", and support the idea that "Hitler should gas them all". [*Lowery I*, Dkt. No. 51 at ¶¶ 1-10].

Plaintiffs also demonstrated clear contempt for the court and made incendiary accusations against the District Judge and the Magistrate Judge presiding over the case. Specifically, after their improper deposition notices were quashed by United States Magistrate Judge Jodi Jayne [*Lowery I*, Dkt. No. 118], plaintiffs falsely accused Magistrate Judge Jayne of having a conflict of interest and accused her husband of unprofessional conduct [*Lowery I*, Dkt. No. 120]. Additionally, plaintiffs repeatedly filed briefs in excess of page limit requirements set by local rules despite Judge Hill denying their requests to do so. [*See Lowery I*, Dkt. No. 90]. Eventually, Judge Hill entered a show cause order that set various of the plaintiffs numerous pleadings for hearing and expressed concern about Mr. Wilkinson's conduct in the case. [*Lowery I*, Dkt. No. 64.] The plaintiffs voluntarily dismissed the action the business day before the hearing [*Lowery I*, Dkt. No. 122.] In the proceedings before this court, Ms. Lowery now baselessly claims that Judge Hill had an undisclosed conflict and improperly denied her TRO. [See, *Lowery III* Dkt. Nos. 28 &121 ¶ 18].

The plaintiffs second bite at the apple in the Northern District was shorter lived but asserted the same claims and arguments as the first case. This time plaintiffs filed a complaint against the ARDC and two Illinois judges but chose to emphasize Mr. Wilkinsons claims. *See Ronald D. Wilkinson* v. *Peter Rotskoff*, et al, No. 24-cv-314 (N.D. Okla.) ("*Lowery II*"). Nevertheless, the complaint in this case recites the same dubious factual and legal arguments from *Lowery I* and seeks to have the court interfere in the regulatory activities of the ARDC, award monetary

damages, and declare the ARDC unconstitutional [*Lowery II*, Dkt. No. 2].  In the pleadings Plaintiffs again make various concerning statements such as claiming falsely that Mr. Wilkinson was threatened in Judge Hill's court, that the defendants conspired to obstruct justice, and plaintiffs submit an affidavit from Mr. Wilkinson claiming that he witnessed ARDC officials attempting to murder Ms. Lowery. *Id*.  Again, plaintiffs voluntarily dismissed the case on September 15, 2024. [*Lowery II*, Dkt. No. 27.]

### 2. *Lowery III*

Plaintiffs filed their complaint in this court on January 22, 2025. [*Lowery III*, Dkt. No. 2.] It names three plaintiffs, Ms. Lowery, Mr. Wilkinson, and their law firm Lowery Wilkinson Lowery, L.L.C. (together, the "Plaintiffs"). *Id.* While the complaint is difficult to follow, the court interprets it as advocating for two outcomes: (1) for the court to interfere with activities of the state bar disciplinary proceedings in Illinois and (2) for money damages arising out of the bar discipline proceedings that Plaintiff Lowery alleges caused her to suffer from various medical conditions. *See Lowery III*, Dkt. No. 2. The complaint alleges that the X posts that led to Ms. Lowery's bar discipline in Illinois were forged. Additionally, Ms. Lowery repeatedly accuses Illinois Judge Andrew Gleeson of sexual assault, asserts that she has a congressional declaration of disability, and claims that Ms. Lowery has honorary tribal membership that when combined with her disability declaration gives this court jurisdiction under *McGirt* v. *Oklahoma.* Plaintiffs request three million in actual damages and fifty million in punitive damages and further ask this court to declare the ARDC unconstitutional. Dkt. No. 2.

#### a. Initial Motion Practice

Shortly after filing the complaint, Plaintiffs moved for a Temporary Restraining Order, just as in *Lowery I* and *Lowery II*, and a permanent injunction requesting that this court take control of

the Illinois ARDC proceedings. Dkt. No. 11. Before the court could even rule on the motion, Plaintiff filed additional motions seeking the same relief. *See, Lowery III*, Dkt. No. 17, Dkt. No. 43, Dkt. No. 45, and Dkt. No. 47. The court denied the motions in part citing Judge Hill's denial of the same issue and declining to certify the question given the need to brief threshold issues on jurisdiction and abstention. Dkt. No.48.[4]

Prior to the court's ruling, Plaintiffs had already filed motions seeking to prevent the Attorney General of Oklahoma from representing the State of Illinois arguing without evidence that the Attorney General of Oklahoma is involved in a RICO conspiracy with Illinois. Dkt. No. 20 at paragraph 4-5 and Dkt. No. 24. Plaintiffs then filed a series of motions all seeking to stay the case arguing again that this court should interfere with ARDC proceedings and claiming that the United States Attorney for the State of Illinois plans to intervene. *Lowery III*, Dkt. Nos. 28, 29, 30, and 36. Then, apparently undeterred by this court's denial of the first three motions for TRO, the Plaintiffs filed a Fourth Application for Emergency TRO. *Lowery III*, Dkt. No. 50. This motion reiterated the same arguments presented in previous briefing. *Id*. Once again without leave of court, Plaintiffs filed an addendum to their fourth motion for TRO reiterating the same arguments that were previously presented four times. *Lowery III*, Dkt. No. 57.

### *b.* The Stay and Violations of the Stay

Given the voluminous number of frivolous and duplicative motions it was being forced to respond to, St. Clair County moved for a stay of all deadlines not relating to the Rule 12 (b) motions that were now pending. *Lowery III*, Dkt. No. 79. Over Plaintiffs' objection, this court granted the request and stayed the case to allow the court to thoughtfully consider the numerous pleadings

---

[4] Notably the amendments and supplemental briefs for temporary restraining orders were filed in violation of Local Civil Rule 7.1 (e) which requires litigants to obtain leave of court before filing amendments or supplemental briefing.

before it. *Lowery III*, Dkt. No. 80.  Undeterred by the court ordered stay, the Plaintiffs' immediately filed a motion to reconsider the stay and amended motion for discovery both without leave of court. *Lowery III*, Dkt. No 82 & 84. In response to both Defendants' Motions to Dismiss, Plaintiffs filed a motion to amend the complaint that this court granted. *Lowery III*, Dkt. No. 91 and 92. The Amended Complaint pleads the same claims asserted in the initial complaint. Plaintiffs allege that the ARDC is unconstitutional, that this court should direct ARDC proceedings, and that the ARDC fabricated the X posts that led to the Plaintiffs' Illinois bar discipline. *Lowery III*, Dkt. No. 96. Plaintiff Lowery also alleges she is entitled to three million in damages from lost business and fifty million in medical damages from organ damage necessitating organ transplant. *Id.* Again, undeterred by the stay that was still in place, Plaintiffs filed more motions seeking to lift the stay, open discovery, and a frivolous exhibit that pertained to the vaccination status of a dog, claiming that this somehow demonstrated that the Illinois government was targeting Plaintiff Lowery. *Lowery III*, Dkt. 98.

### *c.* **Plaintiffs Refusal to Appear in Court**

Given the numerous violations of local rules and the stay and Plaintiffs' repeated scandalous and impertinent filings, this court sua sponte issued a show cause order requesting that the parties appear for a hearing on May 21, 2025 and explain why the numerous instances of misconduct did not warrant sanctions. *See Lowery III*, Dkt. No. 101, Issued April 17, 2025. In response Plaintiffs began filing motions in violation of the stay, again without leave. These motions contained frivolous legal arguments, requested recusal, accused the court of having an improper relationship with defense counsel, accused the court maliciously issuing the order near in time to the anniversary of the Oklahoma City bombing, and alleged the court was afflicted with "Gender Based Munchausen Syndrome". *Lowery III*, Dkt. No. 102.

In an effort to avoid the hearing, the Plaintiffs filed a motion to continue asserting that Plaintiff Wilkinson was lead counsel in a criminal trial in a federal court in Illinois scheduled for May 22. *Lowery III*, Dkt. No 103. Pursuant to the Tenth Circuit General Order for Resolving Conflicts filed May 21, 1998, the court denied the motion without prejudice requesting the Plaintiffs provide information about the case such as the case number and the name of the presiding judge.  Plaintiffs declined to provide this information, claiming that the case was a highly confidential "qui tam like" proceeding with a protective order so strict that even providing the name of the judge would be impermissible. *Lowery III*, Dkt. No. 110.[5]

Apparently forgetting about their supposed criminal trial, Plaintiffs changed course and claimed they could not attend the hearing because the court's order was "vague" in a way that somehow violated the ADA and insisted that because the court refused to provide sufficient ADA accommodations attending the hearing posed serious health risks. *Lowery III*, Dkt. No. 126, 127, 132.[6] Plaintiffs additionally requested recusal and began escalating the severity of their accusations against the court, absurdly claiming that an individual from the Court Clerk's office called and threatened to send United States Marshals to arrest the Plaintiffs and force their appearance at the hearing. *Lowery III*, Dkt. No. 137.  *Lowery III*, Dkt. No. 132. The court set all pending motions to be heard at the hearing on May 21.

Prior the hearing, the court allowed Defendants a limited opportunity to file a response to Plaintiffs numerous filings, given that they had been prevented from doing so due to their compliance with the court ordered stay. *See Lowery III*, Dkt. No. 136. In their response, St. Clair

---

[5] Pacer research reveals that the only federal criminal case Mr. Wilkinson is entered in is a solicitation case that was scheduled for trial May 12 and does not appear to involve any protective order. *United States* v. *Albright*, 4: 25-cr-400020JPG-1.

[6] The ADA does not apply to the federal courts.  Pursuant to 42 U.S.C. 12132, Title II of the ADA, the Act applies to "any department, agency, special purpose district, or other instrumentality of a *state or local* government" (emphasis added). See *Isle Royale Boaters Ass'n* v. *Norton*, W.D.Mich.2001, 154 F.Supp.2d 1098, affirmed 330 F.3d 777.

rebutted claims that their counsel was conflicted or had an improper relationship with the court, and moved for sanctions, providing a detailed account of all of the misconduct by the Plaintiffs throughout the case. *See Lowery III*, Dkt No. 142.  On May 12, Plaintiffs filed a Notice of Non-Appearance at May 21, 2025 Hearing, stating that neither Mr. Wilkinson nor Ms. Lowery would attend the hearing because the court had yet to rule on their various ADA motions, which were among the motions set for hearing. *Lowery III*, Dkt. No. 132. The Plaintiffs did not request leave to be excused from the hearing, but instead simply stated that they would not come to a hearing that was set with over thirty days' notice due to Ms. Lowery's inability perform in "high-pressure, tight deadlines, or impromptu settings". *Id*.  It also states that Mr. Wilkinson will not appear because he is "not a litigator" and relies on Ms. Lowery's strategic mind. This again makes clear that Mr. Wilkinson's supposed highly confidential qui tam like case was likely a fabrication.

The morning of the show cause hearing, May 21 at 7:55 a.m. Plaintiff filed a motion dismissing defendant St. Clair County without prejudice. Dkt. No. 151. Plaintiffs, sticking to their word, did not appear at the hearing but filed a motion as the hearing commenced claiming that they were prepared to "appear remotely" despite having never previously made the request for a remote appearance. *Lowery III*, Dkt. No. 152. The court denied the motion.

During the hearing the court expressed that it had important and serious questions regarding the Plaintiffs arguments about the ADA, *McGirt*, personal jurisdiction. Additionally, the court noted that several of the cases cited in Plaintiffs' filings do not appear to support the proposition for which they are offered. Plaintiffs were not present to respond. The court also expressed concern about their claimed criminal trial in Illinois. Because the Plaintiffs chose not to appear, the court's questions went unanswered.

After failing to appear at the hearing, Plaintiffs falsely claimed that this court prevented them from appearing, suggesting they were physically prevented from entering the court room and that attending the hearing posed significant risks to their physical health. They also falsely asserted that a secret hearing was held the day before on May 20th. Plaintiffs then attempted to appeal to the Tenth Circuit for a writ of mandamus which the Circuit Court denied prompting the Plaintiffs to again appeal the minutes of the hearing claiming that they constituted a final order. After the court denied their motion as premature, Plaintiffs filed an interlocutory appeal. Many of the same scandalous and false claims that appear in the filings to this court appear in the appellate filings. *Lowery III*, Dkt. No. 144 and 160. More recently, the Defendants, St. Clair Illinois and the State of Illinois, have moved for Attorney's Fees and Costs as well as Sanctions to recoup the costs associated with responding to the Plaintiffs' unreasonable and voluminous filings. *See Lowery III*, Dkt. No. 166 and Dkt. No. 167.

## II.    Recusal

Plaintiffs moved for the recusal of Chief United States District Judge Ronald A. White from this case arguing that he is biased, prejudiced, and cannot be impartial. Dkt. No 137.  Because it would be improper for this court to issue any ruling on a case from which he should be recused, this issue must be addressed first. Pursuant to 28 U.S.C. § 455, a judge should recuse himself from "any proceeding in which his impartiality might reasonably be questioned" or "[w]here he has a personal bias or prejudice concerning a party." 28 U.S.C. § 455(a), (b)(1). "Section 455 establishes 'an objective standard: disqualification is appropriate only where the reasonable person, were he to know all the circumstances, would harbor doubts about the judge's impartiality.'" *United States* v. *Mobley*, 971 F.3d 1187, 1205 (10th Cir. 2020).  Though judges "have a strong duty to recuse when appropriate," they also have "a strong duty to sit," and § 455 must not be so broadly

construed as to make recusal mandated "upon the merest unsubstantiated suggestion of personal bias or prejudice[7]." *Id*. at 1205. Additionally pursuant to 28 U.S.C. § 144 a party who believes that judge is biased or prejudiced against him is required to file a "timely and sufficient affidavit that the judge before whom the matter is pending has a personal bias or prejudice either against him or in favor of any adverse party. … It shall be accompanied by a certificate of counsel of record stating that it is made in good faith."

The alleged personal bias of a judge does not provide a legitimate basis for recusal when the conduct that formed basis for the motion to recuse occurs within the course of judicial proceedings (such judicial rulings, and ordinary admonishments to counsel) and relied only on knowledge acquired within the proceedings. *Liteky* v. *United States*, 510 U.S. 540, 555, 114 S. Ct. 1147, 1157, 127 L. Ed. 2d 474 (1994). Opinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior proceedings, do not constitute a basis for a bias or partiality motion unless they display a "deep-seated favoritism or antagonism that would make fair judgment impossible." *Id*. However, such opinions may support a finding of bias if they are derived from an extrajudicial source. *Id*.

Even judicial remarks that are critical, disapproving, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge. The United States Supreme Court has found that the mere fact that a judge may form negative opinions about one of the parties based on their conduct before the court does not mean that the judge is required to recuse himself. *See, Liteky*, 510 U.S. at 550–51. ("The judge who presides at a trial may, upon completion of the evidence, be exceedingly ill disposed towards [a party]. … But the judge is not thereby recusable

---

[7] This duty arguably exists to prevent improper "judge shopping".

for bias or prejudice, since his knowledge and the opinion it produced were properly and necessarily acquired in the course of the proceedings.")

In the present case, Plaintiffs have neither followed the procedural requirements set forth by the statute, for attorneys seeking judicial recusal nor provided any evidence of conduct that would necessitate recusal. First, the court notes that Plaintiffs failed to file an affidavit certifying that their claims are made in good faith as required by 28 U.S.C. § 144. Furthermore, the only evidence that Plaintiffs identify in support of the alleged bias consists of conduct that occurs within the course of judicial proceedings that was informed by knowledge acquired within said proceedings, not from an outside source. For instance, Plaintiffs suggest ordinary judicial rulings, such as the rapid minute orders and show cause order suggest bias, but issuing minutes and orders to effectively manage the court's docket is clearly conduct that is properly within the course of judicial proceedings. Dkt. No. 137.

Plaintiffs make several accusations that the court's opinions are based on extrajudicial information, but they are all unsubstantiated. For instance, Plaintiffs claim that Counsel for St. Clair County, Bill Leach, had ex parte communications with the court, but their purported evidence of this communication does not support the claim. Plaintiffs suggest that an email from Mr. Leach, where he speculates that he is "guessing" that the judge is getting pretty fed up with the plaintiff, somehow implies ex parte communication occurred. *Lowery III*, Dkt. No. 137. It is unreasonable to infer that one attorney speculating about the mindset of the judge indicates that there have been improper communications. Plaintiffs also suggest that ex parte communication is evidenced by the fact that Mr. Leach refused to waive formal service of process, but this is a nonsensical argument. Furthermore, as discussed at the hearing and in Mr. Leach's briefing [Dkt. No. 142], Mr. Leach

has no personal relationship with Judge White and the two do not recall even having met prior to the hearing on May 21, 2025.

Additionally Plaintiffs make several more unsupported accusations that they claim demonstrate bias. For instance Ms. Lowery alleges that her former attorney James Conrady claimed to have some personal relationship with Judge White, but this claim is entirely unsubstantiated and irrelevant. Even if Mr. Conrady made these claims, and there is no evidence that he did, a third party claiming for his own benefit to have a relationship with a federal judge without evidence does not support a finding of judicial bias. Additionally, Plaintiffs falsely state that someone from the court clerk's office for the United States District Court for the Eastern District of Oklahoma called her threatening to send United States Marshals to collect her and Mr. Wilkinson. This claim is preposterous and demonstrates that the motion was not submitted in good faith.

Finally, the record does not support a finding of a high degree of favoritism or antagonism that might make fair judgment impossible. The court routinely granted reasonable requests made by the Plaintiffs such as motions to exceed prescribed page limitations and motions for additional time to respond, and their motion for leave to amend. *See* Dkt. No. 129. Thus, Plaintiffs have not asserted any legitimate basis that recusal would be warranted and the motion to recuse *Lowery III,* Dkt. No. 137 is hereby DENIED.

## III.    Dismissal

Defendants State of Illinois and St. Clair County have both moved for dismissal citing among other arguments, threshold arguments regarding service and personal jurisdiction. *See Lowery III*, Dkt. No. 111 and Dkt. No. 109.  In the Amended Compliant, there are nine named Defendants who have not yet been served. Furthermore, while Plaintiffs dismissed St. Clair County without

prejudice, the County still urges the court to dismiss the case with prejudice. *Lowery III*, Dkt. No. 167 Report of Costs.

### 1. The nine defendants Plaintiff has not served should be dismissed

Pursuant to Fed. R. Civ. P. 4 (m), a plaintiff is responsible for serving the defendant with a summons and copy of the complaint within ninety (90) days after filing the complaint. If service has not been completed within that period, the court can dismiss the case without prejudice or order that service be completed within a certain time. *See* Fed.R.Civ.P. 4(m). If the party can show good cause why service has not been made, the court must extend the time for service. *Constien* v. *United States*, 628 F.3d 1207, 1216 (10th Cir. 2010). The court has the option to dismiss the action or quash the process without dismissal if the plaintiff fails to meet his burden. *See, Pell* v. *Azar Nut Co., Inc.*, 711 F.2d 949, 950 n. 2 (10th Cir. 1983). "In the absence of valid service of process, proceedings against a party are void." *Ganpat* v. *E. Pac. Shipping, PTE. LTD.*, 434 F. Supp. 3d 441, 447 (E.D. La. 2020). The party asserting valid service bears the burden of showing that service is proper by a preponderance of the evidence.

The nine unserved defendants named in Plaintiffs' suit should be dismissed as the time for service has run. There are numerous individuals named in the Complaint and in the Amended Complaint who have not been served or entered an appearance in the case: Joy Cunningham, Peter Rotskoff, Rachel Miller, Jose Lopez, Martha Ferdinand, Elizabeth Delheimer, Lea Gutierrez, Jerome Larkin, and Amy Grant. The initial complaint was filed on January 22, 2025, meaning the time to serve the defendants in the instant case ran on April 22, 2025. For the purposes of personal jurisdiction and proper service, the filing of an amended complaint does not extend the ninety (90) day deadline. Furthermore, Plaintiffs having failed to appear at the hearing, have provided no explanation as to why these defendants were not served or why this court should extend the time

for service. Accordingly, defendants Joy Cunningham, Peter Rotskoff, Rachel Miller, Jose Lopez, Martha Ferdinand, Elizabeth Delheimer, Lea Gutierrez, Jerome Larkin, and Amy Grant are hereby DISMISSED.

### 2. Personal Jurisdiction

Plaintiffs bear the burden of demonstrating that this court has personal jurisdiction over the defendants under the Oklahoma long arm statute and the United States Constitution. Defendant State of Illinois moved to dismiss, arguing in part that Plaintiffs failed to show that personal jurisdiction was proper. Dkt. No. 111 and Dkt. No. 113.

With respect to personal jurisdiction, "the Oklahoma long-arm statute allows jurisdiction to the fullest extent permitted by constitutional due process, so courts can proceed straight to the constitutional issue." *Dental Dynamics, LLC* v. *Jolly Dental Grp., LLC*, 946 F.3d 1223, 1229 (10th Cir. 2020); *see also* Okla. Stat. tit. 12, § 2004(F)). "To exercise jurisdiction in harmony with due process, defendants must have minimum contacts with the forum state, such that having to defend a lawsuit there would not offend traditional notions of fair play and substantial justice." *Shrader* v. *Biddinger*, 633 F.3d 1235, 1239 (10th Cir. 2011) (cleaned up). "Minimum contacts may give way to specific or general jurisdiction." *Dudnikov* v. *Chalk & Vermilion Fine Arts, Inc*., 514 F.3d 1063, 1069–70 (10th Cir.2008). "At the pleading stage, a plaintiff need only establish a prima facie showing of personal jurisdiction." *Id*. (citing *Nat'l Union Fire Ins. Co. of Pittsburgh, PA* v. *Kozeny*, 19 F. App'x 815, 822 (10th Cir. 2001)). General jurisdiction over a non resident defendant may be established by showing a defendant's "continuous and systematic" contacts with the forum state. *Int'l Shoe Co.* v. *Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945).

Specific jurisdiction is established through a two-part minimum contacts inquiry: a plaintiff must show that the out- of- state defendant "purposefully directed" its activities at residents in the

forum state and second that the plaintiff's injuries arise out of these activities. *Burger King Corp.* v. *Rudzewicz*, 471 U.S. 462, 472, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985). In applying the minimum contacts test, the Tenth Circuit delineated three "purposeful direction" factors. *Dudnikov*, 514 F.3d at 1072. First, "(a) an intentional action", that was "(b) expressly aimed at the forum state with (c) knowledge that the brunt of the injury would be felt in the forum." *Shrader* v. *Biddinger*, 633 F.3d 1235, 1240 (10th Cir. 2011) quoting *Dudnikov*, 514 F.3d at 1072.

In the present case, the court lacks personal jurisdiction over the State of Illinois.[8] In the Amended Complaint [Dkt. No. 96], Plaintiffs assert that "Personal jurisdiction exists over Defendant under Oklahoma's long arm statute, 12 Okla. Stat. §2004(F), due to their purposeful acts directed into Oklahoma, including filing 22 false bar complaints … with the Oklahoma Bar Association… establishing minimum contacts under *World Wide Volkwagen Corp*. v. *Woodson*, 444 U.S. 286 (1980)." *Id.* Plaintiffs further argue that jurisdiction is proper under the *Calder* effects test because the ARDC submitted complaints about the Plaintiffs to the Oklahoma Bar Association, sent invoices to Plaintiff Lowery in Oklahoma, and mailed and published fabricated X posts about Plaintiff Lowery. *Id* at p. 4 ¶4-5 citing *Calder* v. *Jones*, 465 U.S. 783, 790, 104 S.Ct. 1482, 79 L.Ed.2d 804 (1984).

Plaintiffs failed to show sufficient minimum contacts between Oklahoma and the Defendant State of Illinois for this court to exercise personal jurisdiction. First, the court does not have general jurisdiction over the State of Illinois. Even taking the Plaintiffs' allegations as true, submitting bar complaints against an Oklahoma attorney, sending invoices, and posting to X are not continuous

---

[8] The court notes that the Plaintiff has not filed a response to the State of Illinois' Motion to Dismiss [Dkt. No. 111 and Brief at Dkt. No. 113], the court granted the Plaintiff's request for an extension of time to respond [Dkt. No. 129], but the Plaintiff never filed a response

and systematic contacts with the state of Oklahoma that are so extensive that the defendants are essentially at home in the forum state. *Int'l Shoe Co.*, 326 U.S. at 316.

Specific jurisdiction is also not proper. Plaintiffs failed to show that Defendants took actions that were "purposefully directed" at Oklahoma for the purposes of specific jurisdiction. In determining whether actions were purposefully directed toward Oklahoma for the purposes of specific jurisdiction, the court must consider the quantity and quality of the contacts. *OMI Holdings Inc.* v. *Royal Ins. Co. of Canada*, 149 F.3d 1086, 1092 (10th Cir.1998). The Amended complaint alleges that the State of Illinois sent bar complaints about an Oklahoma attorney to the Oklahoma Bar Association, mailed invoices, and wrote tweets. Sending a bar complaint, a tweet, or an invoice is not an action "expressly aimed" aimed at the State of Oklahoma, but rather at two individuals, Ms. Lowery and Mr. Wilkinson. *See Shotton* v. *Pitkin*, No. CIV-15-0241-HE, 2015 WL 5091984, at *2 (W.D. Okla. Aug. 28, 2015) (dismissing an action for lack of personal jurisdiction on the grounds that a Connecticut company sending letters and a cease and desist order to a plaintiff company that was headquartered in Oklahoma was not "expressly aimed" at Oklahoma for the purposes of specific jurisdiction where the letters sought to address actions that occurred in Connecticut and violated Connecticut law). *See also Stroman Realty Inc.* v. *Wercinski*, 513 F.3d 476 (5th Cir. 2008) (holding that an Arizona company sending two cease and desist letters based on Arizona law to a Texas based company arising out of timeshares sold to Arizona consumers was not conduct expressly aimed at Texas for the purposes of specific jurisdiction in Texas and therefore could not form the basis for personal jurisdiction in Texas). Here, the Bar complaints and tweets all pertained to actions that occurred in Illinois and concerned violations of the Illinois rules governing attorney conduct. Thus, even though they were sent to the Oklahoma

Bar Association, these communications were not expressly aimed at Oklahoma and are not sufficient to establish minimum contacts.

Accordingly, Plaintiffs failed to carry their burden of demonstrating sufficient minimum contacts between the State of Oklahoma and the Defendant State of Illinois and this Court does not have personal jurisdiction over the Defendant under the Oklahoma long arm statute. *Dental Dynamics, LLC* v. *Jolly Dental Grp., LLC*, 946 F.3d 1223, 1229 (10th Cir. 2020); see also Okla. Stat. tit. 12 § 2004(F)). Therefore, Defendant State of Illinois Motion to Dismiss Plaintiffs' Amended Complaint [Docket No. 111] is hereby GRANTED.

Notably, the argument rejected by the court here is the exact same argument for personal jurisdiction that was already rejected by Judge Sara Hill in the United States District Court for the Northern District of Oklahoma. In *Lowery I*, Plaintiffs alleged that minimum contacts were established based on the bar complaints sent by the ARDC and Judge Andrew Gleeson to the Oklahoma bar association. *Lowery* v. *Gleeson, Rotskoff, Nester et al.*, Defendants., 2024 WL 5358071 (N.D.Okla.). At no point in any of the voluminous pleadings in this matter do the Plaintiffs allege facts that are meaningfully distinguishable from *Lowery I* or *Lowery II*, nor do they explain how their jurisdictional arguments differ between the cases. Plaintiffs simply brought the same case based on the facts and arguments for personal jurisdiction, knowing that it had already been rejected by another federal court in Oklahoma.

### IV.    Sanctions

This court sua sponte issued an order for Plaintiffs to show cause why sanctions should not be imposed pursuant to Rule 11, 28 U.S.C. § 1927, and the court's inherent powers. Defendant State of Illinois has also moved for sanctions pursuant to 28 U.S.C. § 1927, and the court's inherent powers for abuse of judicial process. *Lowery III*, Dkt. No. 166. A district court maintains

jurisdiction over a case and can impose sanctions even after a final judgment has been entered or the case is dismissed. *See, e.g., Griffen* v. *Oklahoma City*, 3 F.3d 336, 338, 340 (10th Cir. 1993) (remanding for consideration of a sanctions motion filed after final judgment had been entered on the merits of all claims); *Walker* v. *Health Int'l Corp.*, 845 F.3d 1148, 1155–56 (Fed. Cir. 2017). Therefore, this court may proceed with the sanctions inquiry even though the Plaintiff has dismissed Defendant St. Clair County, and the court has granted Defendant State of Illinois' Motion to Dismiss.

A court's power to impose sanctions on a party who engages in improper conduct is derived from multiple sources of authority. Rule 11 permits a court to sanction litigants who violate the federal rules in their pleadings, motions, or other written submissions to the court. Pursuant to 28 U.S.C. § 1927 a court may sanction an attorney for unreasonably extending or multiplying the proceedings in a case. Additionally, the court has the inherent authority to sanction parties who act in bad faith or willfully disregard a court's orders. When determining whether sanctions are appropriate, a court may also take judicial notice of publicly filed court records for the purpose of regulating the activities of abusive litigants. *Kyte* v. *Denver Health*, No. 23-1199, 2023 WL 4742407, at *1 (10th Cir. July 25, 2023). Thus, the court takes judicial notice of the proceedings in the Northern District of Oklahoma, for the purposes of assessing whether Plaintiffs conduct in the present case is sanctionable. Furthermore, the court also takes notice of the Plaintiffs petition for a writ of Mandamus in the Supreme Court of Oklahoma that sought the same relief requested in their federal cases. *Lowery Wilkinson Lowery, LLC et al*. v. *Oklahoma Bar Association et al*., 2025 OK MA-122831.

**A. Sanctions Pursuant to Rule 11**

Rule 11(a) of the Federal Rules of Civil Procedure provides that a party who presents a paper

certifies that to the best of their knowledge, information, and belief it:

> (1) is not being presented for any improper purpose such as **to harass**, cause
> unnecessary delay, or needlessly increase the costs of litigation;
> (2) the claims, defenses, and other contentions are warranted by existing law or by
> a nonfrivolous argument for extending, modifying, or reversing existing law or for
> establishing a new law;
> (3) the factual contentions have evidentiary support or… will likely have
> evidentiary support after a reasonable opportunity for further investigation.

Fed. R. Civ. P. 11 (emphasis added).

Pursuant to Rule 11(c)(3), the court may order an attorney, law firm, or party to show cause

why conduct specifically described in the order has not violated Rule 11 (b). Sanctions under Rule

11 "must be limited to what suffices to deter repetition of the conduct." An order imposing a

sanction must describe the sanctioned conduct and explain the basis for the sanction. Fed. R. Civ.

P. 11(c)(6). Sanctions may also be imposed when a litigant acts in bad faith in instituting or

conducting litigation. A court may impose sanctions for the entire conduct of the litigation when

a party's actions are tainted by a failure to make reasonable inquiry into the facts underlying their

claims or to make nonfrivolous arguments on the law, or where their litigation is pursued for an

improper purpose. *See White* v. *Gen. Motors Corp.*, 908 F.2d 675, 680–81 (10th Cir. 1990); *See

also Lupo* v. *R. Rowland & Co.*, 857 F.2d 482, 485–86 (8th Cir.1988) (affirming district court

award of sanctions based on "bulk of filings" and "conduct of litigation".)

**B. Sanctions Pursuant to 28 U.S.C. § 1927**

The United States Code provides as follows with respect to sanctions:

> Any attorney or other person admitted to conduct cases in any court of the United
> States or any Territory thereof who so multiplies the proceedings in any case
> unreasonably and vexatiously may be required by the court to satisfy personally the

> excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

28 U.S.C. § 1927

Attorney conduct is sanctionable when it, viewed objectively, "manifests either intentional or reckless disregard of the attorney's duties to the Court". *Hamilton* v. *Boise Cascade Exp.*, 519 F.3d 1197, 1201–02 (10th Cir. 2008) citing *Braley* v. *Campbell*, 832 F.2d 1504, 1512 (10th Cir.1987) (en banc). An attorney's subjective motivations are irrelevant; "any conduct that, viewed objectively, manifests either intentional or reckless disregard of the attorney's duties to the court is sanctionable." *Baca* v. *Berry*, 806 F.3d 1262, 1268 (10th Cir. 2015) (brackets and internal quotation marks omitted). An attorney is expected to exercise judgment, and must "regularly re-evaluate the merits" of claims and "avoid prolonging meritless claims." *Steinert* v. *Winn Grp., Inc.*, 440 F.3d 1214, 1224 (10th Cir. 2006). Accordingly, "[c]ontinuing to pursue claims after a reasonable attorney would realize they lacked merit can warrant sanctions under § 1927." *Frey* v. *Town of Jackson*, 41 F.4th 1223, 1245 (10th Cir. 2022); see also *Baca*, 806 F.3d at 1278 ("[I]n a meritless case, protracted failure to do anything but dismiss the case ... might be sanctionable.").

### C.  Sanctions Pursuant to the Court's Inherent Power

Sanctions pursuant to a court's inherent powers are warranted when an attorney acts in subjective bad-faith. When a party abuses the judicial process, a court has the power to "fashion an appropriate sanction." *Chambers* v. *NASCO, Inc.*, 501 U.S. 32, 44–45, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991). A court may impose sanctions pursuant to its inherent authority alongside sanctions for various rule violations or for conduct that otherwise violates the federal rules, but a court is not required to consider sanctions under the federal rules before imposing sanctions pursuant to its inherent powers. *O'Rourke* v. *Dominion Voting Sys., Inc.*, No. 21-1442, 2022 WL 17588344, at *3 (10th Cir. Dec. 13, 2022). For instance, in *O Rourke* the Tenth Circuit upheld a

district court imposition of sanctions pursuant to the court's inherent authority when the attorneys repeatedly pursued claims where there was "no good faith basis for believing or asserting that Plaintiffs had standing" or that personal jurisdiction was proper. *O'Rourke* v. *Dominion Voting Sys., Inc*., No. 21-1442, 2022 WL 17588344, at *3 (10th Cir. Dec. 13, 2022) citing *Collins* v. *Daniels*, 916 F.3d 1302, 1321 (10th Cir. 2019) (upholding Rule 11 sanctions where "Plaintiffs ' standing arguments ignored controlling precedent" and "Plaintiffs unreasonably attempted to distinguish" binding authorities regarding standing).

Fee shifting is an appropriate sanction when a party "acted in bad faith vexatiously, wantonly, or for oppressive reasons." *Id*. at 33, 111 S.Ct. 2123 (citing *Alyeska Pipeline Serv*., 421 U.S. at 258–59, 260, 95 S.Ct. 1612). Where "a court finds 'that fraud has been practiced upon it ... 'it may assess attorney[ ] fees against the responsible party." *Id*. at 46, 111 S.Ct. 2123. (quoting *Universal Oil Prods. Co*. v. *Root Refin. Co*., 328 U.S. 575, 580, 66 S.Ct. 1176, 90 L.Ed. 1447 (1946)). A party also invites sanctions when it "delay[s] or disrupt[s] the litigation or ... hamper[s] enforcement of a court order." *Hutto* v. *Finney*, 437 U.S. 678, 689 n.14, 98 S.Ct. 2565, 57 L.Ed.2d 522 (1978) (citing *Alyeska Pipeline Serv*., 421 U.S. at 258–59, 95 S.Ct. 1612). *Stenson* v. *Edmonds*, 86 F.4th 870, 875–76 (10th Cir. 2023).

Furthermore, in severe cases, a court may invoke its inherent authority to dismiss a case with prejudice as a sanction.  *Chavez* v. *City of Albuquerque*, 402 F.3d 1039, 1043–44 (10th Cir.2005) (*Ehrenhaus* dismissal analysis applies when district court invokes inherent power to dismiss jury verdict due to plaintiff's perjury at trial). *Ecclesiastes 9:10-11-12, Inc*. v. *LMC Holding Co*., 497 F.3d 1135, 1143 (10th Cir. 2007). The sanction of dismissal with prejudice is a "severe sanction," a measure of last resort. *Jones* v. *Thompson*, 996 F.2d 261, 265 (10th Cir.1993). A court considers whether dismissal is proper by applying the *Erhenaus* factors. *Ehrenhaus* v. *Reynolds*, 965 F.2d

916, 920 (10th Cir. 1992). Those factors are (1) "the degree of actual prejudice to the defendant" caused by the misconduct, (2) "the amount of interference with the judicial process", (3) "the culpability of the litigant", (4) "whether the court warned the [litigant] in advance that dismissal of the action would be a likely sanction for noncompliance", and (5) "the efficacy of lesser sanctions." *Id.* (quoting *Chavez,* 402 F.3d at 1044).

### D. Sanctions pursuant to 28 U.S.C. § 1927 and the court's inherent authority are warranted

Given the scope of the misconduct and the clear lack of remorse from the Plaintiffs, sanctions are appropriate. Many of the examples of misconduct explained herein violate Rule 11 in multiple ways. Most notably, almost every filing appears to be submitted for no discernible purpose other than harassing the defendants and the court. However, identifying each discrete violation of Rule 11 when there are almost innumerable examples, risks missing the forest for the trees. It is not merely the individual rule violations that make the Plaintiffs' actions sanctionable, but, more importantly, the pattern of harassment and contempt created by their repeated transgressions. This meritless case appears to have been brought for the purpose of harassing the court and the defendants, and the Plaintiffs have made the proceedings as burdensome as possible at every turn. While much of the Plaintiffs' conduct is sanctionable under Rule 11, sanctions pursuant to 28 U.S.C. § 1927 and this court's inherent authority more appropriately address misconduct that is this comprehensive. Accordingly, because the Plaintiffs filed this case frivolously, continually multiplied the proceedings, and exhibited clear contempt for the court, sanctions are warranted.

### 1. Frivolous legal arguments.

Sanctions are warranted pursuant to 28 U.S.C. §1927 and this court's inherent authority for filing the present case based on a frivolous argument for personal jurisdiction that had already been squarely rejected in previous proceedings. *Frey* v. *Town of Jackson*, 41 F.4th 1223, 1245 (10th

Cir. 2022). In *Lowery I*, United States District Judge Sarah Hill ruled that personal jurisdiction was improper because "[t]he only contacts Plaintiff alleges that the defendants had with Oklahoma involve communications to Plaintiff and the Oklahoma Bar Association about pending ARDC proceedings against her, and a statement by the ARDC chair about the impact of those proceedings on her Oklahoma bar license." *Lowery I*, No. 24-CV-204-SEH-JFJ, 2024 WL 3221716, at *4 (N.D. Okla. May 15, 2024).

In the present case, Plaintiffs name different defendants but again claim that communications with the Oklahoma Bar Association regarding Plaintiff Lowery and her pending ARDC proceedings are sufficient to create the minimum contacts necessary to subject parties in Illinois to personal jurisdiction in Oklahoma. Plaintiffs make no attempt to distinguish the personal jurisdiction arguments Judge Hill already rejected or explain why the Eastern District of Oklahoma would be distinguished from the Northern District of Oklahoma for personal jurisdiction purposes. Thus, by repeatedly submitting the same frivolous argument already adjudicated in *Lowery I* without offering any "good faith basis for believing or asserting" that personal jurisdiction was proper, Plaintiffs unreasonably multiplied the proceedings by filing the case in this court. *O'Rourke* v. *Dominion Voting Sys., Inc.*, No. 21-1442, 2022 WL 17588344, at *3 (10th Cir. Dec. 13, 2022). Therefore, sanctions are warranted for filing and continuing to pursue the instant proceedings based on a frivolous argument for personal jurisdiction.

While the personal jurisdiction argument is one of the more consequential frivolous legal arguments at issue, given that it was expressly rejected already, and goes to the propriety of this entire case, it is not the only frivolous legal argument repeatedly proposed by Plaintiffs. Multiple times, the plaintiffs attempted to raise several jurisdictional arguments under *McGirt* that are so inadequate and clearly unresearched that any reasonable attorney would know they lack merit.

Plaintiff repeatedly asserts that if this court fails to direct bar disciplinary proceedings in Illinois, that it is effectively "overturning" *McGirt* v. *Oklahoma*, 140 S.Ct. 2452 (2020), a case where the United States Supreme Court held that the entirety of the Eastern District of Oklahoma is "Indian Country" for the purposes of the Major Crimes Act. Dkt. No. 74 at ¶44. Plaintiff also claims that Judge White wrote the *McGirt* opinion (he did not), indicating that counsel has not made any attempt to research the case. *Id*. In addition, plaintiffs further allege that "the Defendants accused Plaintiff Lowery of a violation of the Major Crimes Act while on an Indian reservation land under McGirt … Therefore, if the Court wants to exercise jurisdiction under *McGirt* it would be Mandatory jurisdiction." *Lowery III*, Dkt. No. 22 at p. 5. For instance, they argue that "this court has implicitly reversed *McGirt* by refusing" to apply the *McGirt* holding to an ADA claim. *Lowery III*, Dkt. No. 74 "Motion to Reconsider TRO for Overturning McGirt" at paragraph 44. Plaintiffs also argue without any legal basis that Plaintiff Lowery's honorarium from the Cherokee or Muskogee Creek nation should be treated as the same as being an enrolled member of the tribe for the purposes of *McGirt*. *Id*. Any reasonable attorney with even a passing familiarity with the Supreme Court's holding in *McGir*t would know that these arguments lacked merit, and therefore repeatedly submitting them to this court is sanctionable. *Frey*, 41 F.4th at 1245.

This pattern of frivolously multiplying the proceedings by reiterating meritless legal arguments is further evidenced by the Plaintiffs' repeated requests for a temporary restraining order. After the court denied Plaintiffs' initial request for a temporary restraining order, Plaintiffs moved three more times for the same relief. Each time, Plaintiffs offered the same arguments despite no change to the underlying factual allegations. Baselessly repeating the same briefing for an issue that has already been ruled on is an unreasonable multiplication of the proceedings. Furthermore, Plaintiffs set extraordinarily high monetary stakes, requesting five million in actual

damages and fifty million in punitive damages, thus ensuring that the Defendants would be forced to respond no matter how frivolous the underlying claims. *O'Rourke* v. *Dominion Voting Sys., Inc.*, No. 21-1442, 2022 WL 17588344, at *3 (10th Cir. Dec. 13, 2022). Because Plaintiffs aggressively pursued multiple legal arguments without any good faith or reasonable belief that such arguments had merit, sanctions are warranted for abuse of the judicial process and for vexatiously multiplying the proceedings. *Baca* v. *Berry*, 806 F.3d 1262, 1268 (10th Cir. 2015); *Chambers* v. *NASCO, Inc.*, 501 U.S. 32, 44–45, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991).

### 2. Plaintiffs repeated misconduct demonstrates that the case was pursued in bad faith and for the purpose of harassment

The insults and comments in Plaintiffs' pleadings and their communications with counsel indicate that they are acting in bad faith and actively taking delight in the hassle the litigation is imposing on the Defendants and the court, thus further supporting the imposition of sanctions. Additionally, many of the exhibits and pleadings contain statements that are so egregious and inappropriate that they would likely warrant sanctions even if they were not provided in the context of this patently frivolous case.

First, in the Plaintiff's Application for Emergency TRO Court Access, Ms. Lowery includes as part of the pleading a fabricated picture of a news story depicting Chief United States District Judge Ronald A. White's face with the caption "FBI raids Courthouse". Dkt. No. 47 at ¶ 26. The pleading goes on to demand that this court direct the actions of the ARDC and the filing systems in the State of Illinois and implicitly threatens to publish the forged news story clip if the court fails to rule in her favor. This is not the only inappropriate document submitted to the court. Plaintiffs filed pictures of Plaintiff Lowery in a hospital gown "flipping off" the camera. *See Lowery III*, Dkt. No. 67 Exh. 1, p. 18 and p. 33. Ostensibly, the photos are submitted to "prove" that Ms. Lowery was hospitalized during a disciplinary hearing in Illinois, but they are not dated,

do not support that argument, and are clearly inappropriate pictures to submit to this court. In another instance, Plaintiffs bizarrely allege "Judge Thompson also stalked women in the Court system albeit while he used a penis pump. One can only hope that piece of medical equipment does not surface as fodder in this case." *Lowery III*, Dkt. No. 36 at 60.  There is no "Judge Thompson" associated with this case or any prior proceedings. This allegation is clearly offered as no more than a caustic but ultimately irrelevant quip from the Plaintiffs.

Additionally, throughout their pleadings Plaintiffs make numerous baseless and scandalous accusations against various parties and government officials. For instance, Plaintiffs claim that the ARDC said that "Hitler did not do enough to kill the Jews" and the "Jews should be gassed". *Lowery III*, Dkt. No. 12 at p. 5. Plaintiffs also claim without evidence that the Attorney general of Oklahoma, Gentner Drummond "permitted the Defendants to take a baseball bat and a tire iron to Plaintiff Lowery's car in South Tulsa in June causing $22,000 in damages". Dkt. No. 2 at paragraph 460. Plaintiffs accuse Defendant Rachel Miller of "Nazi like behavior" and of trying to seize Holocaust records. Dkt. No. 12 at p. 9. Plaintiffs go on to accuse this court of "Gender Based Munchausen Bias Syndrome" and claim that Judge Hill and White's "actions suggest limited federal law knowledge" *Lowery III*, Dkt. No. 102, and Dkt. No. 121 paragraph 10. Additionally, Plaintiffs frivolously accuse Judge White of "exploiting trauma" by issuing an order the "business day before the 30th anniversary of the Oklahoma City Bombing. Dkt. No. 137 at paragraph 9; and accusing Judge White of "declining judicial fitness" and "erratic conduct toward elderly, disabled, and Jewish litigants." *Id*.

In addition, on multiple occasions, Plaintiffs engaged in unprofessional taunting of counsel for St. Clair County, Mr. Leach via email and made various threats to him which show that they are both acting in bad faith. For instance, Plaintiffs threaten Mr. Leach with an FBI raid. *See Lowery*

*III*, Dkt. No. 164-5.  Then, in response to an email from Mr. Leach requesting simply that Plaintiffs send him the exhibits that were attached to a Tenth Circuit filing, Mr. Wilkinson responded by threatening to post negative things about Mr. Leach on the internet.  Stating:

> I would be more worried about the views on your bullying post. Now the whole world knows how you bully women. You made the "I find Retard" of the week award. Your firm will love you. [emoji] Or maybe we didn't. I guess you will have to find out for yourself. [another emoji] Anyway if my client wanted to make you famous it would take one click.

Dkt. No. 164-6.  The email also appears to have a photo depicting engagement with a X corp. account, presumably offered to demonstrate that Plaintiffs could publish unfavorable things about Mr. Leach to a wide audience. Threatening and taunting opposing counsel in response to routine litigation inquiries is not characteristic of attorneys who are simply pursing their claims in good faith. Plaintiffs clearly enjoyed the hassle the litigation imposed on Mr. Leach and his clients.

Furthermore, Plaintiffs repeated snide remarks and inappropriate antics are intended not just to vex and harass the Defendants and their counsel but also the court. Several examples of harassment aimed at the court include the fabricated news headline in their pleadings and the pictures of Ms. Lowery flipping off the camera, but there are also several other instances where the Plaintiffs attack the court directly. In the prior cases and in the present case, the Plaintiffs make false and scandalous accusations and even threaten presiding judges when the court does not rule in their favor. For instance, in *Lowery I*, after receiving adverse, but proper, rulings from United States District Judge Sara Hill Plaintiffs falsely accused Judge Hill of having a conflict and repeatedly in this case baselessly accused her of bias against disabled litigants. Plaintiffs also baselessly accuse Magistrate Judge Jodi Jayne and her husband of misconduct.

Plaintiffs also repeated a particularly egregious claim several times to this court and now, to the Tenth Circuit Court of Appeals, that the Court Clerk's office for the Eastern District of

Oklahoma "on May 12, 2025 at 11:30 AM CDT" called Ms. Lowery from a "blocked number" and threatened to send United States Marshals to collect her and Mr. Wilkinson if they did not appear at the hearing. *Lowery III*, Dkt. No. 139 and Dkt. No. 137. This claim is absurd on its face but was incidentally proven false when Ms. Lowery and Mr. Wilkinson failed to appear at the hearing. The Plaintiffs insistence on offering lies, snarky comments and exhibits, scandalous accusations, and taunts to opposing counsel do not serve any proper purpose and are clearly only offered in bad faith to vex and harass opposing counsel and this court.

### 3. Plaintiffs disregarded their duty to the court by willfully violating court orders

Plaintiffs repeatedly violated orders from this court, thereby delaying and multiplying the proceedings, demonstrating their lack of good faith, and further supporting the imposition of sanctions. *Hutto* v. *Finney*, 437 U.S. 678, 689 n.14, 98 S.Ct. 2565, 57 L.Ed.2d 522 (1978). For instance, the Plaintiffs submitted multiple false statements to the court in reference to their absence from the show cause hearing. First Plaintiffs stated they had a conflicting "qui tam like case" in a Federal Court in Illinois that likely does not exist. [*Lowery III*, Dkt No. 103]. In later filings Plaintiffs contradict this already dubious excuse. In their Notice of Non-Appearance [*Lowery III*, Dkt. No. 132], Plaintiffs argue that Mr. Wilkinson is incapable of appearing at in person hearings due to health reasons, which seems implausible given that he is purportedly set for trial before a court in Illinois. The notice also states that Mr. Wilkinson is "not a litigator" and cannot appear in court without Ms. Lowery. [*Lowery III*, Dkt. No. 132]. Willfully offering these obvious lies to avoid a court ordered hearing violates the Plaintiffs duties to this court as attorneys. Finally, Plaintiffs have repeatedly disregarded multiple orders from this court by filing motions in violation of the stay and refusing to comply with local rules regarding the submission of filings consisting of more than 100 pages. *See Lowery III*, Dkt. No. 126.

### 4. Due Process

Finally, the Plaintiffs have already argued that the imposition of sanctions is without due process. This is not the case. "The precise procedural protections of due process vary, depending upon the circumstances, because due process is a flexible concept unrestricted by any bright-line rules." *O'Rourke* v. *Dominion Voting Sys., Inc*., No. 21-1442, 2022 WL 17588344, at *6 (10th Cir. Dec. 13, 2022). It has long been accepted, however, that "the sanction inquiry may properly be limited to the record in most instances." *Braley*, 832 F.2d at 1515. Furthermore, Plaintiffs were provided notice of the impropriety of their conduct through the court's striking of documents filed in violation of the stay, the fact that the frivolous legal arguments they repeatedly proffered were rejected multiple times not only by this court but also by the Northern District, and counsel for Defendant detailed their misconduct throughout all three cases in Oklahoma federal court. Dkt. No. 142.

Defendant State of Illinois also moved for sanctions under § 1927 and the court's inherent authority arguing that sanctions were proper due to Plaintiffs' attempt to weaponize the Court system and multiplying the proceedings of a patently frivolous lawsuit. *Lowery III,* Dkt. No. 166 at p. 5. Plaintiffs had the opportunity to respond to these arguments in their briefing, but instead chose to reiterate their frivolous claims, state again that they were prevented from attending the hearing, and frivolously claim that the State of Illinois was acting in bad faith. *Lowery III*, Dkt. No. 173. Additionally, Plaintiffs were provided the opportunity to appear and explain why their claims were legitimate. They expressly refused to appear and instead engaged in additional sanctionable conduct by lying about conflicts and lying about the conduct of the Court Clerk for the Eastern District of Oklahoma. Plaintiffs and their counsel (they are one and the same) have been given every opportunity to explain themselves or desist from their misconduct. They have

refused. The fact that they have filed the same frivolous action multiple times and are now filing frivolous appeals [*Lowery III*, Dkt. Nos. 144 and Dkt. No. 160] and threatening defendants with filing another action in either South Dakota or Utah, indicates that they intend to burden the Defendants and multiple courts with litigation costs indefinitely.

### 5. Both Monetary and Non-Monetary Sanctions are Appropriate

Because the Plaintiffs vexatiously multiplied the proceedings in this court and pursued the action in bad faith, sanctions are warranted pursuant to both 28 U.S.C. § 1927 and the court's inherent authority. When a court orders an award of the other side's attorneys' fees under its inherent powers, "such an order is limited to the fees the innocent party incurred solely because of the misconduct." *O'Rourke* v. *Dominion Voting Sys., Inc*., No. 21-1442, 2022 WL 17588344, at *7 (10th Cir. Dec. 13, 2022) citing *Goodyear Tire & Rubber Co.* v. *Haeger*, 581 U.S. 101, 103, 137 S. Ct. 1178, 1184, 197 L. Ed. 2d 585 (2017).

In the present case, all of the costs incurred in defending this lawsuit arise solely because of the Plaintiffs' misconduct. As discussed, filing the present action with knowledge that personal jurisdiction was not proper constituted misconduct. To make matters worse the underlying claims were frivolous, and Plaintiffs pursued the case and continually filed voluminous frivolous pleadings that multiplied the burden an already improper case. Furthermore, because the Plaintiffs were alleging millions in damages, Defendants were forced to respond to all their voluminous filings or risk exposing their clients. The Court has reviewed the "Report of Fees and Costs" submitted by counsel for St. Clair County Illinois detailing their billing in the present case that arose as a sole result of the Plaintiffs conduct. Dkt. No. 170. The billing totals $66,159.60. Additionally, Defendant State of Illinois also submitted a Report of the Fees and costs incurred

because of Plaintiffs' conduct. *Lowery III*, Dkt. No. 167. Their costs totaled approximately $8,430.81. The court will set a hearing to determine whether the requested fees are reasonable.

Furthermore, the vexatious multiplication of proceedings is particularly burdensome on this court. The July 2020 decision of the United States Supreme Court in *McGirt* v. *Oklahoma*, 140 S.Ct. 2452 (2020) involving the Muscogee Creek Nation profoundly impacted court operations in the Eastern District of Oklahoma. As a result of the *McGirt* decision and subsequent decisions from the Oklahoma Court of Criminal Appeals, all of the Eastern District of Oklahoma now falls within the boundaries of the Creek, Cherokee, Chickasaw, Choctaw, and Seminole reservations. Because these areas are now considered "Indian Country" for purposes of the Major Crimes Act, this court has experienced a 300% increase in criminal felony cases pending before the court. Because judicial resources in this district are already strained, it is particularly burdensome for a litigant to initiate, pursue, and multiply the proceedings of a patently frivolous case. Therefore, to prevent further frivolous filings, this imposes the additional sanction of filing restrictions on the attorneys Margaret Lowery and Ronald Wilkinson as detailed in the accompanying general order.

Considering the entire record before the court, dismissal with prejudice is an appropriate sanction for the misconduct in this case. The sanction of dismissal with prejudice is a "severe sanction," a measure of last resort. *Jones*, 996 F.2d at 265. Analyzed through the *Ehrenhaus* factors, the record clearly supports a finding that dismissal with prejudice is warranted given the extreme scope of the misconduct. 965 F.2d at 920. The first *Ehrenhaus* factor weighs heavily in favor of dismissal as a sanction. The Defendants in this case have been forced to litigate Ms. Lowery's baseless claims twice before and have exerted significant effort and expense responding to the voluminous filings from the Plaintiffs many of which were filed in violation of a court ordered stay. Additionally, the Defendants have been prejudiced by Plaintiffs publishing in the

public record particularly vitriolic allegations which have no basis in fact. For instance, accusing the Defendants of saying that "'Hitler did not do enough to kill Jews' and 'Jews should be gassed'". Dkt. No. 12 at p. 5. Additionally, Ms. Lowery accuses Defendant Miller of "Nazi like behavior". *Id* at 9.

Factor two also weighs in favor of dismissal as a sanction as this case caused considerable interference with the judicial process. Particularly in the post *McGirt* era, judicial resources are limited and this court has spent substantial time managing the Plaintiffs increasingly frivolous filings. *See King*, 899 F.3d at 1152 (Finding that the filing of falsified evidence interfered with the judicial process when it caused a district court to spend time analyzing an amended complaint supported by a falsified email.) Like in *King*, Plaintiffs in the present case have submitted evidence that is likely falsified. For instance, Plaintiffs have repeatedly offered an email supposedly evincing bias from the ARDC that the purported sender, Rachel Miller, contends is a forgery. Ms. Miller has submitted an affidavit stating supporting this belief. *Lowery III*, Dkt. No. 105-1. Additionally, Plaintiffs have burdened the court by failing to appear at scheduled hearings and providing false excuses for their absence. Moreover, this is not the only court burdened by Plaintiffs' conduct. As discussed, the District Court for the Northern District of Oklahoma has also expended resources twice before dealing with the same claims. Thus, this factor weighs in favor of dismissal.

Element three, the culpability of the litigant, also weighs in favor of dismissal. Ms. Lowery and Mr. Wilkinson are acting as their own attorneys in these matters and appear to have a close personal and professional relationship. These attorney-plaintiffs, have personal knowledge of the lack of factual foundation for the contentions in the many frivolous filings, i.e. false claims about

their supposed case conflicts. Therefore, this factor weighs in favor of dismissal as the litigants are entirely culpable for the burden placed on the court and the defendants.

Finally, element four contemplates whether formal notice was provided that the case may be dismissed. *Xyngular* v. *Schenkel*, 890 F.3d 868, 874 (10th Cir. 2018) (quoting *LaFleur* v. *Teen Help,* 342 F.3d 1145, 1151 (10th Cir. 2003)). Where the court had warned of dismissal, a dismissal sanction is more appropriate. *See id*. at 874–75 (holding that dismissal for pre-litigation misconduct does not necessarily require prior warning). In the present case, the court's show cause order warned that "monetary and/ or non-monetary sanctions" were contemplated. *See Lowery III*, Dkt. No. 101. While Plaintiffs were not specifically advised that dismissal with prejudice was contemplated as a sanction, one of the purposes of the hearing on May 21, 2025, was to provide Plaintiffs with said notice. As discussed, Plaintiffs willfully absented themselves from this hearing and fabricated excuses for their absence for good measure. It is preferable to provide notice before dismissal with prejudice is imposed as a sanction, but when there is evidence that the plaintiff or counsel will "continue to abuse the judicial process" and "continue to drain judicial resources" based on a "history of non compliance with procedural rules" and failure to perform a reasonable inquiry into the facts, specific prior notice is not strictly necessary. *King* v. *Fleming*, 899 F.3d 1140, 1153 (10th Cir. 2018) citing *King I*, 2017 WL 386836, at *8.

Here, Plaintiffs have repeatedly propounded absurd factual claims and baseless legal arguments, have disregarded court orders, and made inappropriate accusations and threats to opposing counsel and to this court. At every turn, efforts, such as the stay to slow the train of frivolous filings have only inspired Plaintiffs to double down and flood the court with additional filings. There is abundant evidence demonstrating Plaintiffs history of non-compliance and their propensity to continue draining judicial resources. Among other things, Plaintiffs have pursued the

same tactics twice before the Northern District and Judge Hill and have emailed the Defendants threatening actions in South Dakota, [See *Lowery III*, Dkt. No. 164-12]. There is nothing in the record suggesting that Plaintiffs will curb their behavior when subjected to a lesser sanction. Therefore, the imposition of dismissal as a sanction in this context of the entire record is necessary.

## CONCLUSION

In sum, the Plaintiffs' Motion for Recusal of Judge White for Cause [Dkt. No. 137] is DENIED, Motion to Dismiss by the State of Illinois [Dkt. No. 111] is GRANTED, the Motion to Dismiss Amended Complaint by St. Clair County, Illinois [Dkt. No. 109] are GRANTED, and the Motion for Sanctions and Brief in Support by State of Illinois [Dkt. No. 166] is GRANTED. Additionally, Plaintiffs Second Amended Petition [Dkt. No. 96] is hereby DISMISSED with prejudice as a sanction for Plaintiffs' repeated misconduct. The reasonableness of the requested attorney's fees shall be determined at a hearing set at a later date.

**IT IS SO ORDERED** on this 31st day of July, 2025.


_____

**THE HONORABLE RONALD A. WHITE**
**UNITED STATES DISTRICT JUDGE**
**EASTERN DISTRICT OF OKLAHOMA**